**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| **1819 WEEKS AVE. REALTY CORP.,** | 24-11855-JPM |
| Debtor. |  |

### Plan of Reorganization of 1819 Weeks Ave. Realty Corp.

**JACOBS PC**
**Proposed Attorneys for the Debtor**
717 Fifth Avenue, 26th Fl
New York, New York 10022
Tel. No.: 212-229-0476
**Leo Jacobs, Esq.**
**Robert M. Sasloff, Esq.**
**Aaron Slavutin, Esq.**

**Dated:** New York, New York
January 27, 2025

1

**1819 Weeks Ave. Realty Corp.,** the debtor and debtor in possession (the "Debtor"),

proposes the following plan of reorganization (the "Plan") pursuant to sections 1121(a), 1122

and 1123 of title 11 of the United States Code.

ARTICLE 1

DEFINITIONS

Unless the context otherwise requires (i) the following terms shall have the following meanings

when used in this Plan; (ii) any capitalized term that is used in this Plan and not defined in this

Article 1 but that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the

meaning set forth therein;(iii) terms stated in the singular shall include the plural and vice versa;

(iv) pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the

feminine and the neuter; (v) all section, article and exhibit references in the Plan are to the

respective section of, article of or exhibit to the Plan; (vi) any reference to a contract, instrument,

release or other agreement or document being in a particular form or on particular terms and

conditions, means that such document shall be substantially in such form or substantially on such

terms and conditions except as stated otherwise in the Plan; (vii) any reference to an existing

document or exhibit filed or to be filed means such document or exhibit, as it may have been or

may be amended, modified or supplemented; (viii) the words "herein", "hereof", "hereto" or

"hereunder" and other words of similar import refer to the Plan in its entirety rather than to only

a particular portion of the Plan; (ix) the rules of construction set forth in section 102 of the

Bankruptcy Code shall govern construction of the Plan; and (x) any reference contained here into

the Bankruptcy Code, or to any section of the Bankruptcy Code, refers to the Bankruptcy Code,

or such section of the Bankruptcy Code, as it is existing and effective on the Petition Date,

2

Except to the extent, if any, that any post-Petition Date amendment to the Bankruptcy

Code applies retroactively to case filed on the Petition Date.

        1.1        "**Administrative Bar Date**" means the first Business Day that is

30 days after the Confirmation Order becomes a Final Order.

        1.2        "**Administrative Claim**" means a Claim for, or request for payment

of, an Administrative Expense (i) as to which no objection to the allowance thereof has been

interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the

Bankruptcy Rules, or the Bankruptcy Court, or (ii) as to which any objection has been resolved by

a Final Order allowing such claim in whole or in part, to the extent such claim is Allowed.

        1.3        "**Administrative Expense**" means any cost or expense of

administration of this Case, other than Bankruptcy Fees, allowable under sections 503(b), 330

or 331 of the Bankruptcy Code.

        1.4        "**Administrative Tax Claim**" means an Administrative Claim for

a tax due to a Governmental Unit.

        1.5        "**Allowed Claim**" means a Claim or any portion thereof against the

Debtor that has not been disallowed pursuant to a Final Order and is not a Disputed Claim and (i)

with respect to which a Proof of Claim has been timely filed with the clerk of the Bankruptcy

Court or,(ii)if no Proof of Claim has been filed, that has been or hereafter is listed by the Debtor

in its Schedules as liquidated in amount and not disputed or contingent.

        1.6        "**Allowed Maguire Perry LLC Secured Claim**" means the

Secured Claim against the Debtor, or  the Property, on account of the Maguire Perry Note and/or

the Maguire Perry Security Documents plus continuing post-petition interest and reasonable fees,

costs and expenses which continue to accrue until payment in full.

1.7        "**Allowed Interest**" means an Interest in the Debtor that has not been disallowed and is not a disputed Interest with respect to which (i) a Proof of Interest has been timely filed or, (ii) if no Proof of Interest has been timely filed, that has been or hereafter is listed by the Debtor in its Schedules.

1.8        "**Available Cash**" means the sum of cash remaining in the Debtor's Estate, if any.

1.9        "**Bankruptcy Code**" means title 11 of the United States Code, as amended from time to time and effective as to case filed on the Petition Date.

1.10       "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York or the United States District Court for the Southern District of New York to the extent it withdraws the reference over all or any portion of this Case pursuant to section 157(d) of title 28 of the United States Code.

1.11       "**Bankruptcy Fees**" means all fees and charges assessed against the Estate under section 1930 of title 28 of the United States Code.

1.12       "**Bankruptcy Rules**" means (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of New York, in effect on the Petition Date, together with any and all amendments and modifications thereto that were subsequently made applicable to this Chapter 11 Case.

1.13       "**Bidding Procedures**" means the bidding procedures attached to the Plan as **Exhibit A**.

1.14       "**Business Day**" means any day other than a Saturday, Sunday, or other day on which commercial banks in New York, New York are authorized or required by law to close, or other Legal Holiday.

1.15    "**Case**" means the case filed under chapter 11 of the Bankruptcy Code commenced in the Bankruptcy Court on the Petition Date.

1.16    "**Cash**" means, on any Business Day, immediately available funds, in United States dollars, which may be spent or transferred without restriction no later than the next Business Day.

1.17    "**Claim**" means a "claim," as defined in section 101(5) of the Bankruptcy Code.

1.18    "**Class**" means a category of substantially similar Allowed Claims or Allowed Interests as established pursuant to article 3 of the Plan.

1.19    "**Closing Date**" means the date of the closing of the Exit Financing, or if the Property is sold, the date of the closing on the sale of the Property.

1.20    "**Confirmation**" means the entry of the Confirmation Order on the docket of this Chapter 11 Case.

1.21    "**Confirmation Date**" means the date on which the Confirmation Order is entered by the Bankruptcy Court, provided that the Confirmation Order becomes a Final Order.

1.22    "**Confirmation Order**" means an Order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, in form and substance reasonably satisfactory to the Debtor.

1.23    "**Creditor**" means a Holder of an Allowed Claim.

1.24    "**Cure Amount**" means any amount required, pursuant to sections 365(b)(1)(A) and 365(b)(1)(B) of the Bankruptcy Code, to cure any defaults or compensate the non-debtor party to any Executory Contract or Unexpired Lease for any actual pecuniary loss

5

resulting from a default in respect of an Executory Contract or Unexpired Lease.

1.25        **"Debtor"** means 1819 Weeks Ave. Realty Corp.

1.26        **"Disbursing Agent"** means Jacobs PC, the Debtor's counsel.

1.27        **"Disclosure Statement"** means the *Disclosure Statement for the Plan of Reorganization of 1819 Weeks Ave. Realty Corp.,* to be filed with the Bankruptcy Court, including all exhibits, attachments or amendments thereto.

1.28        **"Disputed Claim"** means

i)        Any Claim that is listed in the Schedules as disputed, contingent or unliquidated and with respect to which no Proof of Claim has been filed;

ii)        any Claim (including an Administrative Expense Claim), or portion thereof, that has not been disallowed and with respect to which an objection to the allowance thereof, in whole or in part, or the estimation of such Claim, has been filed with the Bankruptcy Court within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, to the extent that any such objection has not been resolved by a Final Order;

iii)        Until the earlier of (i) the filing of an objection to a Proof of Claim or (ii) the last date to file objections to Claims as established by the Plan or by Final Order, a Claim represented by a Proof of Claim shall be deemed to be a Disputed Claim in its entirety if, (x) the amount specified in the Proof of Claim exceeds the amount of any corresponding Claim listed in the Schedules; (y) any corresponding Claim listed in the Schedules has been scheduled as disputed, contingent or unliquidated; or (z) no corresponding Claim has been listed in the Schedules.

1.29        **"Disputed Claim Reserve"** means the segregated account or accounts established by the Disbursing Agent pursuant to section 7.7 of the Plan.

1.30        "**Effective Date**" means the Closing Date.

1.31        "**Estate**" means the Estate of the Debtor created on the Petition

Date pursuant to section 541 of the Bankruptcy Code.

1.32        "**Executory Contract**" means an executory contract within

the meaning of section 365 of the Bankruptcy Code.

1.33        "**Exit Financing**" means any financing to be procured by the

Debtor to fund payments under the Plan.

1.34        "**Final Order**" means a judgment, order, ruling or other decree of the

Bankruptcy Court (or court of competent jurisdiction) entered by the Clerk on the docket of this

Case (or on the docket of any court of competent jurisdiction) that has not been reversed, vacated

or stayed and as to which (i) the time to appeal, petition for *certiorari* proceeding or move for a

new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari*

proceeding, or other proceedings for a new trial, reargument or rehearing shall then be pending, or

(ii) if an appeal, writ of *certiorari*, new trial, reargument or rehearing thereof has been sought,

such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall

have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have

been denied or a new trial, reargument or rehearing shall have been denied or resulted in no

modification of such order, and the time to take any further appeal, petition for *certiorari* or move

for a new trial, reargument or rehearing shall have expired; *provided, however*, that the possibility

that a motion under Bankruptcy Rule 9023 or Bankruptcy Rule 9024, or any analogous rule under

the Bankruptcy Rules (or rule of a court of competent jurisdiction), may be filed relating to such

order shall not cause such order not to be a Final Order.

1.35        "**Holder**" means a Person holding a Claim or Interest.

1.36        "**Interest**" means an equity interest in the Debtor.

1.37        "**Interest Holder**" means the Holder of an Allowed Interest in the Debtor.

1.38        "**Leases**" means any Unexpired Lease of real property between the Debtor and its Tenants, if any.

1.39        "**Legal Holiday**" means a "Legal Holiday" as that term is defined in Bankruptcy Rule 9006(a).

1.40        "**Lien**" means any charge against or interest in property to secure payment of a debt or performance of an obligation.

1.41        "**Maguire Perry**" means Maguire Perry LLC, the holder of the Maguire Perry Note, the Maguire Perry Secured Claim, and the Maguire Perry Security Documents, as defined herein.

1.42        "**Maguire Perry Note**" means collectively, each and every agreement, promissory note, including any amendment or modification thereof, or allonge thereto, evidencing a claim held by Maguire Perry.

1.43        "**Maguire Perry Secured Claim**" means the Secured Claim against the Debtor, or the Property, on account of the Maguire Perry Note or the Maguire Perry Security Documents or the Maguire Perry Foreclosure Judgment.

1.44        "**Maguire Perry Security Documents**" means each and every mortgage, assignment of rents, security agreements, and/or any such other documents granting Maguire Perry a lien on the Property to secure the Maguire Perry Note.

1.45        "**Other Secured Claim**" means any other Secured Claim that is not the Maguire Perry Secured Claim, if any.

1.46        "**Order**" means an order of the Bankruptcy Court.

1.47        "**Person**" means a person as defined in 11 U.S.C. § 101(41).

1.48        "**Petition Date**" means October 28, 2024, the date on which the Case was commenced by the filing of a voluntary petition for relief under Chapter 11 of the Bankruptcy Code by the Debtor.

1.49        "**Plan**" means this *Plan of Reorganization of 1819 Weeks Ave. Realty Corp.,* as it may be amended, supplemented or modified from time to time, including any exhibits or schedules annexed hereto or required to be filed with the Bankruptcy Court pursuant hereto.

1.50        "**Priority Non-Tax Claim**" means that portion of an Allowed Claim, other than a Priority Tax Claim, an Administrative Tax Expense Claim, a Secured Claim, or Bankruptcy Fees, entitled to priority in payment under Bankruptcy Code Section 507(a) or (b).

1.51        "**Priority Tax Claim**" means an Allowed Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

1.52        "**Professional**" means all professionals employed by or to be employed by the Debtor under sections 105, 327 or 330 of the Bankruptcy Code to render professional services in this Case pursuant to a Final Order.

1.53        "**Professional Fees**" means compensation for services rendered, and reimbursement of expenses incurred, by Professionals prior to the Confirmation Date, as allowed and awarded by Final Order following application, in accordance with sections 330 and 331 of the Bankruptcy Code.

1.54        "**Proof of Claim**" means a proof of Claim filed pursuant to section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.55        "**Proof of Interest**" means a proof of an Interest filed pursuant to

section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.56    **"Property"** means the real property and improvements located at 47 Perry Street, New York, NY 10014.

1.57    **"Pro Rata"** means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bear to the aggregate amount of all Allowed Claims or Allowed Interests in such Class.

1.58    **"Released Parties"** shall have the meaning set forth in section 8.2 of this Plan.

1.59    **"Reorganized Debtor"** means the Debtor after the Effective Date.

1.60    **"Sale Approval Order"** means an order of the Bankruptcy Court approving the sale of the Property which Sale Approval Order may be contained within the Confirmation Order.

1.61    **"Sale Proceeds"** means the proceeds of the sale of the Property.

1.62    **"Schedules"** mean the schedules of assets and liabilities, any amendments with respect thereto, and the *Statement of Financial Affairs* filed by the Debtor with the Bankruptcy Court in accordance with section 521(1) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules and any amendments thereto.

1.63    **"Secured Claim"** means an Allowed Claim, including all amounts, if any, allowed pursuant to section 506(b) of the Bankruptcy Code, to the extent that it is secured by a Lien on Property in which the Estate has an interest or that it is subject to set-off under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the Estate's interest in such property or to the extent of the amount subject to set-off, as applicable, as determined by a Final Order pursuant to section 506(a) of the Bankruptcy Code or as provided for

in the Plan.

1.64        "**Tenants**" means all non-Debtor parties to Leases with the Debtor for the Property, if any.

1.65        "**Transfer Taxes**" means any and all stamp taxes or similar taxes, if and as applicable and imposed by a Governmental Unit with respect to the transfer of a property or interest therein.

1.66        "**Unsecured Claim**" means a Claim against the Debtor that is not an Administrative Claim, an Administrative Tax Claim, a Bankruptcy Fee, a Priority Tax Claim, a Priority Non-Tax Claim, or a Secured Claim.

1.67        "**Unsecured Creditor**" means the Holder of an Unsecured Claim.

1.68        "**Unexpired Lease**" means an unexpired lease within the meaning of section 365 of the Bankruptcy Code.

## ARTICLE 2

## TREATMENT OF UNCLASSIFIED CLAIMS

Pursuant to section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims or Allowed Priority Tax Claims.  Such Claims, to the extent Allowed, shall receive the treatment provided in this article 2 in full satisfaction, release and discharge thereof.

2.1        **Administrative Bar Date**. Except as otherwise provided in sections 2.2, 2.3 and 2.4 of the Plan, requests for payment of Administrative Expenses must be filed no later than the Administrative Bar Date which is defined as the first business day that is 30 days after the Confirmation Order becomes a Final Order. Holders of Claims for payment of Administrative Expenses that do not file requests for the payment of Administrative Expenses on or before the Administrative Bar Date shall be forever barred from asserting such Claims against the

Debtor or the Property.

2.2      **Professional Compensation and Reimbursement**. Each Person seeking an award by the Bankruptcy Court of Professional Fees shall file its final application for approval of its Professional Fees no later than the 60 days after the Effective Date. Each Holder of an Allowed Claim for Professional Fees shall receive from the Disbursing Agent, in full satisfaction of such Allowed Claim, Cash in the amount of such Allowed Claim within three days of the entry of a Final Order allowing such Claim.

2.3      **Administrative Claims**. Subject to the provisions of article 7 of the Plan with respect to Disputed Claims, each Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of (x) the Closing Date, (y) the date payment of such Claim is due under the terms thereof or applicable law, or (z) three business days after such Claim becomes an Allowed Administrative Claim or (ii) as may be otherwise mutually agreed in writing between the Debtor and the Holder of such Claim; *provided, however,* that any Administrative Claim incurred by the Debtor in the ordinary course of its business shall be paid in full or performed by the Debtor in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and any agreements relating thereto.

2.4      **Administrative Tax Claims.** Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, all allowed Administrative Tax Claims held by Governmental Units shall be paid, in Cash, in full either (i) on or prior to the Closing Date, or (ii) upon such other terms as may be agreed to, in writing, between the Debtor and such Governmental Units on or before the Confirmation Date.

2.5      **Priority Tax Claims.** Subject to the provisions of Article 7

of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of Priority

Tax Claims and except as may be otherwise mutually agreed in writing between the Debtor and

such Governmental Units, all Allowed Priority Tax Claims shall be paid by the Debtor in Cash in

full, together with the applicable rate of interest on the Closing Date.

2.6    **Bankruptcy Fees.** All fees and charges assessed against the

Debtor under section 1930 of title 28 of the United States Code and any applicable interest thereon

shall be paid by the Debtor, in full, in Cash by the Effective Date, and thereafter quarterly until the

closing, conversion or dismissal of this Case, whichever is earlier.

### ARTICLE 3

### CLASSIFICATION OF CLAIMS AND INTERESTS

Except as otherwise provided in Article 2, Allowed Claims and Allowed Interests are

classified as set forth in this Article 3. A Claim or interest is in a particular Class designated herein

only to the extent such Claim or Interest (i) fits within the description of such Class and is in such

other and different Class or Classes to the extent that the remainder thereof fits within the

description of such other Class or Classes and (ii )has not been paid, released or otherwise satisfied

prior to the Effective Date.

3.1    **Class 1-Maguire Perry Secured Claim**. Class 1 consists of

the Allowed Maguire Perry Secured Claim.

3.2    **Class 2-Other Secured Claims**. Class 2 consists of Other

Secured Claims, if any.

3.3    **Class 3-Unsecured Claims.** Class 3 consists of all Allowed

Unsecured Claims against the Debtor.

3.4    **Class 4-Interests.** Class 4 consists of Interests in the Debtor.

**ARTICLE 4**

**TREATMENT OF CLAIMS AND INTERESTS**

Allowed Claims in Class 1 is unimpaired and not entitled to vote on the Plan and Classes 2-3 and the Interests in Class 4 are impaired and entitled to vote on the Plan. The members of each Class shall receive the following treatment under the Plan in full satisfaction, release and discharge thereof.

4.1        **Class 1 – Maguire Perry Secured Claim.** In full satisfaction, release and discharge of the Allowed Maguire Perry Secured Claim, Maguire Perry shall receive:

(a) Cash in the amount of the Allowed Maguire Perry Secured Claim  and in the event the Debtor obtains Exit Financing, and if requested, Maguire Perry shall then assign the Maguire Perry Note, or other evidence of indebtedness, and Maguire Perry Documents to the Debtor's new lender, at new lender's option and expense, including any legal fees and costs incurred by Maguire Perry in connection with such transfer and assignment, which transfer and assignment shall be made by Maguire Perry without recourse, warranty or representation; or

(b) If the Debtor is unable to obtain Exit Financing, the Debtor shall have been engaged in the contemporaneous marketing of the Property for sale pursuant to the Bidding Procedures and shall obtain a Sale Approval Order.  The Sale Proceeds must be sufficient to pay the Allowed Maguire Perry Secured Claim in full and such proceeds shall then be used to pay the Allowed Maguire Perry Secured Claim at Closing.

Maguire Perry shall be deemed to have submitted a credit bid at any such sale of the Property in the full amount of the Allowed Maguire Perry Secured Claim. Maguire Perry shall not be required to post a deposit for such credit bid and shall be relieved of the obligation of submitting a Qualified Bid by the Bid Deadline, as said terms are defined in the Bidding Procedures.

The Debtor shall not have the right to reject Maguire Perry's credit bid.

4.2        **Class 2 – Other Secured Claims.** Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of each Allowed Other Secured Claim, each Holder of an Other Secured Claim, shall receive, on the Closing Date, or as soon as practicable after each such Claim becomes an Allowed Other Secured Claim, (i) after payment is made at Closing to satisfy the Allowed Maguire Perry Secured Claim, the remaining Sale Proceeds shall be used to pay Allowed Other Secured Claims at Closing their pro rata share of the Sale Proceeds, or (ii) such other treatment as to which the Debtor and each Holder of such Allowed Other Secured Claim shall have agreed upon in writing.

4.3        **Class 3 – Unsecured Claims.** Subject to the provisions of Article 7 of the Plan, with respect to Disputed Claims, in full satisfaction and release of the Unsecured Claims, the holders of Allowed Unsecured Claims shall receive Cash in the full amount of their Allowed Unsecured Claim without interest in two annual payments, with the first payment to be made on the anniversary of the Effective Date and the second payment one year after the first payment is made.

If the Debtor is unable to obtain Exit Financing, the Debtor shall have been engaged in the contemporaneous marketing of the Property for sale pursuant to the Bidding Procedures and after payment is made at Closing to satisfy the Allowed Maguire Perry Secured Claim and the Allowed Other Secured Claims, the remaining Sale Proceeds shall be used to pay Allowed Unsecured Claims their pro rata share of the Sale Proceeds within 30 days after the Closing.

4.4        **Class 4 – Interests**. The Holder of Interests in the Debtor shall maintain their ownership interest in the Debtor.  If the Debtor obtains Exit Financing, which is insufficient to pay the Allowed Maguire Perry Secured Claim, the Other Secured Claims and

Unsecured Claims, then the Interest Holder shall contribute funds necessary to cover the shortfall. If the Debtor is unable to obtain Exit Financing, the Debtor shall have been engaged in the contemporaneous marketing of the Property for sale pursuant to the Bidding Procedures.  After payment is made at Closing on the sale of the Property to satisfy the Allowed Maguire Perry Secured Claim, the Other Secured Claims and Unsecured Claims, the remaining Sale Proceeds, if any, shall be distributed to the Debtor's Interest Holder. Thereafter, under this circumstance, all Interests in the Debtor shall be canceled and of no force and effect.

**ARTICLE 5**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

5.1    **Assumption and Assignments of Executory Contracts and Unexpired Leases.** In the event the Debtor obtains Exit Financing, all Executory Contracts and Unexpired Leases to which Debtor is a party, if any, shall be assumed by the Debtor.

If the Property is sold, Executory Contracts and Unexpired Leases shall be treated in accordance with the terms of the governing asset purchase agreement or Sale Approval Order.

5.2    **Assumption Cure Payments**. Except as otherwise agreed to by the parties, on the Effective Date, the Debtor, or any successful purchaser, shall cure any and all undisputed defaults under any Executory Contract or Unexpired Lease that is assumed pursuant to the Plan in accordance with Section 365 of the Bankruptcy Code. Unless the parties to the contract or lease agree otherwise, all disputed defaults that are required to be cured shall be cured by the later to occur of (i) ten (10) days after the entry of a Final Order determining the amount, if any, of the Debtor's liability with respect thereto and (ii) the Effective Date.

5.3    **Rejection Claims.** Allowed Claims arising from the rejection

of any Executory Contract or Unexpired Lease of the Debtor shall be treated as Unsecured Claims**.**

5.4        **Bar to Rejection Claims.** A Proof of Claim with respect to any Unsecured Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Debtor no later than 30 days after the later of (i) the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides a filing deadline with respect to such Claim, in which event no Proof of Claim with respect to such Claim shall be deemed timely filed unless it is filed with the Bankruptcy Court and served in the manner provided in such Final Order), or (ii) the Effective Date. Any such Proof of Claim not timely filed and served shall be forever barred from assertion and may not be enforced against the Debtor, its successors or its property.

## ARTICLE 6

### IMPLEMENTATION OF THE PLAN

6.1        **Implementation.** The Debtor shall take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan, which include obtaining and closing on any Exit Financing or a sale of the Property and distributing the proceeds to pay creditors pursuant to the Plan. The Confirmation Order shall contain appropriate provisions, consistent with section 1142 of the Bankruptcy Code, directing the Debtor, the Reorganized Debtor and/or Post-Effective Date Debtor, and any other necessary party to execute or delivery or to join in the execution or delivery of any instrument required to effect are financing and assignment of the Debtor's obligations and/or security documents or transfer of property required by the Plan and to perform any act, including the satisfaction of any lien, that is necessary for the consummation of

the Plan. The Closing Date shall occur as soon as practicable after the Confirmation Date and thereafter, the Reorganized Debtor shall make creditor payments in accordance with the provisions of this Plan.

If the Debtor is unable to obtain Exit Financing, the Plan shall be implemented by the sale of the Property, pursuant to the Bidding Procedures, followed by distribution of the Sale Proceeds as set forth in the Plan. The Confirmation Order shall contain appropriate provisions, consistent with section 1142 of the Bankruptcy Code, directing the Debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of equity of the Debtor or the Property of the Debtor as required by the Plan and to perform any act, including the satisfaction of any lien, that is necessary for the consummation of the Plan.

6.2      **Plan Funding**. Payments and distributions to be made under the Plan, shall be made by the Debtor or the Reorganized Debtor from the proceeds of the Exit Financing and the Debtor's Cash on hand, if any or from contributions from equity which shall be distributed to creditors as set forth in Article 4.

If the Debtor is unable to obtain Exit Financing and the Plan is implemented by the sale of the Property, Plan payments shall be funded by the Sale Proceeds and the Debtor's Available Cash on the Closing Date, if any. These funds shall be utilized to satisfy payments due consistent with the terms of the Plan.

6.3      **Transfer Taxes.** Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan, (including any instrument executed in furtherance of the transactions contemplated by the Plan), shall not be

subject to tax under any law imposing a stamp tax, real estate Transfer Tax, mortgage recording tax or similar tax, including any such taxes due on any refinancing or sale of the Property in connection with or in furtherance of the Plan and the funding requirements contained herein, and shall not be subject to any state, local or federal law imposing such tax.

6.4 **Vesting of Assets.** Subject to the closing on the Exit Financing, on the Closing Date, the Property shall vest in the Reorganized Debtor free and clear of all Liens, Claims and encumbrances, except for those expressly preserved or created under the Plan, including the relevant Security Documents, if assigned. As of the Closing Date, all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date. Any other assets of the Debtor, including any surplus of the financing proceeds or Sale Proceeds, after payment is made to all classes of creditors pursuant to the Plan, shall vest in the Reorganized Debtor free and clear of all Liens, Claims and encumbrances.

In the event that the Debtor is unable to obtain Exit Financing and the Plan is implemented by the sale of the Property, the Property shall vest in the purchaser of the Property free and clear of all Liens, Claims and encumbrances. On the Closing Date, any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date. Any other assets of the Debtor, including any surplus of the Sale Proceeds after payment is made to all classes of creditors pursuant to the Plan shall vest in the Reorganized Debtor free and clear of all Liens, Claims and encumbrances and the Reorganized Debtor may operate, buy, use, acquire, and dispose of the property of the Estate and may settle and compromise any claims, interests and causes of action in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

6.5 **Execution of Documents.**

i)       Upon entry of the Confirmation Order, the Debtor, and any necessary party, shall execute, release and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of the Plan.

ii)       Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, the Debtor shall be authorized to execute, in the name of any necessary party any estoppel certificate, or any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance (including, any Lien, Claim or encumbrance that is to be released and satisfied upon the Debtor's compliance with the provisions of Article 4 of the Plan) not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation, and the Confirmation Order shall expressly so provide.

6.6       **Filing of Documents.** Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, each and every federal, state and local governmental agency or department, shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

6.7       **Preservation of Rights of Action.**

i) Except as otherwise provided in the Plan, or in any contract, instrument, release or other agreement entered into in connection with the Plan, the Debtor shall retain any claims, rights and causes of action (i) arising under sections 510 and 544 through 550 of the Bankruptcy Code or (ii) belonging to the Debtor as of the Petition Date, or the Estate of the Debtor, and arising under any provision of state or federal law, or any theory of statutory or common law or equity.

ii)    Any recovery received by the Debtor through the prosecution, settlement or collection of any claim, right or cause of action, shall be retained by the Debtor following the satisfaction of all other Allowed Claims under the terms of the Plan.

iii)    Notwithstanding any provision of the Plan to the contrary, definitions and descriptions contained herein respecting pre-Petition Date documents, agreements or claims are provided solely for the purpose of identification and classification thereof and do not constitute an admission by the Debtor of the existence, validity, allowance, or amount of any such claim, document or agreement. The Debtor expressly reserves the right to challenge the existence, validity, allowance, or amount of any such claim, document or agreement.

6.8    **Post-Confirmation Management and Compensation /Reorganized Debtor**. If the Property is not sold, the Debtor will continue in existence post-confirmation as the Reorganized Debtor and continue to be 100% owned and managed by Nancy Haber.

In the event the Property is sold, the Debtor shall continue in existence as the Reorganized Debtor whose activities shall be limited to matters related to the implementation of the Plan and matters reasonably incidental thereto. The Reorganized Debtor will have all of the rights, powers and duties necessary to carry out its responsibilities under the Plan. As soon as practicable after the closing, the Reorganized Debtor shall take all necessary steps to effectuate its dissolution in accordance with applicable law.

6.9    **Corporate Governance Documentation.** The operating agreement of the Debtor shall be amended and restated to satisfy the provisions of the Plan and the Bankruptcy Code, as is necessary.

## ARTICLE 7

### PROVISIONS GOVERNING DISTRIBUTIONS

7.1        **Disbursing Agent.** Except for payments to be made by the title company on the Closing Date, the Disbursing Agent shall distribute all Cash or other property to be distributed under the Plan and may employ or contract such third parties as may be necessary to assist in or perform the distribution of Cash or other property under the Plan. Pending the final distribution of all sums distributable under the terms of the Plan (including the delivery to the Debtor of unclaimed distributions pursuant to section 7.14 of the Plan), the Disbursing Agent shall have full authority to sign checks on any bank account of the Debtor to the extent necessary to make any payment or distribution contemplated by the Plan.

7.2        **Timing of Distributions Under the Plan.** Subject to sections 7.6 and 7.8 of the Plan, any payments, distributions or other performance to be made pursuant to the Plan on account of any Disputed Claim, shall be deemed to be timely made if made on or within ten days following the later of (i) the expiration of any applicable objection deadline with respect to such Disputed Claim or (ii) such other times provided in the Plan.

7.3        **Method of Payment.** Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank.

7.4        **Claims Objection Deadline.** Unless otherwise ordered by the Bankruptcy Court for cause, the Debtor may file and serve any objection to any Claim at any time, but in no event after the later to occur of (i) 60 days after the Effective Date, or (ii) 60 days after the date proof of such Claim or a request for payment of such Claim is filed.

7.5        **Prosecution of Objections.** After the Confirmation Date,

only the Debtor and Reorganized Debtor shall have authority to file, settle, compromise, withdraw or litigate to judgment objections to Disputed Claims. The Debtor may file any objections to Disputed Claims without further order of the Court.

7.6        **No Distribution Pending Allowance.** Notwithstanding any other provision of the Plan, no payment or distribution of any kind shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order.

7.7        **Escrow of Cash Distributions.**

i) On any date that distributions are to be made under the terms of the Plan, the Debtor shall make available any and all funds required to be disbursed on that date, and the Disbursing Agent shall deposit in one or more segregated accounts, Cash or property equal to 100% of the Cash that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto, including, but not limited to (i) Disputed Claims that may be entitled to treatment as Administrative Claims or as Priority Non-Tax Claims pursuant to sections 503 and 507 of the Bankruptcy Code, (ii) claims of Governmental Units for any tax, (iii) any disputed Cure Amount, and (iv) any amount due but not payable on the Effective Date on account of Administrative Claims or claims entitled to priority pursuant to section 503 and 507 of the Bankruptcy Code. The Disbursing Agent shall also segregate any interest, dividends or other proceeds of such Cash. Such Cash together with any interest, dividends or proceeds thereof, shall be held in trust for the benefit of the Holders of all such Disputed Claims pending determination of entitlement thereto.

ii) The Debtor shall have the right to seek an Order of the Bankruptcy Court, after notice and hearing, estimating or limiting the amount of Cash that must be so deposited on

account of any Disputed Claim. Any Creditor whose Claim is so estimated shall have no recourse to any assets theretofore distributed on account of any Allowed Claim if the Allowed Claim of that Creditor as determined by Final Order exceeds the amount so deposited. Such Creditor shall have recourse first, to the undistributed assets in the Disputed Claims Reserve (on a Pro Rata basis with other Creditors of the same Class who are similarly situated) that exceed the aggregate amount of all Disputed Claims allowed by Final Order, or not yet resolved, and second any unpaid amount shall be an obligation of the Debtor.

7.8        **Distribution After Allowance.** Within 15 days after the entry of a Final Order resolving an objection to a Disputed Claim, the Disbursing Agent shall distribute all Cash or other property, including any interest, dividends or proceeds thereof, to which a Holder is then entitled with respect to any formerly Disputed Claim that has become an Allowed Claim.

7.9        **Investment of Segregated Cash.** To the extent practicable, the Disbursing Agent may invest any Cash segregated on account of a Disputed Claim, disputed Interest, undeliverable distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by section 345 of the Bankruptcy Code; *provided, however,* that the Disbursing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash or proceeds. Segregated Cash shall be maintained in an authorized depository.

7.10       **Distribution After Disallowance.** Subject to section 7.7 of the Plan, the Cash segregated on account of Disputed Claims, including the allocable portion of the net return yielded from any investment thereof, if any, remaining after all Disputed Claims have been resolved by Final Order shall revert to the Debtor.

7.11  **Surrender of Instruments, Execution of Satisfactions and**

**Releases.**

i) Notwithstanding any other provision of the Plan, no Creditor that holds a note or other instrument evidencing such Creditor's Claim may receive any distribution with respect to such Claim unless and until the original note or other original instrument evidencing such Claim shall have been validly surrendered to the Disbursing Agent at the sole cost and expense of such Creditor, with the exception of the Maguire Perry  Note and Security Documents, which may be assigned to a new lender, at new lender's option, pursuant to the terms of the Exit Financing.

ii)      Any Cash or property to be distributed pursuant to the Plan on account of any such Claim, pending surrender, shall be treated as an deliverable distribution pursuant to section 7.13 of the Plan.

iii)      In the event any Creditor is unable to surrender a note or other instrument evidencing a Claim against the Debtor that has been destroyed, lost or stolen, such entity may receive a distribution with respect to such Claim by presenting to the Disbursing Agent, in a form acceptable to the Disbursing Agent: (i) proof of such entity's title to such Claim; (ii) an affidavit to the effect that the same has been lost and after diligent search cannot be located; and (iii) such indemnification as may be required by the Disbursing Agent and all other entities deemed appropriate by the Disbursing Agent from any loss, action, suit or any claim whatsoever which may be made as a result of such entity's receipt of a distribution under the Plan.

iv)      All questions as to the validity, for eligibility of any note or other instrument evidencing a Claim so surrendered shall be resolved by Final Order of the Bankruptcy Court. The Disbursing Agent shall not be under any duty to give notification of defects in such

tender or shall incur liability for failure to give notification of such defects.

7.12 **Delivery of Distributions.** Except as provided in sections 7.13, 7.14 and 7.15 of the Plan, distributions to Holders of Allowed Claims shall be made: (1) at the addresses set forth on the respective Proofs of Claim filed by such Holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written notice of a change of address.

7.13 **Undeliverable Distributions.** i) If the distribution to the Holder of any Claim is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to such Holder unless and until the Disbursing Agent is notified in writing of such Holder's then current address. Undeliverable distributions shall remain in the possession of the Disbursing Agent until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution pursuant to section 7.14 of the Plan.

ii) Until such time as an undeliverable distribution becomes an unclaimed distribution pursuant to section 7.14 of the Plan, within 30 days after the end of each calendar quarter following the Effective Date, the Disbursing Agent shall make distributions of all Cash that has become deliverable during the preceding quarter. Each such distribution shall include the net return yielded from the investment of any undeliverable Cash; from the date such distribution would have been due had it then been deliverable to the date that such distribution becomes deliverable.

iii) Nothing contained in the Plan shall require the Debtor to attempt to locate any Holder of an Allowed Claim.

7.14 **Unclaimed Distributions.** Any Cash or other assets to be

26

distributed under the Plan shall revert to the Debtor if it is not claimed by the entity entitled hereto before the later of (i) one year after the Effective Date;(ii) one year after such scheduled payment to such entity under Article 4 of this Plan; or (iii) one year after an Order allowing the Claim of that entity becomes a Final Order, and such entity's claim shall be reduced to zero.

        7.15        **Set-offs.** The Disbursing Agent, may, but shall not be required to, set-off against the distributions to be made pursuant to the Plan, the claims, obligations, rights, causes of action and liabilities of any nature that the Debtor may hold against the Holder of an Allowed Claim, *provided, however,* that neither the failure to effect such a set-off nor the allowance of any claim hereunder shall constitute a waiver    or release by the Debtor of any such claims, obligations, rights, causes of action and liabilities that the Debtor has or may have against such Holder. To the extent the Disbursing Agent elects to effectuate a set-off, it shall notify the Holder of the Allowed Claim in writing at least ten (10) days prior to effectuating the set-off. To the extent the Holder of an Allowed Claim objects to the set-off, a written objection shall be provided to the Disbursing Agent, no later than three (3) days prior to the set-off date or the objection shall be waived.

### ARTICLE 8

        8.1        **Injunction. Except (i) as otherwise provided under Final Order entered by the Bankruptcy Court or (ii) with respect to the Debtor's obligations under the Plan, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin with respect to any Claim held against the Debtor as of the date of entry of the Confirmation Order (i) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Debtor, from the**

Property, or from property of the Estate that has been or is to be distributed under the Plan, and (ii) the creation, perfection or enforcement of any lien or encumbrance against the Property and any property of the Estate that has been or is to be, distributed under the Plan. Except as otherwise provided in the Confirmation Order, the entry of the Confirmation Order shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act to collect, recover or offset from the Debtor, from the Property, or from property of the Estate, any claim, any obligation or debt that was held against the Debtor by any person or entity as of the Confirmation Date except pursuant to the terms of the Plan. The entry of the Confirmation Order shall permanently enjoin all Creditors, their successors and assigns, from enforcing or seeking to enforce any such Claims.

8.2     **Limitation of Liability.** To the extent provided in Bankruptcy Code § 1125(e), neither the Debtor, the Interest Holders nor any of its respective officers, directors, members, general partner, managers or employees (acting in such capacity), nor any professional person employed by any of them (the "Released Parties") shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with this Case or the Plan except in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts. Nothing contained herein shall limit the liability of the Debtor's professionals pursuant to

Rule 1.8(h)(1) of the New York State Rules of Professional Conduct. From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute, and may be submitted as, a complete defense to any claim or liability released pursuant to this Article 8 of the Plan.

8.3        **Release. Except as otherwise provided in the Plan, upon the  Effective Date, in consideration of the Cash and other property to be distributed to or on behalf of the holders of Claims under the Plan, the Plan shall be deemed to resolve all disputes and constitute a settlement and release, between and among the Debtor, on the one hand, and each Creditor, on the other, from any claim or liability, whether legal, equitable, contractual, secured, unsecured, liquidated, unliquidated, disputed, undisputed, matured, unmatured, fixed or contingent, known or unknown, that the Debtor, its Creditors ever had or now have through the Effective Date in connection with their Claim (including, without limitation, any claims the Debtor may assert on its own behalf or on behalf of Creditors pursuant to sections 510 and 542 through 553 (together the "Avoidance Actions")[1] of the Bankruptcy Code, any claims Creditors may have asserted derivatively on behalf of the Debtor absent the Bankruptcy Case, any claims based on the conduct of the Debtor's business affairs prior or subsequent to the commencement of the Case or any claims based on the negotiation, submission and confirmation of the Plan); *provided, however,* that nothing in the Plan or the Confirmation Order shall effect a release of any claim for any debt owed to the United States Government arising under the Internal Revenue Code; any state, city or municipality arising under any state, city or municipal tax code; any environmental laws**

---

[1] The Debtor does not intend to pursue any Avoidance Actions, but nevertheless, the Debtor does not believe any such Avoidance Actions exists.

**or any criminal laws of the United States or any state, city or municipality. Nothing in the Confirmation Order or the Plan shall enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Parties for any claim, suit or action arising under the Internal Revenue Code, any state, city or municipal tax code, the environmental laws or any criminal laws of the United States or any state, city or municipality. Nothing in the Confirmation Order or the Plan shall exculpate any party from any liability to the United States Government or any of its agencies or any state, city or municipality arising under the Internal Revenue Code, any state, city or municipal tax code, the environmental laws or any criminal laws of the United States or any state.**

## ARTICLE 9

### MISCELLANEOUS PROVISIONS

9.1     **Orders in Aid of Consummation.** Pursuant to sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation directing the implementation of matters or actions required by the Plan.

9.2     **Compliance with Tax Requirements.** In connection with the Plan, the Debtor and the Disbursing Agent shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to such withholding and reporting requirements; *provided, however,* that the transfer of any Cash, or other assets or interests hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under section 1146 of the Bankruptcy Code.

9.3     **Due Authorization by Creditors.** Each and every Creditor who accepts the distributions provided for under the Plan warrants that it is the lawful owner of its

Claim and is authorized to accept the distributions provided for in the Plan and that there are no outstanding Liens, encumbrances, commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such Creditor under the Plan.

9.4    **Amendments.** The Plan may be altered, amended or modified by the Debtor, in writing, signed by the Debtor, at any time before the substantial consummation of the Plan, as provided in sections 1101 and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. Any substantive modification shall require notice and a hearing before the Bankruptcy Court for approval of the proposed modification of the Plan. The Debtor in its own capacity and the Disbursing Agent shall be deemed a Plan proponent for purposes of Section 1127 of the Bankruptcy Code.

9.5    **Revocation.** The Debtor may revoke or withdraw the Plan at any time prior to entry of the Confirmation Order. If the Plan is revoked or withdrawn or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtor; or (ii) prejudice in any manner the rights of the Debtor or any other party in any further proceedings involving the Debtor or its Estate.

9.6    **Request for Relief Under Section 1129(b).** If the Plan is accepted by one or more, but not all, impaired Classes of Claims, the Debtor may request confirmation under section 1129(b) of the Bankruptcy Code of any Class of Claims, subject to any modification of the Plan made pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

9.7    **Filing of Additional Documents.** Except as otherwise

provided in the Plan, on or before the Effective Date, the Debtor may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, and Debtor shall be responsible for the preparation and filing of any reports necessary until the entry of a Final Decree. Debtor shall also pay any fees due the U.S. Trustee's Office until entry of a Final Decree.

9.8    **Section Headings.** The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

9.9    **Computation of Time.** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

9.10    **Successors and Assigns.** The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

9.11    **Notices.** All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein:

i)    If to the Debtor, Jacobs PC, 595 Madison Avenue, 39th floor, New York, New York 10022, Attn: Robert M. Sasloff, Esq.;

ii)    If to any Creditor, at (i) the addresses set forth on the Proofs of Claim filed by such Holders; (ii) the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (iii) the address reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written notice of a change of address;

iii)        If to any entity that has filed a notice of appearance, at the addresses set forth on such notice of appearance.

9.12        **Governing Law.** Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other Federal law are applicable, the rights and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the law of the State of New York without giving effect to the principles of conflict of laws thereof.

9.13        **Other Actions.** Nothing contained herein shall prevent the Debtor, Interest Holders, or Creditors from taking such actions as may be reasonably necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

9.14        **Severability.** In the event any provision of the Plan is determined to be unenforceable such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

9.15        **Business Day.** In the event that the Plan requires an act to be performed on a day that is not a Business Day, such act shall be performed on the first Business Day thereafter.


**ARTICLE 10**

**RETENTION OF JURISDICTION**

**10.1**        **Retention of Jurisdiction.** Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, until the Case is closed, the Bankruptcy Court shall retain and have original, but not exclusive, jurisdiction to:

i)        Ensure that the Plan is consummated, and to enter any Order pursuant to section 1142(b) of the Bankruptcy Code, to compel the Debtor, the Interest Holders and any other

necessary party, to take such action and execute such documents to effectuate the Plan;

ii)      Consider any modification of the Plan proposed pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019;

iii)     Allow, disallow, determine, liquidate, classify or establish the priority, secured or unsecured status of any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Expense, the resolution of any and all objections to the allowance or priority of Claims or Interests, and the resolution of any adversary proceeding;

iv)      Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for any period ending on or before the Effective Date;

v)       Resolve any motions pending on the Effective Date to assume, assume and assign or reject any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and if necessary, liquidate, any and all Claims arising therefrom;

vi)      Ensure that distributions to Holders of Allowed Claims are accomplished in accordance with the provisions of this Plan;

vii)     Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

viii)    Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or Disclosure Statement or to enforce all orders, judgments, injunctions, and rulings entered in connection with this Case, including, but not limited

to any Order necessary to enforce the provisions of article 7 of the Plan;

ix)     Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan or any entity's obligations incurred in connection with the Plan;

x)     Modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code, or to modify the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement;

xi)     Remedy any defect or omission or reconcile any inconsistency in any Order, the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan, to the extent authorized herein or in the Bankruptcy Code;

xii)     Issue any injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

xiii)     Enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

xiv)     Determine any dispute arising under or related to the Plan, including, without limitation, any dispute concerning the scope or effect to of any release or discharge provided for by the Plan or the Confirmation Order. Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement; and

xv)     Enter an Order of Final Decree concluding the Case.

10.2        **Post-Closing Jurisdiction.** Notwithstanding the entry of a final decree or an order closing the Case, the Bankruptcy Court shall retain jurisdiction to reopen the Case for the purpose of enforcing, by injunction or otherwise, the terms of the Plan, the Confirmation Order and any final decree, including, without limitation, the enforcement of any rights of the Debtor.

## ARTICLE 11

### CONDITION TO THE EFFECTIVE DATE

11.1        **Condition Precedent to Effectiveness.** The Effective Date of the Plan shall be the Closing Date and the Confirmation Order shall have been entered in this case and no stay or injunction shall be in effect precluding the consummation of the transactions contemplated by this Plan and the Confirmation Order shall not have been modified or vacated on appeal.

## ARTICLE 12

### CLOSING THE CASE

12.1        **Substantial Consummation.** Until the occurrence of the Effective Date and substantial consummation of the Plan, the Debtor, its Creditors and the Property shall be subject to further Orders of the Bankruptcy Court.

12.2        **Closing the Case.** Upon the substantial consummation of the

Plan, the Debtor shall expeditiously move for the entry of a final decree closing the Case and such

other relief as may be just and appropriate.

**Dated:** New York, New York
        January 27, 2025

**1819 Weeks Ave. Realty Corp.**
**By: /s/ Nancy Haber_____**
        **Nancy Haber, President**

**JACOBS PC**
**Proposed Attorneys for the Debtor**
717 5th Avenue, 26th Floor
New York, New York 10022
Tel. No.: (212) 229-0476
**By: /s/ Leo Jacobs_____**
        **Leo Jacobs**

**<u>EXHIBIT A</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **1819 WEEKS AVE. REALTY CORP.,** | 24-11855-JPM |
| Debtor. | |

## BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") that shall govern the sale of the property of 1819 Weeks Ave. Realty Corp. (the "Debtor").

**I.**       **Assets to be Sold:** The assets to be sold consists of the real property and improvements located at 47 Perry Street, New York, New York (the "Property"), including, without limitation, the Debtor's leases with its tenants and any other assets integral to the operation of the Property.

**II.**       **Marketing Process and Due Diligence:** The Debtor through its real estate broker (Northgate Real Estate Group, subject to Bankruptcy Court approval of its retention) and counsel, will provide information regarding the Property to potential purchasers (the "Initial Information").

**III.**       **APA** : The Debtor will provide all bidders with a form APA (the "APA"), which the Debtor shall file with the Court pursuant to a supplemental notice and will make the APA available through its real estate broker, specifically for the sale of the Property.

**IV.**       **Auction:** The public auction sale (the "Public Auction Sale") of the Property shall be conducted at the offices of Jacobs P.C., 717 Fifth Avenue, New York, New York, on _____, **2025, at 11:00 a.m.**, upon the terms and conditions set forth herein (the "Public Auction Sale"). The Public Auction Sale shall be an open auction where the material terms of the bids shall be disclosed to all bidders who attend the Public Auction Sale. The Public Auction Sale shall conclude when the auctioneer has determined that that the bidding has closed after providing all bidders with a suitable opportunity to increase or further increase their bids. By participating in the Public Auction Sale, each bidder acknowledges its acceptance of the Bidding Procedures.

**V.**       **Bid Deadline**: All bids ("Bids") must be served upon and actually received by the Debtor's real estate broker; and counsel to the

Debtor, c/o Jacobs PC, 717 Fifth Avenue, 26th Floor, New York, NY 10022, on or before _____ **at 4:00 p.m.** (the "Bid Deadline").The Debtor may extend the Bid Deadline for the delivery of Bids once or successively, without notice, and for one or more bidders after consultation with the Debtor's broker. The Debtor's Secured Creditor Maguire Perry LLC. (hereinafter "MP") shall be relieved of the obligation of serving and/or submitting a Bid by the Bid Deadline, and MP is deemed to submit the full amount of the Allowed MP Secured Claim ("MP Credit Bid") as its Bid on or before the Bid Deadline, or any extension thereof unless of Course the MP offer shall be in excess of the MP Credit Bid for which a deposit may be required.

**VI.**      **Qualified Bid Requirements:** The Debtor will determine, after consultation with the Debtor's real estate broker, and subject to the Bidding Procedures and the requirements below, whether a Bid is a Qualified Bid and, ultimately a Successful Bid (as these terms are defined below). Any entity that desires to submit a Bid to purchase the Property may do so in writing as follows:

        (a)     to be considered by the Debtor, an offer for the purchase of the Property must be a "Qualified Competing Bid" made by a Qualified Competing Bidder, as provided herein;

        (b)     the Stalking Horse Bidder, as described below, shall be deemed to be a Qualified Competing Bidder and the APA (to be provided) it enters into shall be deemed to be a Qualified Competing Bid;

        (c)     a Qualified Competing Bid shall consist of a timely and unconditional offer for the purchase of all of the Property made by a Qualified Competing Bidder clearly setting forth the purchase price to be paid in Immediately Available Funds (as defined below), and be accompanied by a 10% deposit as provided for herein (the "Deposit") and an executed copy of the APA to purchase the Property, blacklined to show changes from the APA that the Debtor submits pursuant to a supplemental filing, clearly setting forth any conditions for closing and stating that the Qualified Competing Bid is irrevocable as set forth below, provided however, that the Debtor, in consultation with the Debtor's real estate broker, in its sole discretion, may waive compliance with the deadline set forth in this paragraph;

        (d)     a Qualified Competing Bid for the purchase the Property must be submitted by a party which the Debtor reasonably believes to be financially able to consummate the purchase of the Property (a "Qualified Competing Bidder");

(e)    a Qualified Competing Bid must contain terms and conditions no less favorable to the Debtor's estate than those terms and conditions contained herein and in the APA;

(f)    a Qualified Competing Bid must not be contingent upon either financing or the conduct or results of any due diligence investigation, the absence of any adverse change or approvals by any board, shareholders or other entity;

(g)    a Qualified Competing Bid must provide for a closing date within a reasonable time after the Debtor obtains this Court's approval of this sale, whether by sale approval order or confirmation order, which closing date may only be extended by the Debtor;

(h)    Deposits shall be made in "Immediately Available Funds" which shall be cashier's check, certified check, wire transfer or cash. MP shall not be required to post a deposit for the MP Credit Bid unless it is bidding in cash in excess thereof;

(i)    a Bid must include evidence, including financial statements (or such other form of financial disclosure and credit-quality support or enhancement reasonably acceptable to the Debtor following consultation with the Debtor's real estate broker), sufficient to establish the financial wherewithal of the interested party to complete the contemplated transactions and, to the extent the interested party will rely upon the financial wherewithal of an affiliate, bid partner, or other sponsor (each, a "Sponsor"), evidence sufficient to establish the financial wherewithal and intent of the Sponsor to provide appropriate financial support;

(j)    a Bid must contain such and/or other information that will allow the Debtor, following consultation with the Debtor's broker, to make a reasonable determination as to the bidder's financial and other capabilities to consummate the transactions contemplated by the APA;

(k)    a Bid must disclose the identity of the bidder's organization, including confirmation that the bidder is acting as principal for the bidder's account and, if not, the basis upon which the bidder is acting and the identities of all other participants (if any), and each of their pre-petition and post-petition relationships

with other bidders, the Debtor's major creditors and equity security holders of any of the foregoing (if any);

(l)    a Bid must disclose any agreements or understandings between the bidder and any third party with respect to the Property or with respect to any possible transaction involving the Debtor;

(m)    if a Qualified Competing Bidder becomes either the Successful Bidder (as defined below) or the Backup Bidder (as defined below), their respective Deposits shall be increased to an amount equal to 10% of the successful purchase price for the Successful Bidder and 10% of the second best purchase price for the Backup Bidder (the "New Deposit") and the increase in amount between the Deposit and New Deposit must be deposited with Immediately Available Funds with the Debtor's counsel within 24 hours after the conclusion of the Public Auction Sale, and this New Deposit shall be deemed to be non-refundable and shall be forfeited if such purchaser fails to close in breach of its obligations under the APA as fully described below;

(n)    The Debtor, in consultation with the Debtor's real estate broker, may waive or modify any of these provisions as necessary;

Notwithstanding anything to the contrary, the Debtor, after consulting with the Debtor's real estate broker, shall have the right to consider Bids that do not conform to one or more of the requirements set forth in these procedures and to deem such Bids Qualified Bids, provided that the Debtor's determinations under these Bidding Procedures are subject to any necessary court approval.

Notwithstanding anything to the contrary provided for in these Bidding Procedures, MP is deemed to be a "Qualified Bidder," "Qualified Competing Bidder," and the MP Credit Bid is deemed to be a "Qualified Bid" and a "Qualified Competing Bid," and could ultimately qualify as a Successful Bid and become the Successful Bidder as provided for in these Bidding Procedures.

Notwithstanding anything to the contrary, the Successful Bidder's bid and the Backup Bidders bid must remain irrevocable in accordance with the terms of the APA.

Notwithstanding anything to the contrary, the Debtor also reserves the right, after consulting with the Debtor's real estate broker, to reject any and all Bids, except that the Debtor shall not have the right to reject the MP Credit Bid.

**VII.**        **Evaluation of Qualified Bids:** The sufficiency of any submitted Bid will be at the discretion of the Debtor, after consultation with the Debtor's real estate broker, The Debtor shall as promptly as practicable, notify potential bidders who have (a) timely submitted the information and documentation listed above and (b) who have financial qualifications satisfactory to the Debtor, in consultation with the Debtor's real estate broker, that they have been selected as a qualified bidder (each a "Qualified Bidder") and that their Bid is a "Qualified Bid."

**VIII.**        **Stalking Horse Bids:** The Debtor reserves the right, in consultation with the Debtor's real estate broker, to enter into an APA with any entity for the sale of the Property and designate that entity as the stalking horse (the "Stalking Horse") subject to the terms herein. The Debtor, in consultation with the Debtor's real estate broker, may offer a breakup fee to the Stalking Horse. The Debtor is under no obligation to choose a Stalking Horse or offer a breakup fee for the Property.

In the event the Debtor selects a Stalking Horse, the Debtor, after consultation with the Debtor's real estate broker, may offer bid protections, including a breakup fee of up to 3%, of the purchase price of the Stalking Horse Bid. If the Debtor identifies a Stalking Horse, the Debtor will file a supplemental notice (the "Stalking Horse Notice") with the Court identifying the Stalking Horse and the terms of the Stalking Horse Bid, including the terms and conditions for payment of any breakup fee. Any entity wishing to object to the Stalking Horse shall have five (5) days from the filing of the Stalking Horse Notice to file an objection (the "Objection") with the Court and serve it on the Debtor. In the event an Objection is filed and such Objection cannot be resolved consensually, the Debtor will schedule a hearing with the Court as promptly as practicable for approval of the Stalking Horse and Stalking Horse Bid, including payment of any breakup fee. If no Objections to the Stalking Horse Notice are received, the Stalking Horse and Stalking Horse Bid, including payment of any breakup fee, shall be deemed approved by the Court, without the need for further Court order. In the event the Debtor chooses a Stalking Horse, the Stalking Horse Bid will be a Qualified Bid.

**IX.**        **The Auction:** The Public Auction Sale shall be conducted as set forth in Section IV, and the Property shall be sold free and clear of all liens, claims and encumbrances to the fullest extent allowed under sections 363(f), 365 and/or 1123 and 1129 of the Bankruptcy Code; provided that all liens and claims shall attach to the proceeds of sale of the Property with the same validity, force and effect and subject to the same defenses as existed immediately before the sale.

Only Qualified Bidders may bid at the Public Auction Sale. If multiple Qualified Bids are received, any Qualified Bidder (or its duly authorized representative) shall have the right to continue to improve its Qualified Bid at the Public Auction Sale.

At the conclusion of the Public Auction Sale, and subject to Court approval, following the Public Auction Sale, the successful Bid or Bids shall be selected and announced by the Debtor (the "Successful Bid or Bids"), and the backup Bid or Bids shall be selected and announced by the Debtor (the "Backup Bid or Bids").

Within 48 hours of completion of the Public Auction Sale, the entity or entities that made the Successful Bid or Bids (the "Successful Bidder") and the entity or entities that made the Backup Bid or Bids shall complete and sign all agreements, contracts, instruments, and other documents evidencing and containing the terms and conditions upon which such Successful Bid or Bids and Backup Bid or Bids were made.

The Public Auction Sale may be adjourned or cancelled as the Debtor deems appropriate, after consultation with the Debtor's real estate broker. Reasonable notice of such adjournment and the time and place for the resumption of the Public Auction Sale or cancellation shall be given to all participants.

**X.        Selection of Successful Bid or Bids:** If the Successful Bidder is unable to consummate the sale, the Debtor may consummate the proposed sale with the next highest or best bidder at the Public Auction Sale (the "Backup Bidder") without the need for further Court approval.

**XI.        Backup Bids:** If the Successful Bidder fails to consummate the sale, breaches the APA, or otherwise fails to perform, the Debtor may consummate the proposed sale with the Backup Bidder, which hereafter shall be included in the definition of "Successful Bidder," without the need for further Court approval.

**XII.        Sale Confirmation:** All determinations of the Successful Bid or Bids and the Backup Bid or Bids shall be subject to and conditioned upon subsequent court approval. After the Public Auction Sale and the selection of the Successful Bidder, an order will be submitted to the Bankruptcy Court to approve the results of the Auction, so that it can be entered before _____, 2025.

**XIII.        "As Is, Where Is":** The proposed transfer of any of the Debtor's Property will be on an "as is, where is" basis and without representations or

warranties of any kind, nature, or description by the Debtor, its agents, or estate, except to the extent set forth in the applicable APA of each Successful Bidder as accepted by the Debtor and approved by the Court. Except as otherwise provided in an APA, all of the Debtor's right, title and interest in the Property will be transferred free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests in accordance with sections 363(f), 365 and/or 1123 and 1129 of the Bankruptcy Code. Any other claim, lien or encumbrance, as set forth in the APA, will attach to the net proceeds of the sale with the same validity, force and effect and subject to the same defenses as existed immediately before the sale.

XIV.        **Return of Deposits:** If a Backup Bidder does not become the Successful Bidder, its Deposit shall be returned to it no later than five (5) business days after the Debtor's closing of the sale. Debtor shall also be entitled to retain the Deposit from any other Bidders other than the Successful Bidder or the Backup Bidder, but only upon the express consent of such other Bidder and the Debtor shall be required to return such Deposit no later than five (5) business days after the Debtor's closing of the sale. The Debtor shall be required to return the Deposit to any Bidder, who is not the Successful Bidder or a Backup Bidder, who does not agree to the retention of its Deposit no later than 48 hours after the conclusion of the Public Auction Sale.

XV.        **Revoked Bids:** At the Debtor's reasonable discretion, it may treat as waived and revoked any Qualified Competing Bid made by any Qualified Competing Bidder (other than the Stalking Horse Bidder) who does not attend the Public Auction Sale, except that the Debtor shall not treat the MP Credit Bid as waived or revoked on the basis of lack of attendance at the Public Auction Sale.

XVI.        **Actual Auction:** If one or more Qualified Competing Bids have been timely submitted, the Debtor shall conduct the Public Auction Sale among the Stalking Horse Bidder, and any Qualified Competing Bidder that has submitted a Qualified Competing Bid or Bids.

XVII.        **Minimum Bid:** The minimum opening bid at the Public Auction Sale shall not be less than **$_____** provided that if there is a Stalking Horse Bidder, such opening bid shall be the bid of the Stalking Horse Bidder, and any subsequent bid shall comply with the Bid Increments set forth in Paragraph XVIII below.

XVIII.        **Bid Increments:** Subsequent bids, to be made on the record at the Public Auction Sale shall be in minimum increments of **$10,000.00**, after taking into account a breakup fee (if any), provided, however, that the Debtor may waive such minimum incremental bid amount after consultation with the Debtor's real estate broker.

7

**XIX.**　　　　**Stalking Horse Bid:** The Stalking Horse Bidder may credit bid its breakup fee.

**XX.**　　　　**Close of Bidding:** At such time as it appears to the Debtor, in the exercise of its reasonable discretion, after consultation with the Debtor's real estate broker, that none of the Qualified Competing Bidders present at the Public Auction Sale are prepared to advance the bidding, the Debtor shall (after giving fair warning, on the record, to those entities present) close the bidding on the record and the entity which immediately prior to the close of the bidding shall have submitted the highest and best offer for the purchase of the Property shall be declared the Successful Bidder, subject to Bankruptcy Court approval, and subject to entry by the Bankruptcy Court of a sale approval order or confirmation order approving such sale.

**XXI.**　　　　**Successful Bidder:** In the event that the Successful Bidder is an entity other than Stalking Horse Bidder, then such Successful Bidder shall be bound by all of the terms of its APA (as such terms, including those with respect to the purchase price, shall have been modified by the terms of such purchaser's winning bid) and upon closing of such sale be granted the protections of Sections 363(m) and (n) of the Bankruptcy Code.

**XXII.**　　　　**Damages for Failure to Close:** If the Successful Bidder fails to consummate the sale in accordance with the terms of its Successful Bid and applicable APA: (a) the Debtor will retain the Deposit of such bidder, to the extent provided by the APA, and (b) the Debtor will maintain the right to pursue all available remedies against such bidder. If the Deposit is forfeited, such forfeiture shall not be deemed a liquidated damage provision and shall be deemed a measure of the Debtor's actual damage.

**XXIII.**　　　　**Reservation of Rights:** Notwithstanding the Debtor's determination of a Stalking Horse and/or receipt of any Qualified Bids, the Debtor may continue to negotiate and solicit Bids. The Debtor reserves the right, after consultation with the Debtor's real estate broker, to enter into agreements for the sale, without further notice to any party, which agreements, if any, will be subject to higher or otherwise better Bids at the Auction (including evaluation on a package or individual basis). The Debtor retains the right, after consultation with the Debtor's real estate broker, to withdraw the Property from such sale, up to the date of the Public Auction Sale. Formal approval of a Bid will not occur unless and until the Court enters an order approving and authorizing the Debtor to consummate the transaction.

The Debtor reserves the right to implement additional procedural rules after consultation with the Debtor's real estate broker, provided such additional rules are not inconsistent with these Bidding Procedures.