Douglas J. Pick
Eric C. Zabicki
**PICK & ZABICKI LLP**
Counsel to William Arthur Vieth
369 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 695-6000

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:                                                                Chapter 11

1819 WEEKS AVE. REALTY CORP.,              Case No. 24-11855 (JPM)

                          Debtor.
-----------------------------------------------------------x

## MOTION FOR ENTRY OF AN ORDER VACATING THE AUTOMATIC STAY TO PROCEED WITH STATE COURT LITIGATION

TO THE HONORABLE JOHN P. MASTANDO III,
UNITED STATES BANKRUPTCY JUDGE:

William Arthur Vieth ("Movant"), by and through his undersigned counsel, as and for his motion (the "Motion") for entry of an Order, pursuant to § 362(d)(1) of title 11 of the United States Code (the "Bankruptcy Code"), vacating the automatic stay arising in this case so as to permit Movant to commence or otherwise proceed with an action against 1819 Weeks Ave. Realty Corp., the debtor and debtor-in-possession herein (the "Debtor"), in State Supreme Court (hereinafter defined) with respect to rent overcharges, and respectfully represents and alleges as follows:

### BACKGROUND

1. By way of background, Movant is the current tenant of 47 Perry Street, Apt 2A, New York, NY 10014 (hereinafter "subject apartment") pursuant to a lease agreement with

the Debtor, as landlord. On October 28, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court.

2. On January 29, 2025, and without having been provided with notice or otherwise having knowledge of the Debtor's chapter 11 filing, Movant commenced an action against the Debtor by filing a Verified Complaint with the Supreme Court of the State of New York, County of New York (the "State Supreme Court"), entitled *William Arthur Vieth v. 1819 Weeks Ave. Realty Corp.*, Index No. 151303/2025 (the "Tenant Action"), seeking: (1) a judicial declaration that his apartment is subject to the Rent Stabilization Law (hereinafter "RSL") and Code (hereinafter "RSC"), and that renewal lease forms be provided to Movant, by Debtor, in the form prescribed by the RSL and RSC at the proper legal regulated rent[1]; (2) an order enjoining Debtor and/or its agents, assigns and successors from offering any lease renewal in violation of the terms of the RSL and RSC; (3) injunctive relief enjoining Debtor from commencing eviction proceedings against Movant, since this will cause Movant irreparable damage as he will be listed on Tenant Screening Bureaus, also known as "Black Lists", which may impair his credit ratings, ability to obtain credit or mortgages or rent other apartments in the future; (4) for money damages for residential overcharges pursuant to the Housing Stability and Tenant Protection Act of 2019 (L. 2019, ch. 36) ("the HSTPA"), to recover the amount overcharged along with interests, costs, attorneys' fees and treble damages as provided by law; (5) for money damages for advance payment of rent exceeding one month to recover the amount overcharged along with interests,

---

[1] "Legal Regulated Rents," is the maximum amount a landlord may charge for a rent-stabilized apartment. Traditionally, to arrive at a legal regulated rent for a particular apartment, one looks back to 1984 (the date when the modern rent-regulations went into effect), determines the rent charged on that date, and adds to it permitted percentage increases- - including increases for certain building and apartment improvements, and vacancy increases the annual or biannual increases, both of which are promulgated by the Rent Guidelines Board. Should the landlord charge in excess of the legally permitted amount, the tenant has a "rent overcharge" and may institute claims in state court, or before the state regulatory body, the Division of Housing and Community Renewal, seeking a refund of those overcharges.

2

costs, attorneys' fees and damages as provided by law for an excessive demand of advance rent; and (6) recovery of attorneys' fees and costs. A copy of the Verified Complaint filed in the Tenant Action is attached hereto as *Exhibit "A"*.

3. Having been commenced subsequent to the Petition Date without prior authorization to do so from this Court, and notwithstanding Movant's lack of knowledge of the Debtor's chapter 11 filing, the Tenant Action is void *ab initio*. As more fully discussed herein, if the automatic stay is modified as sought, Movant is prepared to either: (a) continue the Tenant Litigation subject to the Debtor's execution of a stipulation consenting thereto; or, alternatively (b) voluntarily discontinue and, thereafter, recommence the Tenant Litigation.

4. As more fully asserted in the Verified Complaint, 47 Perry Street ("subject building"), is a five story residential apartment building, built prior to 1974, and contains twenty (20) class "A" residential units. The subject building has not converted to coop or condo ownership. As such, the subject building and apartments therein are, presumptively, rent stabilized. Movant commenced occupancy of the subject apartment pursuant to a one year destabilized, market-rate, lease commencing October 27, 2020 at a monthly rental rate of $2,850.00. Thereafter Movant's lease was renewed, for successive one year terms, as follows: (a) October 27, 2021 at a monthly rental rate of $3,200.00 ("the 2021 Renewal"); (b) October 27, 2022 at a monthly rental rate of $3,850.00 ("the 2022 Renewal"); (c) October 27, 2023 at a monthly rental rate of $3,650.00 ("the 2023 Renewal"); and (d) October 27, 2024 at a monthly rental rate of $3,650.00 ("the 2024 Renewal"). When Movant renewed his lease in 2023 and in 2024, Debtor required advance payment under the terms of the 2023 Renewal and the 2024 Renewal. Movant paid his entire rent upfront, totaling $43,800.00, in October/November 2023 for the 2023 Renewal. Movant also paid his entire rent upfront, totaling $43,800.00 in October 2024 for the 2024 Renewal.

3

5. Pursuant to the New York State Division of Housing and Community Renewal ("DHCR") apartment registration history the subject apartment was registered as "RENT CONTROL – REG NOT REQUIRED" from 1985 through the present. *Assuming arguendo*, the subject apartment was subject to rent control prior to Movant's tenancy, the landlord may, upon the vacatur of the rent controlled tenant, charge the first incoming tenant any rent agreed to between the parties. RSC § 2521.1(a)(1).

6. Movant is seemingly the first tenant in occupancy following the vacatur of the rent controlled tenant, and took possession of the apartment after the HSTPA removed the rent increase pathway to deregulation for rent stabilized apartments. Therefore, Movant is entitled to a rent stabilized lease at the first rent agreed to between the parties plus any allowable Rent Guidelines Board ("RGB") increases.

7. Upon information and belief there has never been a tenant of the subject apartment with a rental rate exceeding the threshold for deregulation. As such, unless the landlord can produce a lease and proof of payment of a rental rate exceeding $2,000.00 prior to June 23, 2011, or $2,700.00 prior to June 13, 2019, immediately subsequent to the vacatur of the putative rent controlled tenant, Movant is a rent stabilized tenant since the inception of his tenancy and has been overcharged. In the alternative, even if there was an intervening tenant, after the presumed rent controlled tenant vacated and before Movant commenced occupancy, Debtor never registered the rent of the intervening tenant with the DHCR. Therefore, the subject apartment is rent stabilized and Movant's legal regulated rent should be calculated based on the default formula. As such, since the inception of his tenancy, Movant has been illegally treated as a market rate tenant. Movant is thus entitled to a declaration that his apartment is rent stabilized and reimbursement of any excess rent amounts paid above the proper legal regulated rent, plus treble damages, which he

has paid since commencing his tenancy on or about October 27, 2020. Here, besides the DHCR Rent Registration listing the subject premises as "RENT CONTROL – REG NOT REQUIRED", Debtor never registered a rental rate with DHCR for the subject apartment.

8. The Debtor has engaged in a fraudulent scheme to deregulate the subject apartment. The Debtor's fraudulent conduct includes its failure to register the subject apartment as rent stabilized following the vacatur or the putative rent controlled tenant and instead illegally treating the subject apartment as a market rate apartment despite there being no legal basis to exempt the apartment from rent stabilization. Therefore, the legal regulated rent for the subject apartment will need to be calculated pursuant to DHCR's default formula. Movant's apartment has been, and remains, subject to the provisions of the Rent Stabilization Law (NYC Adm Code § 26-501 *et seq*). Movant's apartment has been and is subject to the registration requirements of the Rent Stabilization Law set forth at NYC Admin Code §26-517, which provides at subdivision (e) thereof that the failure to file a proper and timely initial or annual registration with the DHCR shall, until such time as such registration is filed, bar an owner from applying for or collecting any rent in excess of the legal regulated rent in effect on the date of the last preceding proper registration statement. The legal regulated rent for Movant's apartment is set at the amount of rent reflected in the last properly filed registration with the DHCR. Here, insofar as there is no amount registered with DHCR, Movant's rent should be set pursuant to DHCR's default method. Because Movant's apartment was deregulated pursuant to a fraudulent scheme, the rents charged on the base date may not be used for the purpose of calculating the legal regulated rents. Movant is entitled to recover the difference between the amount he has paid and the default formula calculation amount, along with treble damages.

9. By letter dated September 23, 2024, Movant's counsel sent Debtor a letter detailing the allegations herein, annexing the DHCR apartment rent registration history, and requesting documentation to substantiate the legal rent for the subject premises. Debtor responded to the September 23, 2024 letter and in sum and substance failed to address any of Movant's allegations and stated only that the previous tenant died before the 2019 HSTPA. However, upon information and belief, the previous tenant passed away on or about November 2019. Movant's initial leases contains a clause providing that the owner is entitled to recover attorneys' fees incurred as a result of a breach of the lease by the tenant. By operation of law, Movant has a reciprocal right to recover the costs and attorneys' fees incurred in this action. Also, pursuant to Rent Stabilization Law §26-516(a), Movant has the right to recover the costs and attorneys' fees incurred in this action.

10. The importance to, at a minimum, liquidate Movant's claim is established by the Debtor's intent to market and sell the building thus making the prospective purchaser potentially liable for the rent overcharges collected by the Debtor.[2] Upon his counsel's discovery of the existence of the Debtor's instant chapter 11 case, Movant's counsel requested that the Debtor consent to modify the automatic stay so as to permit the Tenant Action to be proceed. As of the date hereof, the Debtor has not consented thereto. Accordingly, Movant brings the instant Motion.

---

[2] RSC § 2526.1(f)(2)(i) (entitled "Responsibility for overcharges") provides, in relevant part, as follows:

> (2)(i) For overcharge complaints filed or overcharges collected on or after April 1, 1984, a current owner shall be responsible for all overcharge penalties, including penalties based upon overcharges collected by any prior owner. However, in the absence of collusion or any relationship between such owner and any prior owner, where no records sufficient to establish the legal regulated rent were provided at a judicial sale, or such other sale effected in connection with, or to resolve, in whole or in part, a bankruptcy proceeding, mortgage foreclosure action or other judicial proceeding, an owner who purchases upon or subsequent to such sale shall not be liable for overcharges collected by any owner prior to such sale, and treble damages upon overcharges that he or she collects which result from overcharges collected by any owner prior to such sale. An owner who did not purchase at such sale, but who purchased subsequent to such sale, shall also not be liable for overcharges collected by any prior owner subsequent to such sale to the extent that such overcharges are the result of overcharges collected prior to such sale.

6

## JURISDICTION AND VENUE

11. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are §§ 362(d)(1) of the Bankruptcy Code.

## RELIEF REQUESTED

12. Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest…

13. The Bankruptcy Code does not define the term "cause" however, the legislative history provides some guidance in that the "facts of each request will determine whether relief is appropriate under the circumstances." *In re Sonnax Industries, Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990) (quoting H.R. Rep. No. 595, 95th Cong. 2d Sess. 343-44, *reprinted in* 1978 U.S. Code Cong. & Admin. News 6300). The burden of proof on a motion seeking modification of the automatic stay is a shifting one: the movant has the initial burden of showing that "cause" exists and once established, the burden shifts to the party opposing stay relief to disprove its existence. *In re Mazzeo*, 167 F.3d 139, 142 (2d Cir. 1999).

14. The Second Circuit has articulated the following twelve (12) factors which the bankruptcy court must weigh upon a request for relief from the automatic stay in order to continue litigation in another forum:

    (i)      whether relief would result in a partial or complete resolution of the issues;

    (ii)     lack of any connection with or interference with the bankruptcy case;

    (iii)    whether the other proceeding involves the debtor as a fiduciary;

    (iv)    whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

    (v)     whether the debtor's insurer has assumed full responsibility for defending it;

    (vi)    whether the action primarily involves third parties;

    (vii)   whether litigation in another forum would prejudice the interests of other creditors;

    (viii)  whether the judgment claim arising from the other action is subject to equitable subordination;

    (ix)    whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

    (x)     the interests of judicial economy and the expeditious and economical resolution of litigation;

    (xi)    whether the parties are ready for trial in the other proceeding; and

    (xii)   impact of the stay on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286. Only those factors that are relevant to a particular case need be considered and the court need not assign them equal weight. *In re Keene Corp.*, 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994). When applying these factors the court "should take into account the particular circumstances of the case, and ascertain what is just to the claimants, the debtor and the estate." *Id.*

    15.    Turning to the instant case, Movant respectfully submits that the existence of "cause" for the requested modification of the automatic stay has been demonstrated. At the outset, Movant acknowledges that the Tenant Action was commenced after the Petition Date. As such, Movant respectfully submits that the automatic stay should be modified so as to permit either:

8

(a) the continuation of the Tenant Action subject to the Debtor's execution of a stipulation consenting thereto; or, alternatively (b) the voluntary discontinuance and subsequent recommencement and prosecution of the Tenant Action. Granting the requested modification of the automatic stay would result in a final resolution that would provide full transparency as to the impact of any sale of the property resulting from either a foreclosure sale or a sale under § 363 of the Bankruptcy Code in this Court and will allow the parties to liquidate any claim resulting from the misfeasance in overcharging Movant and/or other tenants of the building. Also, absent further relief from this Court, enforcement of any judgment obtained by the Movant will continue to be stayed as against the Debtor while its chapter 11 case is pending. Accordingly, the continuation of the matters pending in state court will not have any impact on the administration of the Debtor's estate.

## CONCLUSION

16.     Based upon the foregoing, Movant respectfully submits that the automatic stay should be vacated as to permit the Tenant Action to proceed.

**WHEREFORE**, Movant respectfully requests that the Court grant the Motion in its entirety together with such other and further relief as may be just and proper.

Dated: New York, New York
       March 19, 2025

                                          **PICK & ZABICKI LLP**
                                          Counsel to William Arthur Vieth

                        By:     */s/Douglas J. Pick*
                              Douglas J. Pick, Esq.
                              369 Lexington Avenue, 12th Floor
                              New York, New York 10017
                              (212) 695-6000