| | |
|---|---|
| Douglas J. Pick, Esq. | Hearing Date: June 5, 2025 |
| Eric C. Zabicki, Esq. | Time: 11:00 a.m. |

**PICK & ZABICKI LLP**
Counsel to William Arthur Vieth
369 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 695-6000

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| 1819 WEEKS AVE REALTY CORP., | ) | Case No. 24-11855 (JPM) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**LIMITED OBJECTION OF WILLIAM ARTHUR VIETH TO DEBTOR'S MOTION FOR AN ORDER (A) AUTHORIZING AND SCHEDULING AN AUCTION TO SOLICIT BIDS FOR THE SALE OF THE DEBTOR'S PROPERTY LOCATED AT 47 PERRY STREET, NEW YORK, NY 10014, FREE AND CLEAR OF LIENS, INTERESTS AND ENCUMBRANCES; (B) APPROVING STALKING HORSE CONTRACT, BIDDING PROCEDURES AND CERTAIN FEE PROTECTIONS; (C) SCHEDULING A HEARING TO CONSIDER APPROVAL OF THE SALE; (D) ESTABLISHING THE FORM AND MANNER OF NOTICES RELATED THERETO; AND (E) GRANTING SUCH OTHER AND FURTHER RELIEF AS THIS COURT DEEMS JUST AND PROPER**

TO:   THE HONORABLE JOHN P. MASTANDO III
       UNITED STATES BANKRUPTCY JUDGE

William Arthur Vieth ("Mr. Vieth"), by and through his undersigned counsel, as and for his limited objection to the motion (the "Motion") of 1819 Weeks Ave. Realty Corp. (the "Debtor") for entry of an Order: (a) Authorizing and Scheduling an Auction to Solicit Bids for the Sale of the Debtor's Property Located at 47 Perry Street, New York, NY 10014, Free and Clear of Liens, Interests and Encumbrances; (b) Approving Stalking Horse Contract, Bidding Procedures and Certain Fee Protections; (b) Scheduling a Hearing to Consider Approval of the Sale; (d) Establishing the Form and Manner of Notices Related Thereto; and (e) Granting Such Other and Further Relief as this Court Deems Just and Proper, respectfully represents and alleges as follows:

**BACKGROUND**

1. The Debtor owns a property located at 47 Perry Street (the "Residential Building"), which is a five-story residential apartment building built prior to 1974. It contains twenty (20) class "A" residential units. The Residential Building has not converted to coop or condo ownership. As such, the Residential Building and the apartments therein are rent stabilized.

2. Mr. Vieth is the tenant in occupancy of an apartment in the Residential Building ("Apartment 2A") pursuant to a one year rent stabilized, market-rate lease that commenced on October 27, 2020 at a monthly rent of $2,850.00. Thereafter Mr. Vieth's lease was renewed, for successive one year terms, as follows: (a) October 27, 2021 at a monthly rental rate of $3,200.00 ("the 2021 Renewal"); (b) October 27, 2022 at a monthly rental rate of $3,850.00 ("the 2022 Renewal"); (c) October 27, 2023 at a monthly rental rate of $3,650.00 ("the 2023 Renewal"); and (d) October 27, 2024 at a monthly rental rate of $3,650.00 ("the 2024 Renewal"). When Mr. Vieth renewed his lease in 2023 and in 2024, the Debtor (improperly/wrongly) told Mr Vieth that it required an advance payment under the terms of the 2023 Renewal and, thereafter, the 2024 Renewal. Pursuant to the directions given to him, Mr. Vieth paid his entire rent upfront, totaling $43,800.00, in October/November 2023 for the 2023 Renewal and again totaling $43,800.00 in October 2024 for the 2024 Renewal.

3. At that time and pursuant to the New York State Division of Housing and Community Renewal ("DHCR") apartment registration history, Apartment 2A was registered as "RENT CONTROL – REG NOT REQUIRED" starting from 1985 through the present. Assuming that Apartment 2A was subject to rent control prior to Mr. Vieth's tenancy, the Debtor would have been allowed, upon the vacatur of the rent-controlled tenant, to charge the first incoming tenant any rent agreed to between the parties. RSC § 2521.1(a)(1).

2

4. Upon information and belief, however, Mr. Vieth was the first tenant in occupancy following the vacatur of the prior rent-controlled tenant, and took possession of the apartment after the Housing Stability and Tenant Protection Act of 2019 ( the "HSTPA") removed the rent increase pathway to deregulation for rent stabilized apartments. Therefore, Mr. Vieth was entitled to a rent stabilized lease subject to Rent Guidelines Board ("RGB") increases.

5. Upon information and belief there has never been a tenant of the subject apartment with a rent exceeding the threshold for deregulation. As such, unless the landlord can produce a lease and proof of payment of rent exceeding $2,000.00 prior to June 23, 2011, or $2,700.00 prior to June 13, 2019, immediately subsequent to the vacatur of the putative rent-controlled tenant, Mr. Vieth was and continues to be a rent stabilized tenant since the inception of his tenancy and accordingly was wrongly overcharged. Notwithstanding, assuming (for the sake of discussion) that there was an intervening tenant (which Mr Vieth does not believe existed) after the presumed rent-controlled tenant vacated and before Mr. Vieth commenced occupancy, the Debtor had failed to have ever registered the rent of the intervening tenant with the DHCR. Therefore, Apartment 2A would be rent-stabilized, and Mr. Vieth's legal regulated rent would be calculated based on the default formula. As such, since the inception of his tenancy, Mr. Vieth has continually been illegally treated as a market rate tenant. Thus, Mr. Vieth would be entitled to: (a) a State Court determination that his apartment is rent-stabilized and (b) reimbursement of any excess rent amounts paid by him above the proper legal regulated rent, plus treble damages, which he has paid since commencing his tenancy on or about October 27, 2020. It is submitted that the Debtor cannot dispute that besides the DHCR Rent Registration listing the subject premises as "RENT CONTROL – REG NOT REQUIRED", that the Debtor had never registered the rent with DHCR for Apartment 2A.

6. Mr. Vieth believes that the Debtor had engaged in a fraudulent scheme to deregulate the subject apartment. Mr. Vieth submits that the Debtor's fraudulent conduct included its continuing failure to have ever registered the subject apartment as rent stabilized following the vacatur of the prior putative rent-controlled tenant and accordingly, having illegally treated Apartment 2A as a market rate apartment despite there being no legal basis to exempt the apartment from rent stabilization. Thus the legal regulated rent for Apartment 2A will need to be retroactively redetermined pursuant to DHCR's default formula. Apartment 2A has been and continues to be subject to the provisions of the Rent Stabilization Law (NYC Adm Code § 26-501, *et seq.*) and subject to the registration requirements of the Rent Stabilization Law set forth at NYC Admin Code §26-517, which provides at subdivision (e) thereof that the failure to file a proper and timely initial or annual registration with the DHCR shall, until such time as such registration is filed, bar an owner from applying for or collecting any rent in excess of the legal regulated rent in effect on the date of the last preceding proper registration statement. The legal regulated rent for Mr. Vieth's apartment is set at the amount of rent reflected in the last properly filed registration with the DHCR. Here, insofar as there is no amount registered with DHCR, Mr. Vieth's rent must be set pursuant to DHCR's default method. Because Mr. Vieth's apartment was deregulated pursuant to a fraudulent scheme, the rents charged on the base date may not be used for the purpose of calculating the legal regulated rents and Mr. Vieth is entitled to recover the difference between the amount he has paid and the default formula calculation amount, along with treble damages. A copy of Mr. Vieth's filed proof of claim is attached as *Exhibit "A"* (designated by the Clerk of Court as Claim No. 3).

7. By letter dated September 23, 2024, Mr. Vieth's state court counsel sent the Debtor a letter detailing the allegations herein, annexing the DHCR apartment rent registration history, and requesting documentation to substantiate the legal rent for the subject premises, a copy of which is attached as *Exhibit "B"*. The Debtor responded to the September 23, 2024 letter by

4

email dated November 8, 2024 but failed to address any of Mr. Vieth's allegations and stated only that the previous tenant died before the 2019 HSTPA, a copy of which is attached as *Exhibit "C"*. However, upon information and belief, the previous tenant had actually passed away on or about November 2019, after the 2019 HSTPA.

8. Mr. Vieth's initial lease contains a clause providing that the owner is entitled to recover attorneys' fees incurred as a result of a breach of the lease by the tenant. By operation of law, Mr. Vieth has a reciprocal right to recover the costs and attorneys' fees. Also, pursuant to the Rent Stabilization Law §26-516(a), Mr. Vieth has the statutory right to recover the costs and attorneys' fees.

9. The importance of, at a minimum, immediately liquidating Mr. Vieth's claim in the State Supreme Court is established by the Debtor's current intention to market and sell the Apartment Building thus making a prospective purchaser potentially liable for the rent overcharges collected by the Debtor. On January 29, 2025, and having received no notice of the bankruptcy filing, Mr. Vieth had filed a Verified Complaint (Index No. 151303/2025) with the State Supreme Court seeking the relief set forth above (the "Tenant Action"). Upon the subsequent discovery of the filing of the Debtor's instant chapter 11 case, Mr. Vieth's counsel requested that the Debtor consent to modify the automatic stay so as to permit the Tenant Action to proceed. The Debtor did not consent thereto but had suggested that everything should remain "status quo" pending a determination as to what the Debtor ultimately intended to do with the property.

10. In an abundance of caution and on March 19, 2025, the Mr. Vieth filed a motion to modify the automatic stay so as to allow him to continue the Tenant Action (or, if necessary, start a new state court action) to determine and liquidate his claim for rent overcharges and to determine the legal regulated rent amounts (*see* ECF Doc. No. 36).

5

11. The Debtor, however, is now pursuing authorization to schedule an auction sale of the Residential Building pursuant to 11 U.S.C. § 363 together with bidding procedures but has failed to disclose the existence of the claims being asserted by Mr Vieth.

**LIMITED OBJECTIONS**

A. **The Disclosure Statement and Plan Fail to Clearly Discuss Successor Liability for Rent Overcharges**

12. Mr. Vieth objects to the Bidding Procedures because they do not affirmatively provide notice that any potential purchaser of the Apartment Building will continue to be responsible for any rent overcharges to Mr. Vieth and/or any of other tenant of the Apartment Building who is similarly situated. Specifically, § 2526(f)(2)(i) of the New York Rent Stabilization Code, entitled: "Responsibility for Overcharges," provides in relevant part, as follows:

> For overcharge complaints filed or overcharges collected on or after April 1, 1984, a current owner shall be responsible for all overcharge penalties, including penalties based upon overcharges collected by any prior owner. However, in the absence of collusion or any relationship between such owner and any prior owner, where no records sufficient to establish the legal regulated rent were provided at a judicial sale, or such other sale effected in connection with, or to resolve, in whole or in part, a bankruptcy proceeding, mortgage foreclosure action or other judicial proceeding, an owner who purchases upon or subsequent to such sale shall not be liable for overcharges collected by any owner prior to such sale, and treble damages upon overcharges that he or she collects which result from overcharges collected by any owner prior to such sale. An owner who did not purchase at such sale, but who purchased subsequent to such sale, shall also not be liable for overcharges collected by any prior owner subsequent to such sale to the extent that such overcharges are the result of overcharges collected prior to such sale.

*See In re Fordham Fulton Realty Corp., Petitioner-Landlord-Appellant v. Nelson DeLeon, Respondent-Tenant- Respondent*, 2019 N.Y. Misc. LEXIS 5684, 65 Misc. 3d 141(A) (App. Term, 1st Dept. 2019):

> Generally, RSC § 2526.1(f)(2)(i) provides that "a current owner shall be responsible for all overcharge penalties, including penalties based upon overcharges collected by any prior owner." RSC

6

> § 2526.1(f)(2)(i) may, however, shield a current owner from overcharges collected by a predecessor owner where the current owner is a purchaser or successor to a purchaser at a judicial sale, "in the absence of collusion or any relationship between such owner and any prior owner" and "where no records sufficient to establish the legal regulated rent were provided at [the] judicial sale. . ." (RSC § 2526.1(f)(2)(i); *see Matter of Gaines v. New York State Div. of Hous. & Community Renewal*, 90 N.Y.2d 545 (1997)). Here, while the record shows that landlord is a successor to a purchaser at a judicial sale, landlord fails to show or even allege the absence of collusion or any relationship between the prior purchaser and prior owner, or that adequate rental records were unavailable at the judicial sales (*see generally Matter of Grimm v. State of New York Div. of Hous. & Community Renewal*, 4 A.D.3d 295, 297-298 (2004), *lv denied*, 4 N.Y.3d 704 (2005)). Indeed, landlord has supplied no proof on this critical issue and, in particular, did not even allege that no records sufficient to establish the legal regulated rent were provided at the prior judicial sale; thus, landlord failed to establish the condition precedent for the application of the exemption or raise a factual issue (*cf. 247 West 11th St. Rlty. Assocs. V. Houser*, 177 Misc. 2d at 939). Merely being a successor to a purchaser at a mortgage foreclosure action is not enough to shield the current landlord from liability for the overcharge award. In these circumstances, landlord is not shielded from carryover liability for the overcharge award.

*See also Sean Fullan, et al., Respondents v. 142 East 28th Street Associates, et al., Appellants*, 1 N.Y.3d 211, 216, 770 N.Y.S.2d 707, 802. Section 2526.1(f)(2)(i) of the Rent Stabilization Code provides that a current owner has "total liability" for the overcharges of a predecessor landlord:

> The Code clearly imposes a different and much greater level of liability upon a current owner in the context of rent overcharges—that of *total liability* for the overcharges of a predecessor landlord—than in the context of FMRAs. (*Emphasis added*.)

13. Based upon the foregoing, the obligations of the Debtor to the current *and former tenants* who were unlawfully overcharged will not be extinguished upon a sale of the Residential Building under the Plan. Rather, the successful bidder for the Residential Building will inherit such obligations at closing. Respectfully, such potential liability on the part of any purchaser of the Residential Building (including if any secured creditor should credit bid its debt to acquire the

7

Residential Building) should be clearly and conspicuously stated in the Bidding Procedures and in all related notices or selling materials.

14. The Debtor's Plan of Reorganization dated January 27, 2025 ( no Disclosure Statement has yet been filed) merely provides that all unexpired leases and executory contracts that are not assumed and assigned to "the purchaser" will be rejected.

15. Given that the Plan calls for the assumption of the residential leases at the Property, if the Plan is confirmed, Mr. Vieth's Proof of Claim (and those of similarly situated current and former tenants) become debts that must be cured. Whether such Claim will be "Allowed Claims" should be determined in the New York State Court. Accordingly, the Claim of Mr Vieth and the claims of similarly situated current (and former) tenants should be disclosed and the amounts either be reserved in cash as Disputed Claims or be assumed obligations of any purchaser of the Property.

16. As for the claims that arise from tenants that are no longer current tenants, there is a legal issue which must be addressed as to whether the Residential Building can be sold free and clear of those claims pursuant to Section 365(f) of the Bankruptcy Code.

## **CONCLUSION**

17. For the foregoing reasons, it is respectfully requested that the Court deny the Motion to the extent set forth herein and that the Court grant such other and further relief as may be just and proper.

Dated: New York, New York
May 26, 2025

**PICK & ZABICKI LLP**
Attorneys for William Arthur Vieth

By:  */s/ Douglas J. Pick*
Douglas J. Pick, Esq.
369 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 695-6000

8