**EXHIBIT "A"**



# HIMMELSTEIN McCONNELL
# GRIBBEN & JOSEPH LLP

SAMUEL J. HIMMELSTEIN (RETIRED)
WILLIAM J. GRIBBEN
SERGE JOSEPH
DAVID S. HERSHEY-WEBB
RONALD S. LANGUEDOC
JESSE D. GRIBBEN
CATHARINE A. GRAD

ATTORNEYS AT LAW
15 MAIDEN LANE, 17TH FLOOR
NEW YORK, NY 10038

TEL (212) 349-3000 · FAX (212) 587-0744
WWW.HMGJLAW.COM

DANIEL S. NAKOS
MILAD MOMENI
VANESSA VECCHIARELLO
ASSOCIATES

KEVIN R. McCONNELL
OF COUNSEL

September 23, 2024

**Via Certified Mail Return Receipt Requested**
1819 Weeks Avenue Realty Corporation
544 East 86th Street, Apt 14E
New York, NY 10028

        Re:    **William Arthur Vieth**
                      47 Perry Street, Apt 2A

Dear Sir or Madam:

       This firm has been retained by William Arthur Vieth with regards to his tenancy at the above referenced apartment.

       My client commenced occupancy of the subject apartment pursuant to a one year de-stabilized lease commencing October 27, 2020 at a monthly rental rate of $2,850.00. Thereafter his lease was renewed, for successive one year terms on October 27, 2021, at a monthly rental rate of $3,200, on October 27, 2022, at a monthly rental rate of $3,850.00, on October 27, 2023, at a monthly rental rate of $3,650.00, and on September 9, 2024 at a monthly rate of $3,650.00.

       For the duration of his tenancy, my client has been treated as a market tenant. However, my client moved into the apartment on or about October 27, 2020, after the Housing Stability and Tenant Protection Act ("HSTPA") removed the rent-increase pathway to deregulation for rent stabilized apartments. As such, after the vacatuer of the prior rent controlled tenant, the subject apartment, in a 20-unit building built prior to 1974, became rent stabilized.

       The New York State Division of Housing and Community Renewal ("DHCR") apartment registration history for the subject apartment provides, Rent Control – Reg Not Required, from 1985 through the present.[1] *Assuming arguendo*, the subject apartment was subject to rent control prior to my client's tenancy, the landlord may, upon the vacatur of the rent controlled tenant, charge the first incoming tenant any rent agreed to between the parties. RSC § 2521.1(a)(1). My

---

[1] Annexed hereto as Exhibit "A" is a copy of the DHCR apartment registration history.

client is seemingly the first tenant in occupancy following the vacateur of the rent controlled tenant and therefore, is entitled to a rent stabilized lease at the rent agreed to between the parties.

If there was an intervening tenant, after the presumed rent controlled tenant vacated and before my client commenced occupancy, that lease or leases may also be relevant in determining the proper stabilized rent and corresponding overcharge damages, particularly if that prior tenant took possession of the apartment before the passage of the HSTPA. Based on the landlord's failure to ever register the apartment after the rent controlled tenant vacated, the DHCR or a Court, will likely calculate the rent based on its default formula (lowest rent for a rent stabilized apartment in the building at the time my client commenced occupancy) or freeze the rent at the amount my client was charged and paid ($2,850.00) at the inception of his tenancy. Under either scenario, damages will easily exceed $100,000.00.[2]

Pursuant to the HSTPA, Rent Stabilization Law § 26-516(a)(2) was amended to provide that treble damages are available dating from six years prior to the date a complaint is filed. Also, pursuant to the HSTPA, Rent Stabilization Law § 26-516(a)(4) was amended to provide that "…[a]n owner found to have overcharged *shall* [replacing the word *may*] be assessed the reasonable costs and attorneys' fees to a tenant who prevails in an overcharge proceeding." Furthermore, if a Court of competent jurisdiction were to find the rent overcharge to be willful, my client could be awarded punitive damages *triple* the amount of the overcharge for up to the full six years.

It sum, it is my client's sincere desire to resolve this issue amicably. However, my client is prepared to litigate in the proper forum and if compelled to do so his rights will be vigorously pursued by this firm. Please contact me or have your attorney contact me at your earliest convenience.

Very truly yours,

Jesse Gribben

cc:    William Arthur Vieth (via e-mail)

---

[2] In 2021, my client's overcharge damages are $12,600.00 calculated as follows: $3,200.00 (rent paid per month) - $2,850.00 (initial rent) = $350.00 per month overcharge x 12 months = $4,200.00 x 3 (treble damages) = $12,600.00. In 2022, my client's overcharge damages are $36,000.00 calculated as follows: $3,850.00 (rent paid per month) - $2,850.00 (initial rent) = $1,000.00 per month overcharge x 12 months = $12,000.00 x 3 (treble damages) = $36,000.00. In 2023, my client's overcharge damages are $28,800.00 calculated as follows: $3,650.00 (rent paid per month) - $2,850.00 (initial rent) = $800.00 per month overcharge x 12 months = $9,600.00 x 3 (treble damages) = $28,800.00. In 2024, my client's overcharge damages are $28,800.00 calculated as follows: $3,650.00 (rent paid per month) - $2,850.00 (initial rent) = $800.00 per month overcharge x 12 months = $9,600.00 x 3 (treble damages) = $28,800.00. My client's total overcharge damages for the 2021, 2022, 2023, and 2024 leases are $106,200.