# EXHIBIT "A"

FILED: NEW YORK COUNTY CLERK 08/21/2020 04:43 PM
NYSCEF DOC. NO. 12

INDEX NO. 161138/2019
RECEIVED NYSCEF: 08/21/2020

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| Benjamin Dixon  and Christoph Meinrenken, | ) |
| | ) Index No.  161138/2019 |
| Plaintiffs, | ) |
| | ) |
| --against-- | ) **PROPOSED AMENDED COMPLAINT** |
| | ) |
| 1819 Weeks Avenue Realty Corp., | ) |
| Nancy J. Haber, and XYZ Corp. | ) |
| | ) |

BENJAMIN DIXON and CHRISTOPH J. MEINRENKEN ("Plaintiffs"), by their

attorneys, COLLINS, DOBKIN & MILLER LLP, respectfully allege the following upon

information and belief as and for their verified Complaint:

### NATURE OF PROCEEDINGS

1.      This is an action for rent overcharges, reformation of Plaintiffs' leases, damages

and injunctive relief under plaintiffs' warranty of habitability and for attorneys' fees.

2.      This action arises, in part, from Defendants having originally rented to each

Plaintiff an apartment which Defendants, and/or its agents, falsely claimed and otherwise

fraudulently treated and held out to be unprotected by New York's rent stabilization laws.

3.      Plaintiffs are tenants of two separate apartments at 47 Perry Street, New York,

New York (the "Building"). BENJAMIN DIXON is the tenant of Apartment #3A and

CHRISTOPH MEINRENKEN is the tenant of Apartment #4C.

4.      Based upon registration information with the New York City Department of

Housing Preservation and Development ("HPD"), Defendant 1819 WEEKS AVE. CORP., is and

at all relevant times was the owner of the Building and has its principal executive office at 544

East 86th Street, Apt. 14E, New York, NY 10028 and lists its address for service at c/o

MICHAEL S. HABER ESQ. (sic) 11 Broadway, Suite 615, New York, NY 10007.

5.    Defendant NANCY J. HABER executed two lease agreements with Plaintiff

MEINRENKEN in May of 2019 and June of 2020. These lease agreements list Defendant

NANCY J. HABER as the owner rather than Defendant 1819 WEEKS AVENUE REALTY

CORP and list her residence as 544 East 86th Street, Apt. 14E, New York, NY 10028. Defendant

NANCY J. HABER signed both leases in her personal capacity not as a corporate officer for

1819 WEEKS AVENUE REALTY CORP.   Moreover, for purposes of claims relating to

building conditions, NANCY J. HABER as a designated agent, is an "owner" under the New

York City Housing Maintenance Code  § 27-2004 (45) and the New York State Multiple

Dwelling Law §4(44).

6.    All apartments referenced herein are subject to the Rent Stabilization Law of

1969, as amended (N.Y.C. Admin Code §26-501 et seq. "RSA") and the Rent Stabilization Code

(9 NYCRR Parts 2520-2531 "RSC") by virtue of the fact that the respective units are not subject

to any applicable exemption from the RSA or RSC as amended by the Housing Stability and

Tenant Protection Act of 2019 ("HSTPA").

7.    In the case of both Plaintiffs, any claimed deregulation of their respective

apartments is based upon clear fraud.

8.    In the case of Plaintiff Benjamin Dixon, there is no reliable rent registration

history which documents any basis for permanent deregulation or which otherwise establishes a

legal rent during the period from 2005 forward – the last reliable registered rent being $759.84

filed in 2004.

FILED: NEW YORK COUNTY CLERK 08/21/2020 04:43 PM    INDEX NO. 161138/2019
NYSCEF DOC. NO. 12                                    RECEIVED NYSCEF: 08/21/2020

9.      In such case the legal regulated rent must be established in accordance with provisions of the recently adopted HSTPA as modified by the Court of Appeals in the recent decision of *Matter of Regina Metro. Co., LLC v NY State Div. of Hous. & Community Renewal*, ___NY3d___, 2020 NY Slip Op 02127 (2020).

10.     The HSTPA specifically amends paragraph 8 of subdivision a of section 12 of section 4 of chapter 576 of the laws of 1974 (constituting the emergency tenant protection act of nineteen seventy-four) adding a new paragraph 9 which permits a broad review of "whether the legality of a rental amount charged or registered is reliable in light of all available evidence including, but not limited, to whether an unexplained increase in registered or lease rents, or a fraudulent scheme to destabilize the housing accommodation, rendered such rent or registration unreliable...".

11.     *Regina Metro* modified this formula for all rent overcharges occurring prior to June 14, 2019 by limiting examination (on due process grounds) of rent records to the four year period prior to the adoption of the HSTPA (to June 15, 2015) except in cases of fraud.  As the Court explained:

> The rule that emerges from our precedent is that, under the prior law, review of rental history outside the four-year lookback period was permitted only in the limited category of cases where the tenant produced evidence of a fraudulent scheme to deregulate and, even then, solely to ascertain whether **fraud** occurred — not to furnish evidence for calculation of the base date rent or permit recovery for years of overcharges barred by the statute of limitations (*Grimm*, 15 NY3d at 367).
> In **fraud** cases, this Court sanctioned use of the default formula to set the base date rent.  Otherwise, for overcharge calculation purposes, the base date rent was the rent actually charged on the base date (four years prior to initiation of the claim) and overcharges were to be calculated by adding the rent increases legally available to the owner under the RSL during the four-year recovery period.
>
> (*Matter of Regina Metro. Co., LLC v NY State Div. of Hous. & Community Renewal*, ___NY3d___, 2020 NY Slip Op 02127, *5 [2020]*)

FILED: NEW YORK COUNTY CLERK 08/21/2020 04:43 PM          INDEX NO. 161138/2019
NYSCEF DOC. NO. 12                                        RECEIVED NYSCEF: 08/21/2020

12.    As the claims in this case are based upon fraudulent deregulation, there is no limitations period on this review of the rent history.  Regina Metro, does however, require any calculation of damages in fraud cases to be based on what is known as the "default formula" RSC §2522.6(b)(3)(i) which is "the lowest rent registered pursuant [to the RSC] for a comparable apartment in the building in effect on the date the complaining tenant first occupied the apartment" or, if none is available, as otherwise set forth in that subdivision.

13.    In application, damages for rent overcharges in this case will require disclosure by the owner (or by subpoena of records held by the NYS Division of Housing and Community Renewal) of the rent histories for each apartment as of the base date applicable under *Regina Metro* (which is June 15, 2015).

14.    In the case of Plaintiff Christoph Meinrenken the apartment was fraudulently registered as rent controlled through 2019, leaving no way to establish a legal rent by looking to the last reliable rent registration.

15.    In the latter case, rents must also be set by the default formula.

*The Defendant's Knowledge of Rent Stabilized Status*

16.    In both instances the Defendants filed false rent registrations with HCR and treated the Plaintiffs as unregulated or "free market" tenants, charging rents that bore no relationship whatsoever to any legal regulated rent.

17.    Willful rent overcharges are subject to treble damages under HSTPA Part F §4[a].1

FILED: NEW YORK COUNTY CLERK 08/21/2020 04:43 PM    INDEX NO. 161138/2019
NYSCEF DOC. NO. 12    RECEIVED NYSCEF: 08/21/2020

18.    Damages for rent overcharges are subject to a limitation of six years preceding the date of filing – as modified by Regina Metro to a base date of June 15, 2015.

*The Plaintiffs*

*PLAINTIFF DIXON*

19.    Plaintiff BENJAMIN DIXON rented apartment 3A at the Building under a lease commencing on May 1, 2016 and expiring on April 30, 2017, at a rent of $3,700.00 per month.

20.    DIXON renewed his lease and from July, 2017 through April 2018 paid a rent of $3,800.00.

21.    In May of 2018 DIXON's rent was lowered to $3,650.00 per month which was paid through March of 2019. From April 2019 through November 2019 partial payment was tendered ($1,825.00) due to ongoing habitability issues.

22.    The Defendants filed rent registrations with DHCR from 1984 through 1992 listing the apartment as "RENT CONTROL -REG NOT REQUIRED".

23.    From 1993 through 1998 the apartment was registered as rent stabilized "RS" under the names of prior tenants. The last legal regulated rent with a tenant in occupancy was listed at $759.84 in 1998.

24.    In 1999 no registration is listed.

25.    From 2000 through 2004 the apartment was registered as vacant "VA", with the legal rent still listed as $759.84.

FILED: NEW YORK COUNTY CLERK 08/21/2020 04:43 PM          INDEX NO. 161138/2019
NYSCEF DOC. NO. 12                                        RECEIVED NYSCEF: 08/21/2020

26.    In 2005 the apartment was listed as temporarily exempt "TE" due to "OWNER OCCUPIED/EMPLOYEE".

27.    From 2006 forward no registration can be found "REG NOT FOUND FOR SUBJECT PREMISES".

28.    This rent registration history provides no evidence of permanent deregulation and otherwise establishes no basis on which to set the lawful rent.

29.    Nothing in Plaintiffs DIXON's initial lease nor in any extension thereto indicated that his apartment is subject to rent stabilization. Indeed Plaintiff DIXON was given a "LEASE FOR AN UNREGULATED APARTMENT".

30.    Given the failure of the Defendants to properly register Plaintiff DIXON's apartment with HCR, there is no reliable rent history from which to establish a legal regulated rent and the default formula must be applied to establish the legal regulated rent.

*PLAINTIFF MEINRENKEN*

31.    Plaintiff MEINRENKEN initially rented his apartment (#4C) under a one year lease commencing on June 14, 2019 and ending on June 13, 2020, at a rent of $3,300. Plaintiff MEINRENKEN and Defendant NANCY J. HABER renewed the terms of the prior lease agreement by entering a new lease agreement to commence on June 14, 2020, for a period of two years, at a rent of $ 3,375 for the first year and $ 3,450 for the second year. These lease agreements list Defendant Haber as the owner/landlord.

32.    The lease specifically states that it is not a rent stabilized lease.

FILED: NEW YORK COUNTY CLERK 08/21/2020 04:43 PM    INDEX NO. 161138/2019
NYSCEF DOC. NO. 12                                    RECEIVED NYSCEF: 08/21/2020

33.    All rent has been paid through the date of this complaint.

34.    The DHCR rent registration history for apartment #4C lists it as "RENT CONTROL" [as distinct from "RS" for rent stabilized] each and every year from 1984 through 2019.

35.    Upon information and belief there has been no tenant subject to the New York City rent control law residing in the apartment since at least 2017.

36.    All registrations on file for the past 2 to 3 years are therefore fraudulent.

37.    Since Plaintiff MEINRENKEN's apartment has never been lawfully deregulated and since Plaintiff MEINRENKEN has been fraudulently treated as a free market tenant, the apartment is subject to rent stabilization and a legal regulated rent must be set pursuant to the RSC "default formula".

*FRAUD / WILLFULNESS*

38.    Each and every lease offered to Plaintiffs by the Defendant failed to represent that their apartments were subject to rent stabilization, and included language that explicitly misled the Plaintiffs as to their regulatory status.

39.    Those representations regarding the regulatory status of the respective apartments were false when made.

40.    Those representations were intended to be relied upon by the Plaintiffs.

FILED: NEW YORK COUNTY CLERK 08/21/2020 04:43 PM    INDEX NO. 161138/2019
NYSCEF DOC. NO. 12                                        RECEIVED NYSCEF: 08/21/2020

41.    At the time they were made and thereafter, those representations were known or should have been known by Defendants to be false.

42.    Those false representations, together with the other acts and omissions alleged in this complaint, were part of a fraudulent scheme to unlawfully deregulate rent stabilized apartments at the Building.

43.    Plaintiffs relied upon such false representations in paying unlawfully high rents for their apartments and in signing leases that failed to conform in significant respects with the requirements of the Rent Stabilization Law, and in otherwise refraining from asserting rights afforded by the Rent Stabilization Law.

44.    Because the Defendants' breaches of the requirements of the Rent Stabilization Law and the Rent Stabilization Code include, *inter alia*, the fraudulent misrepresentation of the status of Plaintiffs' apartments, the rents charged cannot be relied upon as legal regulated rents.

45.    Defendants cannot, therefore, sustain their burden of demonstrating that the overcharges were not willful.

46.    Throughout the time when Plaintiffs were offered purportedly unregulated leases the offers were not in the form required by HCR for renewal leases and the required rider setting forth the rights of rent stabilized tenants was omitted from each renewal offer.

47.    Because these purportedly free market lease offers violated the requirements of the Rent Stabilization Code and the Rent Stabilization Law, they could not serve as a valid basis for increasing Plaintiffs' rent.

FILED: NEW YORK COUNTY CLERK 08/21/2020 04:43 PM    INDEX NO. 161138/2019
NYSCEF DOC. NO. 12                                           RECEIVED NYSCEF: 08/21/2020

48.    Defendants owed Plaintiffs a continuing duty to include such information in each lease and renewal.

49.    Throughout the time when Plaintiffs were offered purportedly free market leases Defendants failed to properly register Plaintiffs' apartments with DHCR as rent stabilized. Because of this failure, under Rent Stabilization Code section 2528.4, the Defendant could not and may not now lawfully raise Plaintiffs' rents above the legal rent established by this court until a renewal is given following the provision of proper one or two year leases and the proper registration of rents.

*BUILDING WIDE HABITABILITY ISSUES*

50.    Both Plaintiffs have been subjected to building wide habitability issues, some of which have occurred subsequent to the filing of the Verified Complaint in November 14, 2019 and others which preceded the filing and were mentioned in a footnote in the previous complaint.

51.    On January 14, 2020, Con Edison turned off the boiler in the building due to carbon monoxide leaking from the boiler.

52.    The following day, the Department of Buildings and the Department of Housing Preservation and Development (HPD) issued violations to the landlord related to the inoperable boiler and failure to provide heat and hot water to the individual apartment units.

53.    In addition, the cooking gas was shutoff on January 14, 2020 and has not been functioning since that date. Upon information and belief, the landlord has failed to obtain the needed permits to restore the cooking gas and the Plaintiffs have been without cooking gas since January 14, 2020.

FILED: NEW YORK COUNTY CLERK 08/21/2020 04:43 PM    INDEX NO. 161138/2019

NYSCEF DOC. NO. 12                                                      RECEIVED NYSCEF: 08/21/2020

54.     In addition, the landlord has failed to remedy the pigeon roost that exists on the west side of the building, which attracts rats, mice, and other vermin in the basement creating a health hazard for persons occupying the building. This pigeon roost has existed since the beginning of all leases that are the subject of this action.

55.     Further, there is a building wide issue with sewage smells permeating the lobby that sometimes rise to the upper floors that is believed to be caused by an uncapped toilet in the laundry room or plumbing issues in one of the ground floor studio apartments.

56.     On or about February 7, 2020, the Department of Buildings issued a violation due to illegal plumbing in the laundry room and failure to provide a sprinkler system required for laundry rooms with more than one dryer unit. To date, the landlord has not obtained permits to fix the laundry or install sprinklers depriving the tenants of use of laundry service appliances. The laundry room appliances were provided at the commencement of the lease terms and represented as provided services.

57.     Currently, Defendants building has more than 141 open violations issued by the Department of Housing and Preservation.  There are 49 open Class A violations, 66 open Class B violations, and 24 Class C violations.

58.     The Defendants have known and been aware of these violations.

59.     Most recently, HPD conducted a building wide inspection on July 24, 2020. Upon information and belief the Defendants and their agents have failed and refused to respond to HPD notices and communication attempts.

FILED: NEW YORK COUNTY CLERK 08/21/2020 04:43 PM    INDEX NO. 161138/2019

NYSCEF DOC. NO. 12                                          RECEIVED NYSCEF: 08/21/2020

60.    The property located at 47 Perry is not currently registered with HPD as required by Multiple Dwelling Law.

## INDIVIDUAL APARTMENT HABITABILITY ISSUES IMPACTING PLAINTIFF DIXON'S APARTMENT

61.    Plaintiff Dixon has experienced chronic habitability problems and loss of services in his individual apartment.

62.    Specifically, Dixon's apartment currently has twenty-six violations issued by the Department of Housing Preservation & Development (HPD) which remain uncured. Among these, there are nine Class A violations, fifteen Class B violations, and two Class C violations. Additionally, HPD classifies many of these violations as rent impairing violations.

63.    Plaintiff Dixon has been continuously impacted by chronic plumbing failures in both the bathroom and the kitchen of his apartment unit.

64.    The kitchen sink has been leaking since February 8, 2020 and the Defendants have received and ignored numerous HPD violations. The kitchen sink remains leaking and drains into a bucket which has to be emptied every two days.

65.    Additionally, the plumbing in Dixon's bathroom has failed continuously and is affected by blocked drains, broken bathtub hardware, and a broken shower multiple times during his tenancy which have never been fully repaired. There is a hole in the wall of the bathroom where the faucet cover is supposed to be located. Defendants have actual and constructive notice of all these conditions.

FILED: NEW YORK COUNTY CLERK 08/21/2020 04:43 PM    INDEX NO. 161138/2019
NYSCEF DOC. NO. 12                                              RECEIVED NYSCEF: 08/21/2020

66.    Dixon has also suffered chronic problems with the electrical wiring in his unit where he has flickering lights and outlets that fail intermittently though this problem has been less frequent since the laundry room was closed in February 2020.

67.    Plaintiff Dixon's unit has been impacted by high levels of carbon monoxide at various points, and peeling paint.

68.    Defendant Nancy J. Haber has not responded to any phone calls or text messages sent requesting repairs in Dixon's apartment unit since before January 2019.

69.    In addition to these conditions described in the HPD violations, Plaintiff Dixon's unit is impacted by significant issues with non-functioning appliances including an inoperable refrigerator, dishwasher, and stove, which have been intermittently dysfunctional since the Dixon lease commenced, and finally stopped functioning within the past year. After the landlord failed to bring a new refrigerator as promised, Plaintiff Dixon purchased his own refrigerator. Notably, when the prior dishwasher stopped working and could not be repaired in August 2018, Defendants' agents removed a dishwasher from another apartment and that dishwasher started flooding not long after it was installed.

70.    When Dixon's dishwasher began flooding in May 2018, Defendant Nancy Haber sent an employee to inspect the dishwasher. During this inspection, the employee turned on the dishwasher on and observed it flooding and instructed Dixon not to use the dishwasher. The dishwasher was never fixed and remains inoperable today.

71.    More recently, after this action was commenced in November 2019, the same employee, Antonio Vasquesz, stated openly, to other tenants in the building and to Plaintiff Dixon, that Defendant Nancy J. Haber instructed him not to provide repairs and maintenance in Plaintiff Dixon's apartment.

### JURISDICTION AND VENUE

72.    The subject tenancies and acts giving rise to the causes of action alleged occurred in New York County. Venue is proper pursuant to Civil Practice Law and Rules Section 503(a) because the plaintiffs reside in New York County.

### FIRST CAUSE OF ACTION: SINGLE DAMAGES

73.    Plaintiffs reallege all of the allegations contained in paragraphs 1 through 72 of this Amended Verified Complaint.

74.    Each of the Plaintiffs' apartments is subject to the provisions of the Rent Stabilization Law, New York City Admin Code 26-501 *et seq*.

75.    Under NYC Admin. Code §26-516(a) and (b), an owner cannot charge or collect any rent in excess of the legal regulated rent.

76.    Each of the Plaintiffs has paid overcharges in an amount equal to the difference between his or her monthly rent payments, and the legal regulated rent as established by the RSL, RSC and the HSTPA (as modified by *Regina Metro*) in amounts to be determined at trial.

77.    Plaintiffs also demand compensation and related penalties and charges for any overcharges paid during the pendency of this action in an amount to be determined at trial.

FILED: NEW YORK COUNTY CLERK 08/21/2020 04:43 PM    INDEX NO. 161138/2019
NYSCEF DOC. NO. 12                                                    RECEIVED NYSCEF: 08/21/2020

## SECOND CAUSE OF ACTION: TREBLE DAMAGES

78.    Plaintiffs reallege all of the allegations contained in paragraphs 1 through 77 of this Amended Verified Complaint.

79.    Defendants were, during the rental period covered by this Verified Complaint, on notice that Plaintiffs' apartments were rent stabilized and that their rents were and have been in excess of the legal regulated rent.

80.    Defendants cannot sustain their burden of pleading and proving that the overcharges were not willful.

81.    Pursuant to NYC Admin. Code § 26-516(a) as amended by the HSTPA, each Plaintiff is entitled to treble damages equal to three times the difference between their monthly rent payments over the period of their respective tenancies and the legal regulated rent as established by the RSL, RSC and the HSTPA (as modified by *Regina Metro*) in amounts to be determined at trial.

## THIRD CAUSE OF ACTION: ATTORNEY'S FEES & INTEREST

82.    Plaintiffs reallege all of the allegations contained in paragraphs 1 through 81 of this Amended Verified Complaint.

83.    Plaintiffs' leases contain a clause that provides that the Defendant may recover attorneys' fees from the Plaintiffs under certain circumstances involving a breach of the lease.

84.    Pursuant to Real Property Law §234, such clauses are reciprocal, and give Plaintiffs the right to recover attorneys' fees if they prevail in litigation arising under the lease.

FILED: NEW YORK COUNTY CLERK 08/21/2020 04:43 PM     INDEX NO. 161138/2019
NYSCEF DOC. NO. 12                                    RECEIVED NYSCEF: 08/21/2020

85.     This litigation concerns the obligations of the parties under the leases between Plaintiffs and Defendants.

86.     Moreover, pursuant to NYC Admin. Code §26-516(a)(4) and 9 N.Y.C.R.R. §2526.1(d) as well as the HSTPA, Defendants are liable for attorneys' fees and interest as a consequence of having overcharged the Plaintiffs.

87.     Plaintiffs are entitled to recover their reasonable attorneys' fees and interest from the date of the overcharges.

## FOURTH CAUSE OF ACTION: LEASE REFORMATION

88.     Plaintiffs reallege all of the allegations contained in paragraphs 1 through 87 of this Amended Verified Complaint.

89.     Defendants overcharged Plaintiffs by negotiating leases that misrepresent the legal status and rent of Plaintiffs' apartments, on which misrepresentation Plaintiffs relied to their detriment.

90.     The provisions in Plaintiffs' leases governing the rent and the length of the lease term substantially affect Plaintiffs' rights.

91.     In order to prevent prejudice to Plaintiffs and unjust enrichment to Defendant, the Court should reform the Plaintiffs' leases and renewal leases to reflect the legal rent and rent stabilized status of each apartment.

FILED: NEW YORK COUNTY CLERK 08/21/2020 04:43 PM    INDEX NO. 161138/2019

NYSCEF DOC. NO. 12                                                    RECEIVED NYSCEF: 08/21/2020

## FIFTH CAUSE OF ACTION: BREACH OF THE WARRANTY OF HABITABILITY
## FOR BUILDING WIDE CONDITIONS AND DECREASED SERVICES

92.    Plaintiffs reallege all of the allegations contained in paragraphs 1 through 91 of this Amended Verified Complaint.

93.    Plaintiffs have suffered from various building wide habitability issues including lack of cooking gas, inoperable boiler, leaking carbon monoxide, inadequate heat and hot water, sewage odors, and decreased building wide services by closing the laundry room due to illegal conditions caused by unlicensed and unpermitted installations.

94.    Plaintiffs have suffered from the presence of a pigeon roost on the west side of the building which emits odors, noise, and attracts vermin, including mites, rats, and mice.

95.    Defendants are aware of the building wide issues because multiple city agencies, including the Department of Buildings, the Department of Housing Preservation and Development, and the Department of Health and Mental Hygiene have issued multiple violations and directed remediation of these conditions.

96.    Individual tenants, including Plaintiff Dixon, have reported these conditions to Defendants in writing and through text messages sent to Nancy J. Haber and the maintenance personnel Mario Vasquez and Antonio Vasquez.

97.    Despite having actual and constructive knowledge of these building wide habitability issues and decreased building wide services, the Defendants have not made the necessary repairs.

FILED: NEW YORK COUNTY CLERK 08/21/2020 04:43 PM    INDEX NO. 161138/2019
NYSCEF DOC. NO. 12                                          RECEIVED NYSCEF: 08/21/2020

98.     Plaintiffs are entitled to recover damages and attorneys fees for the breach of the
warranty of habitability for failure to cure these building wide habitability issues and decreased
building wide services in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION: BREACH OF THE WARRANTY OF HABITABILITY FOR PLAINTIFF DIXON'S APARTMENT UNIT

99.     Plaintiffs reallege all of the allegations contained in paragraphs 1 through 98 of
this Amended Verified Complaint.

100.     Plaintiff Dixon is impacted by chronic habitability issues in his individual
apartment including inoperable appliances, plumbing leaks, blocked drains, inoperable showers
and bathtubs, holes in the walls of the bathroom, intermittent electrical wiring failures, peeling
paint, leaking radiators, and flickering lighting.

101.     Defendants have both actual and constructive notice of the issues in Dixon's
apartment which Dixon has reported in written letters and text messages.

102.     Defendants knowledge of these conditions is fully established by the multiple
violations regarding these conditions that issued by the Department of Housing Preservation and
Development which has issued multiple remediation orders which Defendants have ignored.

103.     Despite being fully aware of these conditions, Defendants have ignored these
violations and HPD repair orders, and the conditions persist in Dixon's apartment unit.

104.     Plaintiff Dixon is entitled to recover damages and attorney's fees for the breach of
the warranty of habitability in an amount to be determined at trial.

FILED: NEW YORK COUNTY CLERK 08/21/2020 04:43 PM    INDEX NO. 161138/2019
NYSCEF DOC. NO. 12    RECEIVED NYSCEF: 08/21/2020

## SEVENTH CAUSE OF ACTION: INJUNCTIVE RELIEF

105.    Plaintiffs reallege all of the allegations contained in paragraphs 1 through 104 of this Amended Verified Complaint.

106.    Continued violations of the Plaintiffs' warranty of habitability pose a present threat to their health safety and welfare.

107.    There is no adequate remedy at law for the damage caused by these lease violations.

108.    Plaintiffs seek injunctive relief compelling Defendants to make all repairs necessary to remove all existing violations of the New York City Housing Maintenance Code and the New York State Multiple Dwelling Law.

109.    Plaintiffs have made no prior demand, complaint or application for such injunctive relief.

FILED: NEW YORK COUNTY CLERK 08/21/2020 04:43 PM
NYSCEF DOC. NO. 12

INDEX NO. 161138/2019

RECEIVED NYSCEF: 08/21/2020

WHEREFORE, Plaintiffs demand judgment against the Defendants:

1.    Awarding damages in an amount to be determined at trial on their first cause of action;

2.    Awarding treble damages in an amount to be determined at trial on their second cause of action;

3.    Awarding attorneys' fees and interest in an amount to be determined at trial, on their third cause of action;

4.    Reforming Plaintiffs' lease agreements with Defendants to reflect the legal regulated rent on their fourth cause of action;

5.    Awarding damages and attorney's fees in an amount to be determined at trial on their fifth cause of action,

6.    Awarding damages and attorney's fees in amount to be determined at trial on the Plaintiff Dixon's sixth cause of action;

7.    Granting injunctive relief ordering repairs of all violations of the New York City Housing Maintenance Code and New York State Multiple Dwelling Law affecting the common areas and individual apartments of the Plaintiffs; and

8.    Awarding Plaintiffs the costs of this action and such other relief as the Court finds proper.

Dated:  New York, New York
        August 12, 2020

COLLINS, DOBKIN & MILLER, LLP
*Attorneys for Plaintiffs*
Broadway - 14th Floor
New York, New York
10007
Tel. (212) 587-2400
Fax. (212) 587-2410

**By: Timothy Collins**

STATE OF NEW YORK          )
                                             ss.:
COUNTY OF NEW YORK      )

      Christoph J. Meinrenken, being duly sworn, deposes and says:

      I am a plaintiff in this proceeding .

      I have read the foregoing Amended Complaint and the contents thereof.  The same is true based upon my own knowledge, except as  to the matters therein stated to be alleged upon information and belief, and that as to those matters I believe them to be true.

_____
CHRISTOPH J. MEINRENKEN

Sworn to before me
the 15th day of August, 2020

_____
NOTARY

ZHU HENG QI
Notary Public, State of New York
No. 012H6375981
Qualified in New York County
Commission Expires June 04, 2022