<u>EXHIBIT B</u>

<u>REVISED BIDDING PROCEDURES</u>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:  **1819 WEEKS AVE. REALTY CORP.,**  Debtor. | Chapter 11  24-11855-JPM |

## BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") that shall govern the sale of the property of 1819 Weeks Ave. Realty Corp. (the "Debtor").

**I.**     **Assets to be Sold:** The assets to be sold consist of all of the Debtor's right, title and interest in and to the real property and improvements thereon commonly known as and located at 47 Perry Street, New York, New York [Block 613; Lot 43] (the "Property"), including, without limitation, any plans, permits of whatever kind or nature, and its interest in any leases with residential tenants at the Property.[1]

**II.**    **Marketing Process and Due Diligence:** The Debtor through its real estate broker, Northgate Real Estate Group (the "Broker") and its counsel, will provide information regarding the Property to potential purchasers (the "Initial Information").

**III.**   **Stalking Horse Bids/Form of APA:** Oren Sendowski ("Sendowski"), or an LLC wholly owned by Sendowski, shall act as the Stalking Horse Bidder ("Stalking Horse") for the purchase of the Property pursuant to the Agreement of Purchase and Sale attached hereto as Exhibit A (the "Stalking Horse Contract"). The Stalking Horse Contract provides for a purchase price for the Property in the amount of $9,500,000 and a break-up fee of 3% of the final purchase

---

[1] The sale that is being proposed herein and the soon-to-be-filed amended plan of the Debtor shall be without prejudice to the rights of all parties in interest, including the Lender, tenants at the Property, and the Debtor with respect to, *inter alia*, pending litigation or claims regarding the status of leases and therefore, all rights of all parties are reserved with respect thereto.

Furthermore, several tenants ("Claiming Tenants") have asserted claims against the Debtor for rent overcharges, damages, fees and costs, prepaid rent, and renewal leases under rent stabilization laws, some with state court actions (e.g., Index Nos. 161138/2019, 151303/2025, Supreme Court, NY County, the latter of which is being recommenced and will have a new index number) and/or administrative proceedings (e.g., Index No. NR 410077 R, Division of Housing and Community Renewal, which proceeding was commenced without first obtaining relief from the automatic stay and for which a motion has been made for such relief). The Claiming Tenants argue these claims attach to the property upon sale, becoming an obligation of any purchaser, and therefore requiring funds reserved pending resolution. The Debtor denies these claims entirely; no claims have been adjudicated; and all parties reserve their rights.

price for the Property plus reasonable attorneys' fees capped at $7,500, which break-up fee and attorneys' fees will be paid to the Stalking Horse by the Successful Bidder (defined below) in the event that (i) the Stalking Horse is not the Successful Bidder and that bidder's Successful Bid (defined below) is approved by the Bankruptcy Court, which approval shall include review and verification of the attorneys' fees or (ii) any Break-Up Fee Trigger Event (as defined in the Stalking Horse Contract) occurs. Sendowski's bid, pursuant to the Stalking Horse Contract is deemed to be a Qualified Bid (defined below). The form of Stalking Horse Contract ("APA") entered into by and between the Debtor and the Stalking Horse will be made available to interested bidders by the Debtor through its Broker specifically for the sale of the Property.

**IV.      Public Auction Sale:** The public auction sale (the "Public Auction Sale") of the Property shall be conducted at the offices of Jacobs P.C., 717 Fifth Avenue, New York, New York, on **August 19, 2025, at 11:00 a.m.**, upon the terms and conditions set forth herein (the "Public Auction Sale"), and shall be accessible in person, telephonically, or by video conference. The Public Auction Sale shall be an open auction where the material terms of the bids shall be disclosed to all bidders who attend the Public Auction Sale. The Public Auction Sale shall conclude when the auctioneer in consultation with the Debtor and Maguire Perry LLC ("Lender") has determined the highest and best bid after providing all bidders with a suitable opportunity to place, increase or further increase their bids. By participating in the Public Auction Sale, each bidder acknowledges and accepts all terms and conditions of these Bidding Procedures.

**V.      Bid Deadline**: All bids (collectively, the "Bids" and each a "Bid") must be actually received by (i) the Broker via electronic mail at greg@northgatereg.com, (ii) the Lender via electronic mail at lschwartz@leechtishman.com and legal@maguirecap.com, and (iii) counsel to the Debtor via electronic mail at robert@jacobspc.com by or before **August 15, 2025, at 4:00 p.m.** (the "Bid Deadline"). Subject to prior written approval of the Lender, the Debtor may extend the Bid Deadline for the delivery of Bids once or successively, without notice, and for one or more bidders.

**Any party that does not submit a Bid by the Bid Deadline will not be allowed to (i) submit an offer after the Bid Deadline, or (ii) participate in the Auction.**

There must be **no** communications between and amongst potential bidders. The Debtor reserves the right, in its reasonable business judgment, after consultation with the Broker and Lender, to disqualify any potential bidder(s) that have communications between and amongst themselves.

**VI.      Qualified Bid Requirements:** The Broker and the Debtor, in consultation with the Lender, shall determine whether a Bid is a Qualified Bid (defined below) and, ultimately a Successful Bid (defined below), and the Broker

2

shall communicate to each bidder whether their Bid is deemed a Qualified Competing Bid in accordance with Section VII herein. Any entity that desires to submit a Bid to purchase the Property may do so in writing as follows:

(a)    to be considered by the Debtor, an offer for the purchase of the Property must be a "Qualified Competing Bid" made by a Qualified Competing Bidder, as provided herein;

(b)    the Stalking Horse Bidder is deemed a Qualified Competing Bidder and the Stalking Horse Contract is deemed a Qualified Competing Bid;

(c)    a Qualified Competing Bid shall consist of a timely, irrevocable and unconditional offer for the purchase of the Property made by a Qualified Competing Bidder clearly setting forth the purchase price to be paid in Immediately Available Funds (as defined below), which purchase price must exceed $9.5 million by at least an amount equal to the Break-Up Fee plus $50,000, and be accompanied by a 10% deposit as provided for herein (the "Deposit") and an executed copy of the APA to purchase the Property, blacklined to show changes from the Stalking Horse Contract attached hereto as Exhibit A, clearly setting forth any conditions for closing and stating that the Qualified Competing Bid is formal, binding and unconditional, and is irrevocable as set forth below;

(d)    a Qualified Competing Bid for the purchase of the Property must be submitted by a party which the Debtor, in consultation with its Broker and Lender, reasonably believes to be financially able to consummate the purchase of the Property (a "Qualified Competing Bidder");

(e)    a Qualified Competing Bid must contain terms and conditions no less favorable to the Debtor's estate than those terms and conditions contained herein and in the APA;

(f)    a Qualified Competing Bid must not be contingent upon either financing or the conduct or results of any due diligence investigation, the absence of any adverse change or approvals by any board, shareholders or other entity;

(g)    a Qualified Competing Bid must provide for a closing date ("Closing Date") within 30 days from entry of a Bankruptcy Court order approving the sale, whether by sale approval order or confirmation order, which Closing Date may only be extended by the Debtor, after consultation with its Broker and

3

Lender, and receipt of their written consent;

(h)     Deposits shall be made in "Immediately Available Funds" which shall be cashier's check, certified check, wire transfer or cash. Deposits shall be held in escrow by Debtor's counsel;

(i)     a Bid must include evidence, including financial statements (or such other form of financial disclosure and credit-quality support or enhancement reasonably acceptable to the Debtor following consultation with the Broker and Lender), sufficient to establish the financial wherewithal of the interested party to complete the contemplated transaction and, to the extent the interested party will rely upon the financial wherewithal of an affiliate, bid partner, or other sponsor (each, a "Sponsor"), evidence sufficient to establish the financial wherewithal and intent of the Sponsor to provide appropriate financial support;

(j)     a Bid must include a statement confirming that the Bid is based on an all-cash offer.  To the extent that a Bid is not accompanied by the bidder's capacity to consummate the sale set forth in its Bid with cash on hand (or other Immediately Available Funds), each Bid must include committed financing documented to the Debtor and Lender's satisfaction, that demonstrates that the potential bidder has received sufficient debt and/or equity funding commitments to satisfy the potential bidder's purchase price and other financial obligations under its Bid;

(k)     a Bid must include a statement that the Bid does not entitle the potential bidder to any breakup fee, termination fee, expense reimbursement and a waiver of any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code;

(l)     a Bid must contain such and/or other information that will allow the Debtor, following consultation with the Broker and Lender, to make a reasonable determination as to the bidder's financial and other capabilities to consummate the transactions contemplated by the APA;

(m)     a Bid must disclose the identity of the bidder's organization, including confirmation that the bidder is acting as principal for the bidder's account and, if not, the basis upon which the bidder is acting and the identities of all other participants (if any), and each of their pre-petition and post-petition relationship with other bidders, the Debtor's major creditors and equity security holders of any of the foregoing (if any);

4

(n) a Bid must include a copy of a board resolution or similar document demonstrating the authority of the potential bidder to make a binding and irrevocable Bid on the terms proposed and to consummate the transaction contemplated by the proposed APA;

(o) a Bid must disclose any agreements or understandings between the bidder and any third party with respect to the Property or with respect to any possible transaction involving the Debtor;

(p) a Bid must include a statement that the potential bidder had an opportunity to conduct any and all due diligence regarding the Property prior to submitting its Bid;

(q) a Bid must include a statement that the potential bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents in making its Bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Property or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the potential bidder's proposed APA ultimately accepted and executed by the Debtor;

(r) a Bid must include a statement that the potential bidder agrees to serve as a back-up bidder if its Bid is selected as the next highest or next best bid after the Successful Bid;

(s) a Bid must include a statement that the potential bidder has not engaged in any collusion with respect to the submission of its Bid;

(t) a Bid must include a statement that all proof of financial ability to consummate the sale and all information provided to support its financial ability to consummate the sale is true and correct;

(u) a Bid must include a statement that the potential bidder agrees to be bound by the terms of these Bid Procedures;

(v) if a Qualified Competing Bidder becomes either the Successful Bidder (as defined below) or the Back-Up Bidder (as defined below), their respective Deposits shall be increased to an amount equal to 10% of the successful purchase price for the

5

   Successful Bidder and 10% of the second best purchase price for the Back-Up Bidder (the "New Deposit") and the increase in amount between the Deposit and New Deposit must be deposited with Immediately Available Funds with the Debtor's counsel within 24 hours after the conclusion of the Public Auction Sale, and this New Deposit shall be deemed to be non-refundable and shall be forfeited if such purchaser fails to close in breach of its obligations under the APA as fully described below;

   (w) the Debtor, in consultation with the Broker and Lender, and subject to their written consent, may waive or modify any of these provisions as necessary;

Notwithstanding anything to the contrary, the Debtor, after consulting with the Broker and Lender, shall have the right to consider Bids that do not conform to one or more of the requirements set forth in these procedures and to deem such Bids Qualified Bids, provided that the Debtor's determinations under these Bidding Procedures are subject to court approval.

Notwithstanding anything to the contrary, the Successful Bidder's bid and the Back-Up Bidders bid must remain irrevocable in accordance with the terms of the APA.

Notwithstanding anything to the contrary, the Debtor also reserves the right, after consulting with the Broker and Lender, to reject any and all Bids.

**VII.** **Evaluation of Qualified Bids:** The sufficiency of any submitted Bid will be at the discretion of the Debtor, after consultation with the Broker and Lender. The Debtor shall notify potential bidders who have (a) timely submitted the information and documentation listed above and (b) who have financial qualifications satisfactory to the Debtor, in consultation with the Broker and Lender, that they have been selected as a qualified bidder (each a "Qualified Bidder") and that their Bid is a "Qualified Bid" no later than August 18, 2025, at 12:00 p.m. (Eastern Time).

**VIII.** **The Auction**: The Public Auction Sale shall be conducted as set forth in Section IV, and the Property shall be sold free and clear of all liens, claims and encumbrances to the fullest extent allowed under sections 363, 365 and/or 1123 and 1129 of the Bankruptcy Code except as set forth in footnote 1; <u>provided</u> that all liens, claims, and encumbrances shall attach to the proceeds of sale of the Property with the same validity, force and effect and subject to the same defenses as existed immediately before the sale.

Only Qualified Bidders may bid at the Public Auction Sale. If multiple Qualified Bids are received, any Qualified Bidder (or its duly authorized representative) shall have the right to continue to improve its Qualified Bid at the Public Auction Sale

6

by an amount not less than $50,000.

Prior to the conclusion of the Public Auction Sale, if held, the Debtor, in consultation with the Broker and Lender, will (i) review and evaluate each bid made at the Public Auction Sale on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating a sale; (ii) determine the highest or best offer or collection of offers ("Successful Bid"); (iii) determine which Qualified Bid is the next highest or best bid ("Back-Up Bid"); and (iv) notify all Qualified Bidders participating in the Auction, prior to its conclusion, of the successful bidder ("Successful Bidder"), the amount and other material terms of the Successful Bid, and the identity of the party that submitted the Back-Up Bid (and any person or entity with an interest therein) ("Back-Up Bidder").

Within 48 hours of completion of the Public Auction Sale, the Successful Bidder and the entity or entities that made the Back-Up Bid or Bids shall complete and sign all agreements, contracts, instruments, and other documents evidencing and containing the terms and conditions upon which such Successful Bid or Bids and Back-Up Bid or Bids were made. The Debtor shall promptly file with the Bankruptcy Court notice of the Successful Bid, the Successful Bidder, and if applicable, the Back-Up Bid and the Back-Up Bidder.  The Successful Bid or Back-up Bid may not be assigned to any party without the consent of the Debtor, upon consultation with Lender, and its written consent to any such assignment.

The Successful Bidder will be required to close on the sale as soon as possible after entry of an order approving the Sale (which may be incorporated into a confirmation order), but in no event later than 5:00 p.m. on the date that is 30 days after entry of a Bankruptcy Court order approving the sale, TIME BEING OF THE ESSENCE, although such date may be extended by way of written agreement of the Successful Bidder, Lender and Debtor. In the event that the Successful Bidder, Lender and Debtor elect to exercise such an extension at the Successful Bidder's request, the Successful Bidder shall: (1) be responsible for all real estate taxes incurred from the 30th day after the date of entry of the Bankruptcy Court order approving the sale through the Closing Date and (2) pay interest on the purchase price at nine (9%) percent per annum from the 30th day after the date of entry of the Bankruptcy Court order approving the sale through the actual Closing Date.

The Public Auction Sale may only be adjourned or canceled as unanimously determined by the Debtor, the Broker and the Lender.  Reasonable notice of such adjournment and the time and place for the resumption of the Public Auction Sale or cancellation shall be given to all participants.

The closing on the sale of the Property shall take place at the offices of Jacobs P.C. at 717 Fifth Avenue, Floor 17, New York, NY 10022 (the "Closing") or such other location as the Lender, Debtor and Successful Bidder may agree in writing.
**IX.**            **Backup Bids:** If the Successful Bidder is unable to or otherwise fails

7

to consummate the sale, breaches the APA, or otherwise fails to perform, the Debtor may consummate the proposed sale with the Back-Up Bidder, which hereafter shall be included in the definition of "Successful Bidder," without the need for further Court approval.

The Successful Bidder acknowledges that it will be responsible for the completion of any ACRIS forms, if required. The Debtor shall not be required to execute any form of title affidavit (but may in its sole and absolute discretion) and all title exceptions customarily omitted from a title policy on account of such title affidavit shall be deemed permitted exceptions. The Successful Bidder, or the Back-Up Bidder, as the case may be, acknowledges it will be responsible for the preparation of all Closing documents required including, but not limited to, transfer tax forms, if required. In connection with the Closing and Closing Date, the Successful Bidder, or the Back-Up Bidder, as the case may be, is hereby given notice that TIME IS OF THE ESSENCE against the Successful Bidder, or the Back-Up Bidder, as the case may be and the failure of the Successful Bidder, or the Back-Up Bidder, as the case may be, to close for any reason whatsoever (except as otherwise provided herein) including its failure to pay the balance of the Purchase Price on the Closing Date, will result in an immediate forfeiture of the deposit, and any additional deposit, and the termination of the Successful Bidder's, or the Back-Up Bidder's, as the case may be, right to acquire the Property under these Bid Procedures. The Successful Bidder or the Back-Up Bidder, as the case may be, shall be obligated to close title to the Property and, except as expressly set forth herein, there is no contingency of any kind or nature that will permit the Successful Bidder, or the Back-Up Bidder, as the case may be, to cancel or avoid its obligation under these Bid Procedures other than the Debtor's inability to deliver insurable title to the Property. Further, the Successful Bidder, or the Back-Up Bidder, as the case may be, shall have demonstrated, to the satisfaction of the Debtor and the Lender, evidence of its ability to conclude the transaction upon these Bid Procedures, without delay. The Debtor and Lender reserve the right to reject any bid and/or any bidder who the Debtor and Lender believe, in their sole discretion, is not financially capable of consummating the purchase of the Property.

**X.**        **Sale Confirmation:** All determinations of the Successful Bid or Bids and the Back-Up Bid or Bids shall be subject to and conditioned upon subsequent court approval. After the Public Auction Sale and the selection of the Successful Bidder, an order will be submitted to the Bankruptcy Court to approve the results of the Public Auction Sale, so that it can be entered before October 31, 2025.

After the Public Auction Sale, the Debtor will have the option to seek approval of the sale under section 363 of the Bankruptcy Code or to seek confirmation of its plan, which will approve the sale of the Property to Successful Bidder. In the event the Debtor seeks to confirm its plan, the sale of the Property will be approved by the Court pursuant to section 1123(a)(5) of the Bankruptcy Code. The order confirming the Plan will contain findings regarding the good faith of the purchaser

8

of the Property that are equivalent to those contained in section 363(m) of the Bankruptcy Code.

XI.     **"As Is, Where Is":** The proposed transfer of the Debtor's Property will be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor, its agents, or estate, except to the extent set forth in the applicable APA of each Successful Bidder as accepted by the Debtor and approved by the Court. Except as otherwise provided in an APA, all of the Debtor's right, title and interest in the Property will be transferred free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests in accordance with sections 363(f), 365 and/or 1123 and 1129 of the Bankruptcy Code. Any other claim, lien or encumbrance, as set forth in the APA, will attach to the net proceeds of the sale with the same validity, force and effect and subject to the same defenses as existed immediately before the sale. The sale of the Property is subject to, among other things (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; (e) leases and (f) environmental conditions; provided, however, **the Property shall be delivered free and clear of any and all monetary liens and/or claims.**

XII.     **Return of Deposits:** If a Back-Up Bidder does not become the Successful Bidder, its Deposit shall be returned to it no later than five (5) business days after the Debtor's Closing of the sale. Debtor shall also be entitled to retain the Deposit from any other Bidders other than the Successful Bidder or the Back-Up Bidder, but only upon the express consent of such other Bidder and the Debtor shall be required to return such Deposit no later than five (5) business days after the Debtor's Closing of the sale. The Debtor shall be required to return the Deposit to any Bidder, who is not the Successful Bidder or a Back-Up Bidder, who does not agree to the retention of its Deposit no later than 48 hours after the conclusion of the Public Auction Sale.

XIII.    **Forfeit of Deposits:** The Deposit of a Qualified Bidder will be forfeited to the Debtor if (i) the applicable Qualified Bidder attempts to modify, amend, terminate, or withdraw its Qualified Bid, except as permitted by these Bid Procedures, during the time the Qualified Bid remains binding and irrevocable under these Bid Procedures, or (ii) the Qualified Bidder is selected as the Successful Bidder and fails to enter into the required definitive documentation or to consummate the transaction according to these Bid Procedures and the terms of the applicable transaction documents with respect to the Successful Bid. The forfeited Deposit shall continue to be held in escrow by Debtor's counsel and shall not be released or disbursed without further order of the Bankruptcy Court.

XIV.     **Revoked Bids:** At the Debtor's reasonable discretion, it may treat as waived and revoked any Qualified Competing Bid made by any Qualified Competing Bidder (other than the Stalking Horse Bidder) who does not attend the

Public Auction Sale.

**XV.** **Actual Auction:** If one or more Qualified Competing Bids have been timely submitted, the Debtor shall conduct the Public Auction Sale among the Stalking Horse Bidder and any Qualified Competing Bidder that has submitted a Qualified Competing Bid or Bids.

**XVI.** **Minimum Bid:** The minimum opening bid at the Public Auction Sale shall not be less than **$9,842,500.00**.[2] Any subsequent bid shall comply with the Bid Increments set forth in Paragraph XVII below.

**XVII.** **Bid Increments:** Subsequent bids, to be made on the record at the Public Auction Sale shall be in minimum increments of **$50,000.00**, after taking into account the breakup fee and expense reimbursement in favor of the Stalking Horse, provided, however, that the Debtor may waive such minimum incremental bid amount after consultation with the Broker and Lender.

**XVIII.** **Stalking Horse Bid:** The Stalking Horse is authorized to increase its Stalking Horse Bid at the Auction.

**XIX.** **Close of Bidding:** At such time as it appears to the Debtor, in the exercise of its reasonable discretion, after consultation with the Broker and Lender, that none of the Qualified Competing Bidders present at the Public Auction Sale are prepared to advance the bidding, the Debtor shall (after giving fair warning, on the record, to those entities present) close the bidding on the record and the entity which immediately prior to the close of the bidding shall have submitted the highest and best offer for the purchase of the Property shall be declared the Successful Bidder, subject to Bankruptcy Court approval, and subject to entry by the Bankruptcy Court of a sale approval order or confirmation order approving such sale.

**XX.** **Successful Bidder:** In the event that the Successful Bidder is an entity other than Stalking Horse Bidder, then such Successful Bidder shall be bound by all of the terms of its APA (as such terms, including those with respect to the purchase price, shall have been modified by the terms of such purchaser's winning bid) and upon Closing of such sale be granted the protections of Sections 363(m) and (n) of the Bankruptcy Code or its equivalent in the event a plan is confirmed and the sale approved pursuant to Section 1123(a)(5) of the Bankruptcy Code.

**XXI.** **Damages for Failure to Close:** If the Successful Bidder fails to consummate the sale in accordance with the terms of its Successful Bid and applicable APA: (a) the Debtor will retain the Deposit of such bidder in accordance with the APA, and (b) the Debtor will maintain the right to pursue all available

---

[2] This amount does not include the buyer's premium of the Broker's commission of as much as 3.25%, which premium shall be paid by the Successful Bidder.

10

remedies against such bidder. If the Deposit is forfeited, such forfeiture shall not be deemed a liquidated damage provision and shall be deemed a measure of the Debtor's actual damage. Any forfeited Deposit shall continue to be held in escrow by Debtor's counsel and shall not be disbursed without further order of the Bankruptcy Court.

**XXII.** **Reservation of Rights:** Notwithstanding the Debtor's designation of the Stalking Horse and/or receipt of any Qualified Bids, the Debtor may continue to negotiate and solicit Bids. The Debtor reserves the right, after consultation with the Broker and Lender, and their written consent, to enter into agreements for the sale, without further notice to any party, which agreements, if any, will be subject to higher or otherwise better Bids at the Auction (including evaluation on a package or individual basis). The Debtor retains the right, after consultation with the Broker and Lender, and their written consent, to withdraw the Property from such sale, up to the date of the Public Auction Sale. Formal approval of a Bid will not occur unless and until the Court enters an order approving and authorizing the Debtor to consummate the transaction.

The Debtor reserves the right to implement additional procedural rules after consultation with the Broker and Lender, provided such additional rules are not inconsistent with these Bidding Procedures.

## Consent to Jurisdiction and Authority to Condition to Bidding

All potential bidders (including a Qualified Bidder, the Successful Bidder, the Back-Up Bidder and the Stalking Horse) shall be deemed to have (i) consented to the core jurisdiction of the Bankruptcy Court to enter any order or orders, which shall be binding in all respects, in any way related to the Bid Procedures, the Public Auction Sale, or the construction and enforcement of any agreement or any other document relating to the sale, including any plan of reorganization filed by the Debtor, (ii) waived any right to a jury trial in connection with any disputes relating to the Bid Procedures, the Public Auction Sale, or the construction and enforcement of any agreement or any other document relating to the sale, and (iii) consented to the entry of a final order or judgment in any way related to the Bid Procedures, the Public Auction Sale, or the construction and enforcement of any agreement or any other document relating to the sale if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

## Reservation of Rights

The Debtor reserves the right, in its reasonable discretion and subject to the exercise of its business judgment, upon consultation with Lender, and their written consent, to alter or terminate these Bid Procedures, to waive terms and conditions set forth herein with respect to all potential bidders, extend the deadlines set forth herein, alter the assumptions set forth herein, and/or to terminate discussions with any and all prospective acquirers and investors (except for the Successful Bidder) at any time and without specifying the reasons therefor; provided that the Debtor's exercise of its discretion in evaluating bids and administering the bidding and auction process does not permit,

11

and shall not be construed as permitting the Debtor to materially deviate from the procedures, terms, conditions, and protections set forth in these Bid Procedures and/or the Bid Procedures Order in a way that would compromise the sale process; <u>provided further</u> that notice of any such termination, material modification(s) or extension(s) shall be timely provided to the United States Trustee.