**JACOBS P.C.**
*Attorneys for the Debtor*
*1819 Weeks Ave. Realty Corp.*
717 Fifth Avenue, Floor 17
New York, New York 10022
(212) 229-0476
Leo Jacobs, Esq.
Robert M. Sasloff, Esq.
Aaron Slavutin, Esq.
leo@jacobspc.com
robert@jacobspc.com
aaron@jacobspc.com

**Hearing Date**
July 23, 2025, 9:00 a.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**1819 WEEKS AVE. REALTY CORP.,**<br><br>Debtor. | Chapter 11<br><br>24-11855-JPM |

### DEBTOR'S AMENDED OBJECTION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY TO PERMIT PENDING DIVISION OF HOUSING AND COMMUNITY RENEWAL COMPLAINT TO PROCEED

1819 Weeks Ave. Realty Corp., the debtor and debtor-in-possession herein (the "**Debtor**"), by and through its undersigned counsel, hereby submits this objection (the "**Objection**") to the motion (the "**Motion**") of Jacob Nathan Sanders ("**Movant**") for entry of an Order, pursuant to § 362(d)(1) of title 11 of the United States Code (the "**Bankruptcy Code**"), modifying the automatic stay so as to permit Movant's complaint, now pending before the New York State Division of Housing and Community Renewal ("**DHCR**") under Docket No. NR 410077 R (the "**DHCR Proceeding**"), to proceed. In support of this Objection, the Debtor respectfully represents and alleges as follows:

1

**Preliminary Statement**[1]

1.  The Debtor is well on its way toward a successful reorganization via a sale of its Property in accordance with bidding procedures that have been approved by the Court, along with a Stalking Horse Contract[2] that sets an initial bid of $9.5 million plus a buyer's premium. That approval had been challenged by the Movant by way of his Bid Procedures Objection, which had sought to preserve his tenancy in the Property and had been accompanied by other tenants who have filed their own objections to the Bid Procedures Motion. Debtor's counsel facilitated negotiations with all objecting tenants and/or their counsel designed to expedite the resolution of the objections so that the Debtor can proceed with its property sale. Should the Court lift the stay for Movant, an expedited resolution of these matters may be jeopardized, because the Movant would pursue his action instead of this Court resolving his claim through the claims resolution process. As such, the administration of the estate will be undermined. Given this fact, and the paucity of allegations in the Motion that support a finding that there is any basis to grant relief including under the *Sonnax* Factors, the Motion should be denied in its entirety. Indeed, to do otherwise would set a dangerous precedent—what use would filing for bankruptcy serve, if creditors with knowledge of the bankruptcy could proceed with collection efforts and obtain stay relief later? *See In re Sucre*, 226 B.R. 340, 347 (Bankr. S.D.N.Y. 1998) ("Upon receiving actual

---

[1] Some of this Objection is similar to the Debtor's objection [ECF No. 55] to the lift-stay motion filed by William Arthur Vieth [ECF No. 36] ("**Vieth's Lift-Stay Motion**"). The Court entered an Order [ECF No. 65] granting that motion, which was in some ways comparable to the instant Motion. The Debtor nevertheless objects to the instant Motion principally because it is meaningfully distinguishable from Vieth's Lift Stay Motion in at least one way. Specifically, the underlying action for which that motion was filed was commenced by the movant who, at the time, on information and belief, did **not** have knowledge of the instant bankruptcy case. In stark contrast, as demonstrated by the Movant's filings in this case, the Movant here had such knowledge at the time the DHCR Proceeding was commenced, as further discussed *infra*. *Cf.* Bankruptcy Code § 362(k) (providing that if a creditor of an individual debtor knowingly violates the automatic stay, courts may impose liability for actual damages, including costs and attorney fees).

[2] Capitalized terms used but not defined in this Preliminary Statement are defined *infra*.

2

notice of the commencement of a bankruptcy case, a creditor has an affirmative duty under § 362 to take the necessary steps to discontinue its collection activities against the debtor.").

## Background

2. The Debtor filed its chapter 11 petition on October 28, 2024 (the "**Petition Date**").

3. The Debtor continues in the operation of its business and control of its property as debtor in possession, pursuant to 11 U.S.C. §§ 1108 and 1109.

4. On December 6, 2024, the Debtor filed its schedules, listing the Movant as a creditor in Schedule F. *See* ECF No. 14.

5. The Debtor owns, develops, manages and rents the apartment building located at 47 Perry Street, New York, New York (the "**Property**").

6. On May 21, 2025, the Debtor filed its *Motion to Approve Bidding Procedures and Grant Related Relief* [ECF No. 45] (the "**Bid Procedures Motion**") in order to proceed with the sale of the Property via an auction sale conducted in accordance with Court-approved bid procedures. The Debtor's lender, Maguire Perry, LLC (the "**Lender**") supports the proposed sale of the Property in the bankruptcy forum.

7. In connection with the contemplated sale, the Debtor identified and retained a real estate broker, Northgate Real Estate Group ("**Northgate**"), to market the Property as the Debtor's broker. Due in no small part to Northgate's marketing efforts, the Debtor has entered into a "stalking horse" contract (the "**Stalking Horse Contract**") with Oren Sendowski, or an LLC to be provided before closing that contemplates a sale of the Property for $9,500,000 plus a buyer premium on Northgate's commission.

8. On June 1, 2025, the Movant filed an objection to the Bid Procedures Motion. *See* ECF No. 50 (the "**Bid Procedures Objection**"). In his objection, Movant stressed that his primary

3

objection was to the preservation of his leased premises.[3] Other tenants at the Property filed objections to the Bid Procedures Motion. *See, e.g.*, ECF Nos. 47, 48, 51. So did the U.S. Trustee. *See* ECF No. 49.

9. In order to facilitate a resolution of the Bid Procedures Objection and the other objections to the Bid Procedures Motion, the Debtor: (i) obtained an adjournment of the hearing on the Bid Procedures Motion; (ii) addressed the issues raised by the U.S. Trustee, including by modifying the bid procedures and adding an addendum to the Stalking Horse Contract; (iii) held informal conferences with the tenants who objected and/or their counsel and accordingly modified the bid procedures and related materials; and (iv) filed updated materials with the Court, *see, e.g.*, ECF No. 66, including a revised Order approving the Bid Procedures Motion, which the Court then entered on July 11, 2025, at ECF No. 67.

10. Notwithstanding the automatic stay imposed by the Debtor's filing of this case on the Petition Date, on June 17, 2025, Movant commenced the DHCR Proceeding against the Debtor in violation of the automatic stay by filing a complaint with the DHCR.

11. On June 27, 2025, i.e., months after the last date to file claims, which was April 3, 2025, Movant filed a late claim without an amount with the Court. *See* Claim No. 11. This filing was late even though Movant was served with the bar date order and notice. *See* ECF No. 30.

12. On June 30, 2025, Movant filed his Motion.[4]

**Discussion**

13. There are at least two independently dispositive reasons to deny the Motion. **First**,

---

[3] Movant only filed his DHCR Proceeding regarding overcharges after negotiations to resolve the bid procedures objections centered around the overcharge claims of other tenants.

[4] On information and belief, the principal reason the Movant filed the Motion is because Debtor's counsel, in an email to the Movant (among others), while discussing language to resolve his Bid Procedures Objection, noted that his DHCR Proceeding had been commenced without first seeking stay relief.

4

in the Second Circuit, actions commenced post-petition are void *ab initio*. The automatic stay set forth in section 362(a)(1) of the Bankruptcy Code bars the commencement or continuation of actions and/or proceedings against a debtor and is a fundamental debtor protection. *See Teachers Ins. & Annuity Ass'n of Am. v. Butler,* 803 F.2d 61, 64 (2d Cir. 1986). As such, in the Second Circuit, actions commenced or continued in violation of the stay are void *ab initio*. *Church Mut. Ins. Co. v. Am. Home Assur. Co. (In re Heating Oil Partners, LP)*, 422 Fed. Appx 15, 18 (2d Cir. 2011); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994) ("The stay is effective immediately upon the filing of the petition, and any proceedings or actions described in section 362(a)(1) are void and without vitality if they occur after the automatic stay takes effect."); *In re Arcapita Bank B.S.C.(c)*, 648 B.R. 489, 496 (Bankr. S.D.N.Y. 2023) (Lane, J.) ("So central is the Section 362 stay to an orderly bankruptcy process that actions taken in violation of the stay are void and without effect."); *In re Uchitel*, No. 20-11585, 2022 WL 3134217, at *10 (Bankr. S.D.N.Y. Aug. 4, 2022) (Garrity, J.) (stating that "[a]ctions taken in violation of the automatic stay are void and unenforceable" and concluding "[a]ccordingly, there is effectively no arbitration proceeding pending against the Debtor"); *In re Sklar*, 626 B.R. 750, 761 (Bankr. S.D.N.Y. 2021) (Glenn, J.) ("In the Second Circuit, actions commenced or continued in violation of the stay are void ab initio. . . . The action is void even where the acting party had no actual notice of the stay.") (citations omitted); *In re Signature Apparel Grp. LLC*, No. 09-15378, 2015 WL 1009452, at *6 (Bankr. S.D.N.Y. Mar. 4, 2015) (Grossman, J.) ("The stay takes effect immediately, rendering subsequent actions of the kind specified in § 362(a) void and without vitality.") (quotations omitted); *In re Pomerance*, No. 10-12287, 2011 WL 1403034, at *2 (Bankr. S.D.N.Y. Apr. 13, 2011) (Bernstein, J.) ("[A]ctions taken in violation of the automatic stay are void."); *In re MarketXT Holdings Corp.*, No. 04-12078, 2009 WL 2957809, at *3 n.3 (Bankr. S.D.N.Y. July 20,

2009) (Gonzalez, J.) ("There is a split of authority as to whether an act in violation of the automatic stay is void or voidable. . . . As stated above, the Second Circuit adheres to the view that stay violations are void. . . . This approach places the burden of validating the actions after the fact squarely on the shoulders of the offending creditors and harmonizes with the nature of the automatic stay and the important purposes that it serves.") (quotations and citations omitted), *aff'd sub nom. In re Marketxt Holdings, Corp.*, 428 B.R. 579 (S.D.N.Y. 2010).

14. Therefore, simply due to the fact that the DHCR Proceeding was commenced post-petition, the DHCR Proceeding is void, i.e., it is not even pending, and the Motion must be denied because it relates to a nullity.

15. **<u>Second</u>**, should the Court elect to not follow this binding and unambiguous Second Circuit precedent, the Court should nevertheless deny the Motion, because the Movant had actual knowledge of this bankruptcy at the time the post-petition DHCR Proceeding was commenced,[5] and there are no equitable exceptions to justify stay relief given this dispositive fact.

16. "Seldom if ever will a court annul the automatic stay when a creditor has actual knowledge of a bankruptcy case and undertakes an act that it knows violates the automatic stay despite such knowledge . . . ."[6] *In re Anderson*, 341 B.R. 365, 368 (Bankr. D.D.C. 2006);[7] *see also Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.),* 129 F.3d 1052,

---

[5] The Movant filed the Bid Procedures Objection before commencing the DHCR Proceeding irrefutably establishing that Movant was aware of this bankruptcy when he commenced that proceeding. This awareness is further evidenced by the fact that Movant was listed on the schedules and served with the bar date order and notice.

[6] It is anticipated that Movant will respond to this important quote by pointing out that he is a *pro se* party who was unaware of the implications of the automatic stay at the time he commenced the DHCR Proceeding. However, courts in this Circuit have clearly stated that *pro se* parties are generally to be treated like any other party. *In re Laskaratos*, 605 B.R. 282, 301 (Bankr. E.D.N.Y. 2019) ("[A] pro se party, like any party, ultimately must carry its burden as to each element of its claim for relief.").

[7] Precedent outside the Second Circuit is invoked here, because, as stated above, post-petition violations of the automatic stay are void in the Second Circuit and, as such, there is little if any discussion in this Circuit's caselaw on the circumstances under which a post-petition-commenced action may proceed.

1055 (9th Cir. 1997) ("Many courts have focused on two factors in determining whether cause exists to grant relief from the stay: (1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor."); *In re Stancil*, 487 B.R. 331, 339 (Bankr. D.D.C. 2013) ("Typically, courts will annul the stay only where the creditor had no knowledge of the debtor's bankruptcy case when it violated the automatic stay."); *In re Lijoi*, 288 B.R. 511, 516 (Bankr. E.D. Tenn. 2002) (denying lift-stay motion, because "[t]he Movants had actual notice of the commencement of the Debtor's bankruptcy case, as is established by their filing of a Proof of Claim and the [lift-stay] Motion").

17. Here, the Movant was actively involved in this bankruptcy case at the time the DHCR Proceeding was commenced and, therefore, had knowledge of this case at that time.

18. The circumstances under which a movant with (or even without) knowledge of a bankruptcy case at the time it commences a post-petition action against a debtor may nevertheless obtain stay relief are limited indeed:

> [W]e hold that actions taken in violation of the stay are invalid and voidable and shall be voided absent **limited** equitable circumstances. We suggest that only where the debtor unreasonably withholds notice of the stay and the creditor would be prejudiced if the debtor is able to raise the stay as a defense, or where the debtor is attempting to use the stay unfairly as a shield to avoid an unfavorable result, will the protections of section 362(a) be unavailable to the debtor.

*Easley v. Pettibone Michigan Corp.*, 990 F.2d 905, 911 (6th Cir. 1993) ("**Easley**") (emphasis supplied).[8]

---

[8] Courts outside the Sixth Circuit have positively cited *Easley* including the Second Circuit Court of Appeals. *See, e.g.*, *Bennett v. U.S. Lines, Inc.*, 64 F.3d 62, 66 (2d Cir. 1995) (citing *Easley* for a statute of limitations issue); *In re Pulley*, 196 B.R. 502, 504 (Bankr. W.D. Ark. 1996); *In re Reichenbach*, 174 B.R. 997, 1001–02 (Bankr. E.D. Ark. 1994) ("Even were acts in violation of the stay properly described as 'void,' there are clear, although limited, exceptions to the rule. For example, where the 'debtor unreasonably withholds notice of the stay and the creditor would be prejudiced if the debtor is able to raise the stay as a defense, or where the debtor is attempting to use the stay unfairly as a shield to avoid an unfavorable result,' the protections of section 362(a) are unavailable to the debtor.") (citing *Easley*, at 911). Furthermore, courts in this Circuit, including the Second Circuit Court of Appeals have adopted frameworks for lift-stay analysis set forth in other circuits. *See, e.g.*, *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990) ("**Sonnax**") (deriving the now ubiquitous *Sonnax* Factors from *In re Curtis*, 40 B.R. 795, which was a

19. These limited equitable circumstances are clearly not present here. Not only was notice of the stay not unreasonably withheld from the Movant, but Debtor's counsel even informed Movant during the negotiations to settle his Bid Procedures Objection that he had filed his DHCR Proceeding without prior stay relief and he reacted by filing the instant Motion. *See* n.4 *supra*; *Easley*, 990 F.2d at 911–12 (finding the equitable circumstances were not present in large part because "as soon as defendant was made aware of plaintiffs' lawsuit, it notified plaintiffs that their action was in violation of the automatic stay"). Furthermore, the Debtor is not attempting to use the stay unfairly as a shield to avoid an unfavorable result. Rather, Debtor submits that it believes Movant's overcharge claims will not succeed; he has been a tenant for little over a year, and the records do not substantiate any claim for being overcharged. Additionally, due to the Movant's extremely limited discussion of the claims underlying the DHCR Proceeding and failure to annex any pleadings therefrom, it cannot be said that defending against those claims would not be a waste of resources. As such, spending time litigating these essentially baseless claims would needlessly detract from the administration of the estate and could thereby jeopardize the sale of the Property.[9]

## Conclusion

20. The Motion should be denied. Granting it would set a dangerous precedent that flips section 362 of the Bankruptcy Code on its head by permitting creditors to commence post-petition actions against debtors and later seek stay relief for those actions. Furthermore, the DHCR Proceeding is a nullity, having been commenced post-petition, it is void ab initio according to clear, extensively cited, and binding Second Circuit authority. Finally, given that the Movant had

---

1984 case from the Bankruptcy Court for the District of Utah that "catalogued a dozen factors to be weighed in deciding whether litigation should be permitted to continue in another forum"). Moreover, because the Bankruptcy Code is federal, not state, law, it is clearly not impermissible to rely on precedent from other circuits.

[9] The *Sonnax* Factors are not discussed herein, because *Sonnax* concerned the continuation of an action that was commenced pre-petition and was not commenced by a movant who had knowledge of its adversary's pending bankruptcy proceeding.

knowledge of this bankruptcy case at the time he commenced the DHCR Proceeding, lift stay relief should not be granted. Indeed, there are no sufficient countervailing equitable considerations to grant that relief—the Debtor did not withhold notice of this case and is not using the stay to stop an unfavorable result; if anything, if the claims underlying the DHCR Proceeding were litigated, as presented now, then there would likely be a favorable result for the Debtor.

**WHEREFORE**, the Debtor requests that the Motion be DENIED in its entirety and that the Court grant any relief the Court deems just and proper.[10]

| | |
|---|---|
| Dated: New York, New York<br>July 17, 2025 | **JACOBS P.C.**<br><br>By: /s/ Robert M. Sasloff<br>Leo Jacobs, Esq.<br>Robert M. Sasloff, Esq.<br>Aaron Slavutin, Esq.<br>717 Fifth Avenue, Floor 17<br>New York, New York 10022<br>212-229-0476<br>*Counsel to the Debtors* |

---

[10] Had the Motion been made by a party who was not *pro se*, the Debtor would also request that the movant pay the Debtor's attorneys fees.