Douglas J. Pick
Eric C. Zabicki
**PICK & ZABICKI LLP**
Counsel to William Arthur Vieth
and Christoph Johannes Meinrenken
369 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 695-6000

**Hearing Date: October 16, 2025**
**Time: 9:00 a.m.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:                                                                                    Chapter 11

1819 WEEKS AVE. REALTY CORP.,                          Case No. 24-11855 (JPM)

                                    Debtor.
------------------------------------------------------------x

### OPPOSITION TO DEBTOR'S OBJECTION TO CLAIMS ASSERTED BY WILLIAM ARTHUR VIETH AND CHRISTOPH JOHANNES MEINRENKEN

TO THE HONORABLE JOHN P. MASTANDO III,
UNITED STATES BANKRUPTCY JUDGE:

William Arthur Vieth and Christoph Johannes Meinrenken (together, the "Claimants"), by and through their undersigned counsel, as and for their opposition to the objection (the "Claim Objection") of debtor 1819 Weeks Ave. Realty Corp. (the "Debtor") in connection with the proofs of claim filed by the Claimants in this case, respectfully represent and allege as follows:

### BACKGROUND

1.        As the Court may recall, the Claimants are currently residential tenants of the building owned by the Debtor located at 47 Perry Street, New York, NY 10014 (the "Building").

2.        On October 28, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court.

3.      On November 14, 2019, Mr. Meinrenken and Benjamin Dixon (another residential tenant of the Building) commenced an action with the Supreme Court of the State of New York, County of New York (the "State Supreme Court"), entitled *Benjamin Dixon, et al. v. 1819 Weeks Ave. Realty Corp., ,et al* Index No. 161138/2019, seeking damages for overcharges, treble damages, attorney fees, lease reformation, breach of warrant of habitability and injunctive relief (the "Dixon/Meinrenken Action").

4.      On February 23, 2025, Mr. Meinrenken filed an "unliquidated" proof of claim in this case (Claim No. 4-1) (the "Initial Meinrenken Claim") on account of the damages sought to be recovered by Mr. Meinrenken in the Dixon/Meinrenken Action.  On April 3, 2025, Mr. Meinrenken filed an amended proof of claim in this case (Claim No. 4-2) (the "Amended Meinrenken Claim") in the total amount of $830,436.09 representing wrongful rent overcharges, reformation of the signed leases and damages, as asserted in the Dixon/Meinrenken Action.[1]

5.      On January 29, 2025, and having received no notice of the Debtor's bankruptcy filing, Mr. Vieth commenced an action with the State Supreme Court entitled *William Arthur Vieth v. 1819 Weeks Ave. Realty Corp.*, Index No. 151303/2025 (the "Initial Tenant Action"), seeking: (1) a judicial declaration that his apartment is subject to the Rent Stabilization Law (hereinafter "RSL") and Code (hereinafter "RSC"), and that renewal lease forms be provided to Mr Vieth, by the Debtor, in the form prescribed by the RSL and RSC at the proper legal regulated rent; (2) an order enjoining Debtor and/or its agents, assigns and successors from offering any lease renewal in violation of the terms of the RSL and RSC; (3) injunctive relief enjoining the Debtor from commencing eviction proceedings against Mr. Vieth, because Mr. Vieth would incur

---

[1] As reflected in the Claim Objection, on March 21, 2025, Benjamin Dixon filed a proof of claim (Claim 5-1) in the amount of $570,000 in connection with damages sought by Mr. Dixon in the Dixon/Meinrenken Action.  The undersigned does not represent Mr. Dixon as counsel.

irreparable damage as he would be listed on Tenant Screening Bureaus, also known as "Black Lists", which would impair his credit ratings, impair his ability to obtain credit or mortgages and/or impair his ability to rent other apartments in the future; (4) for money damages for residential overcharges pursuant to the Housing Stability and Tenant Protection Act of 2019 (L. 2019, ch. 36) ("the HSTPA"), to recover the amount overcharged along with interests, costs, attorneys' fees and treble damages as provided by law; (5) for money damages for advance payment of rent exceeding one month to recover the amount overcharged along with interests, costs, attorneys' fees and damages as provided by law for an excessive demand of advance rent; and (6) recovery of attorneys' fees and costs.

6.      On February 18, 2025, Mr. Vieth filed an "unliquidated" proof of claim in this case (Claim No. 3-1) (the "Initial Vieth Claim") on account of the damages sought to be recovered by Mr. Vieth in the Initial Tenant Action.  On May 23, 2025, Mr. Vieth filed an amended proof of claim in this case (Claim No. 3-2) (the "Amended Vieth Claim") in the total amount of $364,200 representing rent overcharge damages for 2021, 2022, 2023 and 2024 of $106,200 and damages resulting from Movant's advance payment of rent of $258,000, as asserted in the Initial Tenant Action.

7.      In the interim, and on March 19, 2025, Mr. Vieth filed a motion (ECF No. 36) (the "Vieth Stay Relief Motion") seeking entry of an Order, pursuant to 11 U.S.C. § 362(d)(1), vacating the automatic stay arising in this case so as to permit Mr. Vieth to commence or otherwise proceed with an action against the Debtor in State Supreme Court with respect to rent overcharges and that the State Supreme Court was the appropriate tribunal in which to do so.  The primary grounds for the Vieth Stay Relief Motion was the need to, at a minimum, immediately liquidate Mr. Vieth's (and other tenant's) claims given the Debtor's stated intention to market and sell the

Building thus making the prospective purchaser potentially liable for the rent overcharges collected by the Debtor. Opposition to the Vieth Stay Relief Motion was filed on June 10, 2025 by the Debtor (ECF No. 53) and Maguire Perry, LLC (ECF No. 54). Mr. Vieth filed his response to said opposition on June 11, 2025. A hearing with respect to the Vieth Stay Relief Motion was held on June 17, 2025.

8.      On July 7, 2025, an Order was entered by this Court (ECF No. 65) (the "Vieth Stay Relief Order") granting the Vieth Stay Relief Motion and vacating the automatic stay to the extent necessary to permit the continuation of the Initial Tenant Action or, alternatively, the commencement by Mr. Vieth of a new action with the State Supreme Court seeking substantially similar relief, through a hearing and determination, including any appeals.

9.      On September 23, 2025, and as permitted pursuant to the Vieth Stay Relief Order, Mr. Vieth filed a new Summons and Verified Complaint, copies of which are attached hereto as *Exhibit "A"*, with the State Supreme Court commencing a new action with the State Supreme Court entitled *William Arthur Vieth v. 1819 Weeks Ave. Realty Corp.* (Index Number 162610/2025) (the "New Tenant Action") seeking substantially similar relief has had been sought in the Initial Tenant Action.

10.     On September 12, 2025, the Debtor filed the Claim Objection. At the outset, the Claimants do not object to the Claim Objection to the limited extent that it seeks to expunge the Initial Meinrenken Claim and the Initial Vieth Claim as having been amended and superseded by the filing of the Amended Meinrenken Claim and the Amended Vieth Claim, respectively.

11.     However, the Debtor's request that the Amended Meinrenken Claim and the Amended Vieth Claim each be reduced to $0.00 in amount based solely upon counsels' conclusory application (not supported by any affidavit from anyone with knowledge of the facts)

that both claims purportedly are: "contingent on litigation findings/rulings regarding rent overcharges and advanced rent payments that have not been issued" and/or that any related statutory lien for rent overcharges and fees is "unsubstantiated" is without merit.   The Debtor has not provided any evidence, much less an affidavit in support,  which, if believed, refutes any of the allegations set forth in the state court actions which are incorporated by reference in the filed Proofs of Claims.

12.    Indeed, the Claim Objection is nothing more than an improper attempt at an "end run  with respect to the pending state court actions and the Vieth Stay Relief Order which vacated the automatic stay for the specific purpose of permitting Mr. Vieth (and upon the filing of a mirror application in support, the other tenants of the Building including Mr. Meinrenken) to liquidate their claims in the State Supreme Court.  In this respect, this Court determined that the State Supreme Court was and is better suited to liquidate such claims.

13.    As Chief Judge Martin Glenn has held in *In re Roman Catholic-Diocese of Rockville Centre*  647 B.R. 649,at *11-12; 2022 Bankr LEXIS 3475 (Bankr, S.D.N.Y.; Dec 9, 2022):

> Section 501(a) of the Bankruptcy Code provides that "[a] creditor…may file a proof of claim" to claim an interest in a debtor's bankruptcy estate. 11 U.S.C. § 501(a). Section 502(a) provides that a claim or interest, properly filed, "is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). "The proof of claim, if filed in accordance with section 501 and the pertinent Bankruptcy Rules, constitutes *prima facie* evidence of the validity and amount of the claim under Federal Rule of Bankruptcy 3001(f) and Code section 502(a)." 4 COLLIER ON BANKRUPTCY ¶ 502.02[3][e] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2019). Pursuant to Federal Bankruptcy Rule 3001(f), a claimant establishes a *prima facie* case against a debtor upon filing a proof of claim alleging facts sufficient to support the claim. *See* FED. R. BANKR. P. 3001(f).

"To overcome this *prima facie* evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). If the objector does not "introduce[ ] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim." 4 COLLIER ON BANKRUPTCY ¶ 502.02[3][e]. By producing "evidence equal in force to the *prima facie* case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted); *see also In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992) (reciting identical burden-shifting framework).

"To determine whether a claim is allowable by law, bankruptcy courts look to applicable nonbankruptcy law." *In re Roman Cath. Diocese of Rockville Ctr., New York*, 650 B.R. 58, 67 (Bankr. S.D.N.Y. 2023) (cleaned up). Section 502(b)(1) of the Code provides that claims may be disallowed if they are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1).

14.     To better understand the State Court litigation and the basis for allowing the State Court to determine the validity and amount of the filed proof of claims, there are two primary concepts at play which should be determined by a specialized tribunal more familiar with the legal concepts on which the filed claims are based on:

(a)     First, "Legal Regulated Rents," is the maximum amount a landlord may charge for a rent-stabilized apartment. Traditionally, to arrive at a legal regulated rent for a particular apartment, one looks back to 1984 (the date when the modern rent-regulations went into effect), determines the rent charged on that date, and adds to it permitted percentage increases- - including increases for certain building and apartment improvements, and vacancy increases the annual or biannual increases, both of which are promulgated by the Rent Guidelines Board. Should the landlord charge in excess of the legally permitted amount, the tenant has a "rent

6

overcharge" and may institute claims in state court, or before the state regulatory body, the Division of Housing and Community Renewal ("DHCR"), seeking a refund of those overcharges.

(b)     Second, "Preferential Rent." Often, a landlord is unable to collect the full legal regulated rent, due to market conditions. For example, a studio apartment in Queens may have a legal regulated rent of $2,000.00, but the market value of the unit is only $1,600.00. The rent regulations permit a landlord to charge the $1,600.00—which is termed a preferential rent— while reserving the right to charge $2,000.00 at a later date should market conditions permit.

15.     In addition to the above, a successor landlord faces carryover liability.  In this respect, RSC § 2526.1(f)(2)(i) provides:

> a current owner shall be responsible for all overcharge penalties, including penalties based upon overcharges collected by any prior owner. However, in the absence of collusion or any relationship between such owner and any prior owner, where no records sufficient to establish the legal regulated rent were provided at a judicial sale, or such other sale effected in connection with, or to resolve, in whole or in part, a bankruptcy proceeding, mortgage foreclosure action or other judicial proceeding, an owner who purchases upon or subsequent to such sale shall not be liable for overcharges collected by any owner prior to such sale, and treble damages upon overcharges that he or she collects which result from overcharges collected by any owner prior to such sale.

*Id.*

7

16.    For the foregoing reasons, it is respectfully requested that the Court deny

the Claim Objection to the extent set forth herein and that the Court grant such other and further

relief as may be just and proper.

Dated: New York, New York
         September 30, 2025

                                             **PICK & ZABICKI LLP**
Counsel to William Arthur Vieth and
Christoph Johannes Meinrenken


By:    */s/Douglas J. Pick*
            Douglas J. Pick, Esq.
            369 Lexington Avenue, 12th Floor
            New York, New York 10017
            (212) 695-6000