**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **1819 WEEKS AVE. REALTY CORP.,** | 24-11855-JPM |
| Debtor. | |

# SECOND AMENDED PLAN OF LIQUIDATION OF 1819 WEEKS AVE. REALTY CORP.

**JACOBS P.C.**
**Attorneys for the Debtor**
717 Fifth Avenue, 17th Fl
New York, New York 10022
Tel. No.: 212-229-0476
**Leo Jacobs, Esq.**
**Robert M. Sasloff, Esq.**
**Aaron Slavutin, Esq.**
leo@jacobspc.com
robert@jacobspc.com
aaron@jacobspc.com

**Dated:** New York, New York
February 9, 2026

1

**1819 Weeks Ave. Realty Corp.,** the debtor and debtor in possession (the "Debtor"), proposes the following plan of liquidation (the "Plan") pursuant to sections 1121(a), 1122 and 1123 of title 11 of the United States Code.

ARTICLE 1

DEFINITIONS

Unless the context otherwise requires (i) the following terms shall have the following meanings when used in this Plan; (ii) any capitalized term that is used in this Plan and not defined in this Article 1 but that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning set forth therein;(iii) terms stated in the singular shall include the plural and vice versa; (iv) pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter; (v) all section, article and exhibit references in the Plan are to the respective section of, article of or exhibit to the Plan; (vi) any reference to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions, means that such document shall be substantially in such form or substantially on such terms and conditions except as stated otherwise in the Plan; (vii) any reference to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (viii) the words "herein", "hereof", "hereto" or "hereunder" and other words of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (ix) the rules of construction set forth in section 102 of the Bankruptcy Code shall govern construction of the Plan; and (x) any reference contained here into the Bankruptcy Code, or to any section of the Bankruptcy Code, refers to the Bankruptcy Code, or such section of the Bankruptcy Code, as it is existing and effective on the Petition Date,

2

Except to the extent, if any, that any post-Petition Date amendment to the Bankruptcy

Code applies retroactively to case filed on the Petition Date.

    1.1        "**Administrative Bar Date**" means the first Business Day that is

30 days after the Confirmation Order becomes a Final Order.

    1.2        "**Administrative Claim**" means a Claim for, or request for payment

of, an Administrative Expense (i) as to which no objection to the allowance thereof has been

interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the

Bankruptcy Rules, or the Bankruptcy Court, or (ii) as to which any objection has been resolved by

a Final Order allowing such claim in whole or in part, to the extent such claim is Allowed.

    1.3        "**Administrative Expense**" means any cost or expense of

administration of this Case, other than Bankruptcy Fees, allowable under sections 503(b), 330

or 331 of the Bankruptcy Code.

    1.4        "**Administrative Tax Claim**" means an Administrative Claim for

a tax due to a Governmental Unit.

    1.5        "**Allowed Claim**" means a Claim or any portion thereof against the

Debtor that has not been disallowed pursuant to a Final Order and is not a Disputed Claim and (i)

with respect to which a Proof of Claim has been timely filed with the clerk of the Bankruptcy

Court or,(ii)if no Proof of Claim has been filed, that has been or hereafter is listed by the Debtor

in its Schedules as liquidated in amount and not disputed or contingent.

    1.6        "**Allowed Maguire Perry Secured Claim**" means the Secured

Claim against the Debtor, or the Property, on account of the Maguire Perry Note and/or the

Maguire Perry Security Documents plus continuing post-petition interest and reasonable fees,

3

costs and expenses which continue to accrue until payment in full.

1.7    "**Allowed Interest**" means an Interest in the Debtor that has not been disallowed and is not a disputed Interest with respect to which (i) a Proof of Interest has been timely filed or, (ii) if no Proof of Interest has been timely filed, that has been or hereafter is listed by the Debtor in its Schedules.

1.8    "**Available Cash**" means the sum of Cash remaining in the Debtor's Estate, if any, including any and all bank balances in any accounts maintained by or utilized by the Debtor.

1.9    "**Bankruptcy Code**" means title 11 of the United States Code, as amended from time to time and effective as to case filed on the Petition Date.

1.10    "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York or the United States District Court for the Southern District of New York to the extent it withdraws the reference over all or any portion of this Case pursuant to section 157(d) of title 28 of the United States Code.

1.11    "**Bankruptcy Fees**" means all fees and charges assessed against the Estate under section 1930 of title 28 of the United States Code.

1.12    "**Bankruptcy Rules**" means (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York, in effect on the Petition Date, together with any and all amendments and modifications thereto that were subsequently made applicable to this Chapter 11 Case.

1.13    "**Bidding Procedures**" means the bidding procedures approved by the Bankruptcy Court.

4

1.14    "**Business Day**" means any day other than a Saturday, Sunday, or other day on which commercial banks in New York, New York are authorized or required by law to close, or other Legal Holiday.

1.15    "**Case**" means the case filed under chapter 11 of the Bankruptcy Code commenced in the Bankruptcy Court on the Petition Date.

1.16    "**Cash**" means, on any Business Day, immediately available funds, in United States dollars, which may be spent or transferred without restriction no later than the next Business Day.

1.17    "**Claim**" means a "claim," as defined in section 101(5) of the Bankruptcy Code.

1.18    "**Class**" means a category of substantially similar Allowed Claims or Allowed Interests as established pursuant to article 3 of the Plan.

1.19    "**Closing**" means the closing of the sale of the Property.

1.20    "**Closing Date**" means the date of the Closing.

1.21    "**Confirmation**" means the entry of the Confirmation Order on the docket of this Chapter 11 Case.

1.22    "**Confirmation Date**" means the date on which the Confirmation Order is entered by the Bankruptcy Court, provided that the Confirmation Order becomes a Final Order.

1.23    "**Confirmation Order**" means an Order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, in form and substance reasonably satisfactory to the Debtor.

1.24    "**Creditor**" means a Holder of an Allowed Claim.

5

1.25       "**Cure Amount**" means any amount required, pursuant to sections 365(b)(1)(A) and 365(b)(1)(B) of the Bankruptcy Code, to cure any defaults or compensate the non-debtor party to any Executory Contract or Unexpired Lease for any actual pecuniary loss resulting from a default in respect of an Executory Contract or Unexpired Lease.

1.26       "**Debtor**" means 1819 Weeks Ave. Realty Corp.

1.27       "**Disbursing Agent**" means Jacobs PC, the Debtor's counsel.

1.28       "**Disclosure Statement**" means the *Disclosure Statement for the Plan of Liquidation of 1819 Weeks Ave. Realty Corp.*, to be filed with the Bankruptcy Court, including all exhibits, attachments or amendments thereto.

1.29       "**Disputed Claim**" means

i)       Any Claim that is listed in the Schedules as disputed, contingent or unliquidated and with respect to which no Proof of Claim has been filed;

ii)      Any Claim (including an Administrative Expense Claim), or portion thereof, that has not been disallowed and with respect to which an objection to the allowance thereof, in whole or in part, or the estimation of such Claim, has been filed with the Bankruptcy Court within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, to the extent that any such objection has not been resolved by a Final Order;

iii)     Until the earlier of (i) the filing of an objection to a Proof of Claim or (ii) the last date to file objections to Claims as established by the Plan or by Final Order, a Claim represented by a Proof of Claim shall be deemed to be a Disputed Claim in its entirety if, (x) the amount specified in the Proof of Claim exceeds the amount of any corresponding Claim listed in the

6

Schedules; (y) any corresponding Claim listed in the Schedules has been scheduled as disputed, contingent or unliquidated; or (z) no corresponding Claim has been listed in the Schedules.

1.30    "**Disputed Claim Reserve**" means the segregated account or accounts established by the Disbursing Agent pursuant to section 7.7 of the Plan.

1.31    "**Effective Date**" means the Closing Date.

1.32    "**Estate**" means the Estate of the Debtor created on the Petition Date pursuant to section 541 of the Bankruptcy Code.

1.33    "**Executory Contract**" means an executory contract within the meaning of section 365 of the Bankruptcy Code.

1.34    "**Final Order**" means a judgment, order, ruling or other decree of the Bankruptcy Court (or court of competent jurisdiction) entered by the Clerk on the docket of this Case (or on the docket of any court of competent jurisdiction) that has not been reversed, vacated or stayed and as to which (i) the time to appeal, petition for *certiorari* proceeding or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari* proceeding, or other proceedings for a new trial, reargument or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Bankruptcy Rule 9023 or Bankruptcy Rule 9024, or any analogous rule under the Bankruptcy Rules (or rule of a court of competent jurisdiction), may be filed relating to such

order shall not cause such order not to be a Final Order.

1.35    "**Holder**" means a Person holding a Claim or Interest.

1.36    "**Interest**" means an equity interest in the Debtor.

1.37    "**Interest Holder**" means the Holder of an Allowed Interest in the Debtor.

1.38    "**Leases**" means any Unexpired Lease of real property between the Debtor and its Tenants, if any.

1.39    "**Legal Holiday**" means a "Legal Holiday" as that term is defined in Bankruptcy Rule 9006(a).

1.40    "**Lien**" means any charge against or interest in property to secure payment of a debt or performance of an obligation.

1.41    "**Loan Documents**" means the documents evidencing the Maguire Perry Secured Claim, including, but not limited to the governing promissory note, loan agreement, ownership interests pledge and security agreement and UCC-1 financing statement and forbearance agreement.

1.42    "**Maguire Perry**" means Maguire Perry LLC, the holder of the Maguire Perry Note, the Maguire Perry Secured Claim, and the Maguire Perry Security Documents, as defined herein.

1.43    "**Maguire Perry Note**" means collectively, each and every agreement, promissory note, including any amendment or modification thereof, or allonge thereto, evidencing a claim held by Maguire Perry.

1.44    "**Maguire Perry Secured Claim**" means the Secured Claim against the Debtor, or the Property, as evidenced by the Loan Documents, including, but not limited to,

the Maguire Perry Note and/or the Maguire Perry Security Documents.

1.45       "**Maguire Perry Security Documents**" means each and every mortgage, assignment of rents, security agreement, and/or any such other documents, including, but not limited to, the Loan Documents, granting Maguire Perry a lien on the Property to secure the Maguire Perry Note.

1.46       "**NYC Secured Claims**" means the Secured Claims of the City of New York, including but not limited to real estate taxes and water charges.

1.47       "**Order**" means an order of the Bankruptcy Court.

1.48       "**Person**" means a person as defined in 11 U.S.C. § 101(41).

1.49       "**Petition Date**" means October 28, 2024, the date on which the Case was commenced by the filing of a voluntary petition for relief under Chapter 11 of the Bankruptcy Code by the Debtor.

1.50       "**Plan**" means this *First Amended Plan of Liquidation of 1819 Weeks Ave. Realty Corp.,* as it may be amended, supplemented or modified from time to time, including any exhibits or schedules annexed hereto or required to be filed with the Bankruptcy Court pursuant hereto.

1.51       "**Post Effective Date Debtor**" means the Debtor after the Effective Date.

1.52       "**Priority Non-Tax Claim**" means that portion of an Allowed Claim, other than a Priority Tax Claim, an Administrative Tax Expense Claim, a Secured Claim, or Bankruptcy Fees, entitled to priority in payment under Bankruptcy Code Section 507(a) or (b).

1.53       "**Priority Tax Claim**" means an Allowed Claim of a

Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

1.54    "**Professional**" means all professionals employed by or to be employed by the Debtor under sections 105, 327 or 330 of the Bankruptcy Code to render professional services in this Case pursuant to a Final Order.

1.55    "**Professional Fees**" means compensation for services rendered, and reimbursement of expenses incurred, by Professionals prior to the Confirmation Date, as allowed and awarded by Final Order following application, in accordance with sections 330 and 331 of the Bankruptcy Code.

1.56    "**Proof of Claim**" means a proof of Claim filed pursuant to section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.57    "**Proof of Interest**" means a proof of an Interest filed pursuant to section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.58    "**Property**" means the real property and improvements located at 47 Perry Street, New York, NY 10014.

1.59    "**Pro Rata**" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bear to the aggregate amount of all Allowed Claims or Allowed Interests in such Class.

1.60    "**Released Parties**" shall have the meaning set forth in section 8.2 of this Plan.

1.61    "**Sale**" means the sale of the Property.

1.62    "**Sale Approval Order**" means an order of the Bankruptcy Court approving the sale of the Property which Sale Approval Order may be contained within the

10

Confirmation Order.

1.63    **"Sale Proceeds"** means the proceeds of the sale of the Property.

1.64    "**Schedules**" mean the schedules of assets and liabilities, any amendments with respect thereto, and the *Statement of Financial Affairs* filed by the Debtor with the Bankruptcy Court in accordance with section 521(1) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules and any amendments thereto.

1.65    "**Secured Claim**" means an Allowed Claim, including all amounts, if any, allowed pursuant to section 506(b) of the Bankruptcy Code, to the extent that it is secured by a Lien on Property in which the Estate has an interest or that it is subject to set-off under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the Estate's interest in such property or to the extent of the amount subject to set-off, as applicable, as determined by a Final Order pursuant to section 506(a) of the Bankruptcy Code or as provided for in the Plan.

1.66    "**Successful Purchaser**" means the individual or entity that purchases the Property.

1.67    "**Tenants**" means all non-Debtor parties to Leases with the Debtor for the Property.

1.68    "**Transfer Taxes**" means any and all stamp taxes or similar taxes, if and as applicable and imposed by a Governmental Unit with respect to the transfer of a property or interest therein.

1.69    "**Unsecured Claim**" means a Claim against the Debtor that is not an Administrative Claim, an Administrative Tax Claim, a Bankruptcy Fee, a Priority Tax Claim,

11

a Priority Non-Tax Claim, or a Secured Claim.

    1.70    "**Unsecured Creditor**" means the Holder of an Unsecured Claim.

    1.71    "**Unexpired Lease**" means an unexpired lease within the meaning of section 365 of the Bankruptcy Code.

ARTICLE 2

TREATMENT OF UNCLASSIFIED CLAIMS

    Pursuant to section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims or Allowed Priority Tax Claims.  Such Claims, to the extent Allowed, shall receive the treatment provided in this article 2 in full satisfaction, release and discharge thereof.

    2.1    **Administrative Bar Date**. Except as otherwise provided in sections 2.2, 2.3 and 2.4 of the Plan, requests for payment of Administrative Expenses must be filed no later than the Administrative Bar Date which is the first business day that is 30 days after the Confirmation Order becomes a Final Order. Holders of Claims for payment of Administrative Expenses that do not file requests for the payment of Administrative Expenses on or before the Administrative Bar Date shall be forever barred from asserting such Claims against the Debtor or the Property.

    2.2    **Professional Compensation and Reimbursement**. Each Person seeking an award by the Bankruptcy Court of Professional Fees shall file its final application for approval of its Professional Fees no later than 60 days after the Effective Date.  Each Holder of an Allowed Claim for Professional Fees shall receive, in full satisfaction of such Allowed Claim, Cash from the Sale Proceeds and/or Available Cash, if any, in the amount of such Allowed Claim within three days of the entry of a Final Order Allowing such Claim provided that the Closing has

occurred; if it has not occurred, then the Holder of an Allowed Claim for Professional Fees shall receive, in full satisfaction of such Allowed Claim, Cash from the Sale Proceeds and/or Available Cash, if any, in the amount of such Allowed Claim at Closing from the Disbursing Agent.

2.3        **Administrative Claims**. Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, each Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent from Sale Proceeds and/or Available Cash, if any, (i) in Cash in full on the later of (x) the Closing Date, (y) the date payment of such Claim is due under the terms thereof or applicable law, or (z) three business days after such Claim becomes an Allowed Administrative Claim or (ii) as may be otherwise mutually agreed in writing between the Debtor and the Holder of such Claim; *provided, however,* that any Administrative Claim incurred by the Debtor in the ordinary course of its business shall be paid in full or performed by the Debtor in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and any agreements relating thereto.

2.4        **Administrative Tax Claims.** Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, all allowed Administrative Tax Claims held by Governmental Units shall be paid from Sale Proceeds and/or Available Cash, if any, in Cash in full either (i) on or prior to the Closing Date, or (ii) upon such other terms as may be agreed to, in writing, between the Debtor and such Governmental Units on or before the Confirmation Date.

2.5        **Priority Tax Claims.** Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of Priority Tax Claims, and except as may be otherwise mutually agreed in writing between the Debtor and such Governmental Units, all Allowed Priority Tax Claims shall be paid by the Disbursing Agent in Cash in full from the Sale Proceeds and/or Available Cash, if any, upon Closing, together with

the applicable rate of interest on the Closing Date.

2.6        **Bankruptcy Fees.** All fees and charges assessed against the Debtor under section 1930 of title 28 of the United States Code and any applicable interest thereon shall be paid in full, in Cash from Sale Proceeds and/or Available Cash, if any, by the Effective Date, and thereafter when such fees are assessed and due, until such time that this Case is closed pursuant to a final decree order, converted to one under another Chapter of the Bankruptcy Code, or dismissed, whichever is earlier.

## ARTICLE 3

### CLASSIFICATION OF CLAIMS AND INTERESTS

Except as otherwise provided in Article 2, Allowed Claims and Allowed Interests are classified as set forth in this Article 3. A Claim or interest is in a particular Class designated herein only to the extent such Claim or Interest (i) fits within the description of such Class and is in such other and different Class or Classes to the extent that the remainder thereof fits within the description of such other Class or Classes and (ii) has not been paid, released or otherwise satisfied prior to the Effective Date.

3.1        **Class 1-NYC Secured Claims (for Taxes and Water)**. Class 1 consists of the Allowed NYC Secured Claims.

3.2        **Class 2-Maguire Perry Secured Claim**. Class 2 consists of the Allowed Maguire Perry Secured Claim.

3.3        **Class 3-Unsecured Claims.** Class 3 consists of all Allowed Unsecured Claims against the Debtor.

3.4        **Class 4-Interests.** Class 4 consists of Interests in the Debtor.

14

**ARTICLE 4**

**TREATMENT OF CLAIMS AND INTERESTS**

Allowed Claims in Class 1 are unimpaired and not entitled to vote on the Plan. Claims in Classes 2 and 3 and the Interests in Class 4 are impaired and entitled to vote on the Plan. The members of each Class shall receive the following treatment under the Plan in full satisfaction, release and discharge thereof.

4.1     **Class 1 – NYC Secured Claims (for Taxes and Water).** At Closing, these Claims shall be paid in full with applicable interest thereon from the Sale Proceeds and/or Available Cash, if any, or otherwise pursuant to any agreement between the parties.

4.2     **Class 2 – Maguire Perry Secured Claim.** In full and final satisfaction, release, and discharge of the Allowed Maguire Perry Secured Claim, Maguire Perry shall, on the Closing Date, receive indefeasible payment in cash from Sale Proceeds and/or Available Cash, if any, in the amount of the Allowed Maguire Perry Secured Claim, together with all accrued and unpaid interest,  fees, costs, charges and any other sums due it pursuant to the Loan Documents through and including the Closing Date by 3:00 p.m. Furthermore, Maguire Perry consents to a voluntary plan contribution in the amount of $10,000 (the "Plan Contribution"), which shall be funded from Sale Proceeds and distributed to holders of claims junior in priority to the Maguire Perry Secured Claim. The Plan Contribution shall constitute a limited consensual carve-out from Maguire Perry's liens solely in that amount and neither the Allowed Maguire Perry Secured Claim nor the Plan Contribution shall be subject to a surcharge under § 506(c). Maguire Perry shall retain its duly perfected first-priority mortgage, security interests, and liens in and on the Debtor's assets, including, without limitation, the Property until the moment that it receives payment in full on account of the Allowed Maguire Perry Secured Claim. Effective upon the

15

Closing, such mortgage, security interests, and liens shall automatically attach to the Sale Proceeds with the same extent, validity, and priority as existed on the Petition Date, without any further act of perfection by Maguire Perry, and shall be released automatically and contemporaneously with the indefeasible payment in full of the Allowed Maguire Perry Secured Claim (net only of the Plan Contribution). As an alternative treatment, the Allowed Maguire Perry Secured Claim may be satisfied on such other terms as are agreed in writing between the Debtor and Maguire Perry.[1]

4.3        **Class 3 – Unsecured Claims.** Subject to the provisions of Article 7 of the Plan, with respect to Disputed Claims, in full satisfaction and release of the Unsecured Claims, the holders of Allowed Unsecured Claims shall receive, from remaining Sale Proceeds and/or Available Cash, if any, if any, Cash in the full amount of their Allowed Unsecured Claim after payment is made at Closing to satisfy the Allowed NYC Secured Claims and the Allowed Maguire Perry Secured Claim.  If Sale Proceeds and/or Available Cash, if any, is insufficient to pay the Allowed Unsecured Claim holders in full, then they shall receive pro rata distributions thereof.[2]

4.4        **Class 4 – Interests**. After payment is made to satisfy the Allowed

---

[1] The Debtor hereby reserves all rights with respect to the Maguire Perry Secured Claim, including the right to file an objection to the claim.  Maguire Perry's rights are also reserved with regard to responding to any such objection. Notwithstanding the forgoing, the Debtor will pay at closing any undisputed amount.

[2] Some Tenants ("Claiming Tenants") have asserted claims against the Debtor for rent overcharges, damages, fees and costs, prepaid rent, and renewal leases under rent stabilization laws, some with state court actions (e.g., Index Nos. 161138/2019, 151303/2025, Supreme Court, NY County, the latter of which is being recommenced and will have a new index number) and/or administrative proceedings (e.g., Index No. NR 410077 R, Division of Housing and Community Renewal, which proceeding was commenced without first obtaining relief from the automatic stay and for which a motion was made for such relief that was denied). The Claiming Tenants argue these claims attach to the Property upon sale, becoming an obligation of any purchaser, and therefore requiring funds reserved pending resolution. The Debtor denies these claims entirely; no claims have been adjudicated; and all parties reserve their rights. The Debtor has filed a claims objection regarding the Claiming Tenants' claims and maintains that if they are nevertheless Allowed, they should be treated as entirely unsecured.  For further information regarding the Claiming Tenants' claims, see the Disclosure Statement filed herewith.

NYC Secured Claims, the Allowed Maguire Perry Secured Claim, and Unsecured Claims, the remaining Sale Proceeds and/or Available Cash, if any, shall be distributed to the Debtor's Interest Holder.

# ARTICLE 5

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.1     **Assumption and Assignments of Executory Contracts and Unexpired Leases.** At this time, the Debtor is not party to any Executory Contracts. All of the Debtor's Unexpired Leases will be assumed by the purchaser of the Property and will be disclosed on a schedule to be filed with the Court prior to the hearing on confirmation of the Plan.

5.2     **Assumption Cure Payments**. Except as otherwise agreed to by the parties, on the Effective Date, the Debtor, or any successful purchaser, shall cure any and all undisputed defaults under any Executory Contract or Unexpired Lease that is assumed pursuant to the Plan in accordance with Section 365 of the Bankruptcy Code. Unless the parties to the contract or lease agree otherwise, all disputed defaults that are required to be cured shall be cured by the later to occur of (i) ten (10) days after the entry of a Final Order determining the amount, if any, of the Debtor's liability with respect thereto and (ii) the Effective Date.

5.3     **Rejection Claims.** Allowed Claims arising from the rejection of any Executory Contract or Unexpired Lease of the Debtor shall be treated as Unsecured Claims.

5.4     **Bar to Rejection Claims.** A Proof of Claim with respect to any Unsecured Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall not be timely filed unless it is filed with the Bankruptcy Court and

served so that it is received by the Debtor no later than 30 days after the later of (i) the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides a filing deadline with respect to such Claim, in which event no Proof of Claim with respect to such Claim shall be deemed timely filed unless it is filed with the Bankruptcy Court and served in the manner provided in such Final Order), or (ii) the Effective Date. Any such Proof of Claim not timely filed and served shall be forever barred from assertion and may not be enforced against the Debtor, its successors or its property.

## ARTICLE 6

### IMPLEMENTATION OF THE PLAN

6.1        **Implementation.** The Debtor and Disbursing Agent shall take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan, which include obtaining and closing on the Sale and distributing the Sale Proceeds and the Debtor's Available Cash, if any, to pay creditors pursuant to this Plan. The Confirmation Order shall contain appropriate provisions, consistent with section 1142 of the Bankruptcy Code, directing the Debtor and/or Post Effective Date Debtor, and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect any assignment of the Debtor's obligations and/or security documents or transfer of property required by the Plan and to perform any act, including the satisfaction of any lien, that is necessary for the consummation of the Plan.  The Closing Date shall occur as soon as practicable after the Confirmation Date, subject to and in accordance with the governing asset purchase agreement (an unexecuted copy of which has been filed as Exhibit 1 to the Disclosure Statement), and thereafter, except for creditor payments that are made at the Closing, the Disbursing Agent shall make creditor payments in accordance with the

provisions of this Plan.  Payments following the Closing Date shall be made by the Disbursing Agent.

6.2    **Plan Funding**. Payments and distributions to be made under this Plan, shall be made from the Debtor's Available Cash, if any, and the Sale Proceeds, and be made by the title company at the Closing and thereafter by the Disbursing Agent.  These funds shall be utilized to satisfy payments due consistent with the terms of the Plan.

6.3    **Transfer Taxes.** Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan, (including any instrument executed in furtherance of the transactions contemplated by the Plan), shall not be subject to tax under any law imposing a stamp tax, real estate Transfer Tax, mortgage recording tax or similar tax, including any such taxes due on any refinancing or sale of the Property in connection with or in furtherance of the Plan and the funding requirements contained herein, and shall not be subject to any state, local or federal law imposing such tax.

6.4    **Vesting of Assets.** Subject to the Closing on the Sale, on the Closing Date, the Property shall vest in the Successful Purchaser free and clear of all Liens, Claims and encumbrances except for those expressly preserved or created under the Plan, including the relevant Loan Documents, if assigned. As of the Closing Date, all liens, claims and encumbrances that have not been expressly preserved under the Plan shall attach to the Sale Proceeds, with any liens attaching in the same priority as existed prior to the Petition Date.  To the extent it is determined that the Claiming Tenants have liens or are entitled thereto, any such lien would be behind the valid Maguire Perry Secured Claim. Any other assets of the Debtor, including any surplus of the Sale Proceeds and/or Available Cash, if any, after payment is made to all classes of

19

creditors pursuant to the Plan shall vest in the Post-Effective Date Debtor free and clear of all Liens, Claims and encumbrances and the Post Effective Date Debtor may operate, buy, use, acquire, and dispose of the property of the Estate and may settle and compromise any claims, interests and causes of action in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

6.5        **Execution of Documents.**

i)        Upon entry of the Confirmation Order, the Debtor, and any necessary party, shall execute, release and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of the Plan.

ii)        Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, the Debtor shall be authorized to execute, in the name of any necessary party any estoppel certificate, or any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance (including, any Lien, Claim or encumbrance that is to be released and satisfied upon the Debtor's compliance with the provisions of Article 4 of the Plan) not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation, and the Confirmation Order shall expressly so provide.

6.6        **Filing of Documents.** Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, each and every federal, state and local governmental agency or department, shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

6.7        **Preservation of Rights of Action.**

i)       Except as otherwise provided in the Plan, or in any contract, instrument, release or other agreement entered into in connection with the Plan, the Debtor or any party in interest shall retain any claims, rights and causes of action (i) arising under sections 510 and 544 through 550 of the Bankruptcy Code or (ii) belonging to the Debtor as of the Petition Date, or the Estate of the Debtor, and arising under any provision of state or federal law, or any theory of statutory or common law or equity.

ii)      Any recovery received by the Debtor through the prosecution, settlement or collection of any claim, right or cause of action, shall be retained by the Debtor following the satisfaction of all other Allowed Claims under the terms of the Plan.

iii)     Notwithstanding any provision of the Plan to the contrary, definitions and descriptions contained herein respecting pre-Petition Date documents, agreements or claims are provided solely for the purpose of identification and classification thereof and do not constitute an admission by the Debtor of the existence, validity, allowance, or amount of any such claim, document or agreement. The Debtor expressly reserves the right to challenge the existence, validity, allowance, or amount of any such claim, document or agreement.

6.8      **Post-Confirmation Management and Compensation / Post Effective Date Debtor**. The Debtor shall continue in existence as the Post Effective Date Debtor whose activities shall be limited to matters related to the implementation of the Plan and matters reasonably incidental thereto. The Post Effective Date Debtor will have all of the rights, powers and duties necessary to carry out its responsibilities under the Plan. As soon as practicable after the Closing, the Post Effective Date Debtor shall take all necessary steps to effectuate its dissolution in accordance with applicable law.  For the avoidance of doubt, the Post Effective Date

21

Debtor has duties and obligations within these bankruptcy proceedings, including paying quarterly U.S. Trustee fees, filing quarterly Post-Confirmation Reports (in accordance with U.S. Trustee requirements) and filing a notice of Closing and a notice of Effective Date so parties know when/if the Plan has gone effective.

6.9 **Corporate Governance Documentation.** The operating agreement of the Debtor shall be amended and restated to satisfy the provisions of the Plan and the Bankruptcy Code, as is necessary.

## ARTICLE 7

### PROVISIONS GOVERNING DISTRIBUTIONS

7.1 **Disbursing Agent.** Except for payments to be made by the title company on the Closing Date, the Disbursing Agent shall distribute all Sale Proceeds, Available Cash, if any, or other property to be distributed under the Plan and may employ or contract such third parties as may be necessary to assist in or perform the distribution of Cash or other property under the Plan. Pending the final distribution of all sums distributable under the terms of the Plan (including the delivery to the Debtor of unclaimed distributions pursuant to section 7.14 of the Plan), the Disbursing Agent shall have full authority to sign checks on any bank account of the Debtor to the extent necessary to make any payment or distribution contemplated by the Plan.

7.2 **Timing of Distributions Under the Plan.** Subject to sections 7.6 and 7.8 of the Plan, any payments, distributions or other performance to be made pursuant to the Plan on account of any Disputed Claim, shall be deemed to be timely made if made on or within ten days following the later of (i) the expiration of any applicable objection deadline with

respect to such Disputed Claim or (ii) such other times provided in the Plan.

7.3      **Method of Payment.** Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank.

7.4      **Claims Objection Deadline.** Unless otherwise ordered by the Bankruptcy Court for cause, the Debtor may file and serve any objection to any Claim at any time, but in no event after the later to occur of (i) 60 days after the Effective Date, or (ii) 60 days after the date proof of such Claim or a request for payment of such Claim is filed.

7.5      **Prosecution of Objections.** After the Confirmation Date, only the Debtor and Post Effective Date Debtor shall have authority to file, settle, compromise, withdraw or litigate to judgment objections to Disputed Claims. The Debtor may file any objections to Disputed Claims without further order of the Bankruptcy Court.  Additionally, the Debtor may compromise any objections to Disputed Claims without further order of the Court; provided however, any compromise or settlement reached as to any Disputed Claim in an amount of $10,000 or greater shall be noticed on the docket.

7.6      **No Distribution Pending Allowance.** Notwithstanding any other provision of the Plan, no payment or distribution of any kind shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order.

7.7      **Escrow of Cash Distributions.**

i) On any date that distributions are to be made under the terms of the Plan, the Debtor shall make available any and all funds required to be disbursed on that date, and the Disbursing Agent shall deposit in one or more segregated accounts, Cash or property equal to

23

100% of the Cash that would be distributed on such date on account of Disputed Claims as if each

such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto,

including, but not limited to (i) Disputed Claims that may be entitled to treatment as Administrative

Claims or as Priority Non-Tax Claims pursuant to sections 503 and 507 of the Bankruptcy Code,

(ii) claims of Governmental Units for any tax, (iii) any disputed Cure Amount, and (iv) any amount

due but not payable on the Effective Date on account of Administrative Claims or claims entitled

to priority pursuant to section 503 and 507 of the Bankruptcy Code. The Disbursing Agent shall

also segregate any interest, dividends or other proceeds of such Cash. Such Cash together with any

interest, dividends or proceeds thereof, shall be held in trust for the benefit of the Holders of all

such Disputed Claims pending determination of entitlement thereto.

ii) The Debtor shall have the right to seek an Order of the Bankruptcy Court,

after notice and hearing, estimating or limiting the amount of Cash that must be so deposited on

account of any Disputed Claim. Any Creditor whose Claim is so estimated shall have no recourse

to any assets theretofore distributed on account of any Allowed Claim if the Allowed Claim of that

Creditor as determined by Final Order exceeds the amount so deposited. Such Creditor shall have

recourse first, to the undistributed assets in the Disputed Claims Reserve (on a Pro Rata basis with

other Creditors of the same Class who are similarly situated) that exceed the aggregate amount of

all Disputed Claims allowed by Final Order, or not yet resolved, and second any unpaid amount

shall be an obligation of the Debtor.

7.8        **Distribution After Allowance.** Within 15 days after the entry

of a Final Order resolving an objection to a Disputed Claim, the Disbursing Agent shall distribute

all Cash or other property, including any interest, dividends or proceeds thereof, to which a Holder

is then entitled with respect to any formerly Disputed Claim that has become an Allowed Claim.

7.9 **Investment of Segregated Cash.** To the extent practicable, the Disbursing Agent may invest any Cash segregated on account of a Disputed Claim, disputed Interest, undeliverable distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by section 345 of the Bankruptcy Code; *provided, however,* that the Disbursing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash or proceeds; and *provided further* that the Disbursing Agent shall provide notice to the United States Trustee of any segregated Cash so invested. Segregated Cash shall be maintained in an authorized depository.

7.10 **Distribution After Disallowance.** Subject to section 7.7 of the Plan, the Cash segregated on account of Disputed Claims, including the allocable portion of the net return yielded from any investment thereof, if any, remaining after all Disputed Claims have been resolved by Final Order shall revert to the Debtor.

7.11 **Surrender of Instruments, Execution of Satisfactions and Releases.**

i) Notwithstanding any other provision of the Plan, no Creditor that holds a note or other instrument evidencing such Creditor's Claim may receive any distribution with respect to such Claim unless and until the original note or other original instrument evidencing such Claim shall have been validly surrendered to the Disbursing Agent at the sole cost and expense of such Creditor.

ii) Any Cash or property to be distributed pursuant to the Plan on account of any such Claim, pending surrender, shall be treated as an deliverable distribution pursuant to section 7.13 of the Plan.

iii)     In the event any Creditor is unable to surrender a note or other instrument evidencing a Claim against the Debtor that has been destroyed, lost or stolen, such entity may receive a distribution with respect to such Claim by presenting to the Disbursing Agent, in a form acceptable to the Disbursing Agent: (i) proof of such entity's title to such Claim; (ii) an affidavit to the effect that the same has been lost and after diligent search cannot be located; and (iii) such indemnification as may be required by the Disbursing Agent and all other entities deemed appropriate by the Disbursing Agent from any loss, action, suit or any claim whatsoever which may be made as a result of such entity's receipt of a distribution under the Plan.

iv)     All questions as to the validity for eligibility of any note or other instrument evidencing a Claim so surrendered shall be resolved by Final Order of the Bankruptcy Court. The Disbursing Agent shall not be under any duty to give notification of defects in such tender and shall not incur liability for failure to give notification of such defects.

7.12     **Delivery of Distributions.** Except as provided in sections 7.13, 7.14 and 7.15 of the Plan, distributions to Holders of Allowed Claims shall be made: (1) at the addresses set forth on the respective Proofs of Claim filed by such Holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written notice of a change of address.

7.13     **Undeliverable Distributions.** i) If the distribution to the Holder of any Claim is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to such Holder unless and until the Disbursing Agent is notified in writing of such Holder's then current address. Undeliverable distributions shall remain in the possession of the Disbursing Agent until the earlier of (i) such time as a distribution becomes deliverable or (ii) such

26

undeliverable distribution becomes an unclaimed distribution pursuant to section 7.14 of the Plan.

ii)    Until such time as an undeliverable distribution becomes an unclaimed distribution pursuant to section 7.14 of the Plan, within 30 days after the end of each calendar quarter following the Effective Date, the Disbursing Agent shall make distributions of all Cash that has become deliverable during the preceding quarter. Each such distribution shall include the net return yielded from the investment of any undeliverable Cash from the date such distribution would have been due had it then been deliverable to the date that such distribution becomes deliverable.

iii)    Nothing contained in the Plan shall require the Debtor to attempt to locate any Holder of an Allowed Claim.

7.14    **Unclaimed Distributions.** Any Sale Proceeds or Available Cash, if any, or other assets to be distributed under the Plan shall revert to the Post Effective Date Debtor if not claimed by the entity entitled hereto before the later of (i) one year after the Effective Date;(ii) one year after such scheduled payment to such entity under Article 4 of this Plan; or (iii) one year after an Order allowing the Claim of that entity becomes a Final Order, and such entity's Claim shall be reduced to zero.

7.15    **Set-offs.** The Disbursing Agent, may, but shall not be required to, set-off against the distributions to be made pursuant to the Plan, the claims, obligations, rights, causes of action and liabilities of any nature that the Debtor may hold against the Holder of an Allowed Claim, *provided, however,* that neither the failure to effect such a set-off nor the allowance of any claim hereunder shall constitute a waiver or release by the Debtor of any such claims, obligations, rights, causes of action and liabilities that the Debtor has or may have against such Holder. To the extent the Disbursing Agent elects to effectuate a set-off, it shall notify the Holder of

the Allowed Claim in writing at least ten (10) days prior to effectuating the set-off. To the extent

the Holder of an Allowed Claim objects to the set-off, a written objection shall be provided to the

Disbursing Agent, no later than three (3) days prior to the set-off date or the objection shall be

waived.

### ARTICLE 8

8.1 **Injunction. To the extent permitted under 11 U.S.C.
§ 1141, and except (i) as otherwise provided under any Final Order entered by the
Bankruptcy Court or (ii) with respect to the Debtor's obligations under the Plan, the entry
of the Confirmation Order shall stay, restrain and enjoin all Creditors, with respect to any
Claim held against the Debtor as of the Effective Date (i) the commencement or continuation
of any action, the employment of process, or any act to collect, enforce, attach, recover or
offset from the Debtor, from the Property, or from property of the Estate that has been or is
to be distributed under the Plan, and (ii) the creation, perfection or enforcement of any lien
or encumbrance against the Property and any property of the Estate that has been or is to
be, distributed under the Plan; provided, however, the forgoing in no way abrogates or
enjoins (i) the Claiming Tenants from pursuing the State Court Actions, including against
the Property, and (ii) any actions or Claims against any non-debtor.**

8.2 **Limitation of Liability. To the extent provided in 11
U.S.C. § 1125(e), neither the Debtor, nor its officers, directors, members, general partners,
managers or employees (all solely acting in such capacity as estate fiduciaries), nor any
professional person employed the Debtor shall have or incur any liability to any entity for**

any action taken or omitted from the Petition Date to the Effective Date, in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan and the Disclosure Statement, or any contract, instrument, release or other agreement or document created or entered into, as approved by the Court, except: (i) in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts, (ii) with respect to their obligations under the Plan and any related documents, and (iii) as to any liability to the United States Government or any of its agencies, or any state and local authority. Nothing contained herein shall limit the liability of the Debtor's professionals pursuant to Rule 1.8(h)(1) of the New York State Rules of Professional Conduct.

### ARTICLE 9

### MISCELLANEOUS PROVISIONS

9.1      **Orders in Aid of Consummation.** Pursuant to sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation directing the implementation of matters or actions required by the Plan.

9.2      **Compliance with Tax Requirements.** In connection with the Plan, the Debtor and the Disbursing Agent shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to such withholding and reporting requirements; *provided, however,* that the transfer of any Cash, or other assets or interests hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under section 1146 of the Bankruptcy Code.

9.3      **Due Authorization by Creditors.** Each and every Creditor

29

who accepts the distributions provided for under the Plan warrants that it is the lawful owner of its Claim and is authorized to accept the distributions provided for in the Plan and that there are no outstanding Liens, encumbrances, commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such Creditor under the Plan.

9.4     **Amendments.** The Plan may be altered, amended or modified by the Debtor, in writing, signed by the Debtor, at any time before the substantial consummation of the Plan, as provided in sections 1101 and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. Any substantive modification shall require notice and a hearing before the Bankruptcy Court for approval of the proposed modification of the Plan. The Debtor in its own capacity and the Disbursing Agent shall be deemed a Plan proponent for purposes of Section 1127 of the Bankruptcy Code.

9.5     **Revocation.** The Debtor may revoke or withdraw the Plan at any time prior to entry of the Confirmation Order. If the Plan is revoked or withdrawn or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtor; or (ii) prejudice in any manner the rights of the Debtor or any other party in any further proceedings involving the Debtor or its Estate.

9.6     **Request for Relief Under Section 1129(b).** If the Plan is accepted by one or more, but not all, impaired Classes of Claims, the Debtor may request confirmation under section 1129(b) of the Bankruptcy Code of any Class of Claims, subject to any modification of the Plan made pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

9.7 **Filing of Additional Documents.** Except as otherwise provided in the Plan, on or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, and Debtor shall be responsible for the preparation and filing of any reports necessary until the entry of a Final Decree. Debtor shall also pay any fees due the U.S. Trustee's Office until entry of a Final Decree.

9.8 **Section Headings.** The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

9.9 **Computation of Time.** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

9.10 **Successors and Assigns.** The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

9.11 **Notices.** All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein:

i) If to the Debtor, Jacobs PC, 717 Fifth Avenue, 17th floor, New York, New York 10022, Attn: Robert M. Sasloff, Esq.;

ii) If to any Creditor, at (i) the addresses set forth on the Proofs of Claim filed by such Holders; (ii) the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (iii) the address reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written

notice of a change of address;

    iii)    If to any entity that has filed a notice of appearance, at the addresses set forth on such notice of appearance.

    9.12    **Governing Law.** Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other Federal law are applicable, the rights and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the law of the State of New York without giving effect to the principles of conflict of laws thereof.

    9.13    **Other Actions.** Nothing contained herein shall prevent the Debtor, Interest Holders, or Creditors from taking such actions as may be reasonably necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

    9.14    **Severability.** In the event any provision of the Plan is determined to be unenforceable such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

    9.15    **Business Day.** In the event that the Plan requires an act to be performed on a day that is not a Business Day, such act shall be performed on the first Business Day thereafter.

## ARTICLE 10

### RETENTION OF JURISDICTION

    **10.1**    **Retention of Jurisdiction.** Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, until the Case is closed, the Bankruptcy Court shall retain and have original, but not exclusive, jurisdiction to:

i)      Ensure that the Plan is consummated, and to enter any Order pursuant to section 1142(b) of the Bankruptcy Code, to compel the Debtor, the Interest Holders and any other necessary party, to take such action and execute such documents to effectuate the Plan;

ii)     Consider any modification of the Plan proposed pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019;

iii)    Allow, disallow, determine, liquidate, classify or establish the priority, secured or unsecured status of any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Expense, the resolution of any and all objections to the allowance or priority of Claims or Interests, and the resolution of any adversary proceeding;

iv)     Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for any period ending on or before the Effective Date;

v)      Resolve any motions pending on the Effective Date to assume, assume and assign or reject any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and if necessary, liquidate, any and all Claims arising therefrom;

vi)     Ensure that distributions to Holders of Allowed Claims are accomplished in accordance with the provisions of this Plan;

vii)    Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

viii)   Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements

33

or documents created in connection with the Plan or Disclosure Statement or to enforce all orders, judgments, injunctions, and rulings entered in connection with this Case, including, but not limited to any Order necessary to enforce the provisions of article 7 of the Plan;

ix)    Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan or any entity's obligations incurred in connection with the Plan;

x)    Modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code, or to modify the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement;

xi)    Remedy any defect or omission or reconcile any inconsistency in any Order, the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan, to the extent authorized herein or in the Bankruptcy Code;

xii)    Issue any injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

xiii)    Enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

xiv)    Determine any dispute arising under or related to the Plan, including, without limitation, any dispute concerning the scope or effect to of any release or discharge provided for by the Plan or the Confirmation Order. Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or

Disclosure Statement; and

xv)    Enter an Order of Final Decree concluding the Case.

10.2        **Post-Closing Jurisdiction.** Notwithstanding the entry of a final decree or an order closing the Case, the Bankruptcy Court shall retain jurisdiction to reopen the Case for the purpose of enforcing, by injunction or otherwise, the terms of the Plan, the Confirmation Order and any final decree, including, without limitation, the enforcement of any rights of the Debtor.

## ARTICLE 11

### CONDITION TO THE EFFECTIVE DATE

11.1        **Condition Precedent to Effectiveness.** The Effective Date of the Plan shall be the Closing Date.  It shall be a condition to the occurrence of the Effective Date that the Confirmation Order shall have been entered in this Case and no stay or injunction shall be in effect precluding the consummation of the transactions contemplated by this Plan and the Confirmation Order shall not have been modified or vacated on appeal.

## ARTICLE 12

### CLOSING THE CASE

12.1        **Substantial Consummation.** Until the occurrence of the Effective Date and substantial consummation of the Plan, the Debtor, its Creditors and the Property shall be subject to further Orders of the Bankruptcy Court.

35

        12.2        **Closing the Case.** Upon the substantial consummation of the Plan, the Debtor shall expeditiously move for the entry of a final decree closing the Case and such other relief as may be just and appropriate.

**Dated:** New York, New York
       February 9, 2026

                  **1819 Weeks Ave. Realty Corp.**

                  **By: /s/ Nancy Haber**
                     **Nancy Haber, President**

                  **JACOBS P.C.**
                  **Attorneys for the Debtor**
                  717 5th Avenue, 17th Floor
                  New York, New York 10022
                  Tel. No.: (212) 229-0476

                  **By: /s/ Leo Jacobs**
                     **Leo Jacobs**