UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

1819 WEEKS AVE. REALTY CORP.
Debtor.  Chapter 11
Case No. 24-11855-JPM

EMERGENCY OBJECTION TO CONFIRMATION OF PLAN OF SALE
AND MOTION FOR TEMPORARY STAY OF THE SALE CLOSING

(Filed by Nancy J. Haber as Sole Shareholder)

Nancy J. Haber, Sole Shareholder of 1819 Weeks Avenue, respectfully states as follows:

I am the Sole Shareholder of 1819 Weeks Avenue, and have managed the property at 47 Perry Street since 1999. I filed Chapter 11 Bankruptcy in 2024, and there was a restructuring plan which involved liquidation resulting in an auction sale for 47 Perry Street. I am objecting to this sale in my personal capacity. There are several important issues which must be addressed:


The First Niagara loan did include an escrow-type account, but it is structured slightly differently from the later Broadfield and Fairbridge escrows.

First Niagara Loan (2016 CEMA) — Escrow / Imposition Account
The First Niagara consolidated mortgage (2016) contains language creating what lenders typically call an "Imposition Account", which is essentially a tax and insurance escrow reserve.
Under that structure:
   • the borrower deposits funds periodically
   • the lender holds the funds
   • the lender applies them to taxes, insurance, and similar charges.
Functionally this operates the same way as a tax escrow account.
How it works
Typical language in the First Niagara CEMA requires:
   • deposits of monthly tax and insurance reserves
   • lender control of the account
   • application of funds to taxes and insurance when due.
This makes the funds collateral for the loan but earmarked for specific obligations.

Updated Loan Chart (Corrected)

| Year | Lender | Instrument | Loan Amount | | Escrow / Collateral Account |
|---|---|---|---|---|---|
| 1989 | Cohoes Savings Bank | Mortgage | $150,000 | ❌ | None |
| 2000 | Cohoes Savings Bank | Consolidation | ~$320k | ❌ | None |
| 2010 | First Niagara Funding | Mortgage | ~$491k | ❌ | None |
| 2012 | First Niagara Funding | Modification | ~$438k | ❌ | None |
| 2016 | First Niagara Bank | CEMA / Consolidated Mortgage | $2.22M | ✅ | Imposition Account (tax & insurance escrow) |
| 2018 | KeyBank | Consolidated Mortgage | ~$3.79M | ❌ | None clearly created |
| 2020 | Broadfield Realty Capital | Consolidated Mortgage | $3.5M | ✅ | Tax & Insurance Escrow Fund |
| 2022 | Fairbridge Credit | CEMA / Consolidated Mortgage | $4.6M | ✅ | Tax & Insurance Escrow Fund (additional collateral) |

Key Structural Pattern
There are two distinct escrow regimes in the loan history:
Phase 1 — No escrow (1989–2012)
Borrower pays taxes directly.
Phase 2 — Lender reserve accounts (2016 onward)
1. First Niagara (2016) — Imposition account
2. Broadfield (2020) — escrow fund
3. Fairbridge (2022) — escrow fund + additional collateral language

Why This Matters Legally:
Because the escrow system already existed before Fairbridge, it weakens a common lender argument that:
the borrower alone was responsible for tax payment.
If escrow deposits were required:
- lender may have controlled the tax reserve
- taxes may have been intended to be paid from escrow funds.
That can affect:
- whether a tax default actually occurred
- when default interest could start
- whether the creditor properly accelerated the loan.

Furthermore, the plan also improperly permits the secured creditor to assert default interest based on alleged tax defaults without first reconciling or applying funds held in borrower-funded escrow, imposition, tax and insure escrow, and reserve accounts

required under the loan documents and transferred with the assignment of the loan. Because the existence, transfer, and application of those funds directly affects whether any default occurred and whether default interest may be charged, the sale should not occur without a full accounting of the escrow and reserve accounts and the assignment chain.

In the 2020 Loan from Broadfield, there was a $600,000 holdback reserve escrow taken by Broadfield that was never refunded or credited. In the subsequent 2022 loan, which consolidated all prior loans, there was no refund, or credit given, or mention or reference of any kind to the $600,000 escrow or where it went.

Multiple attempts to contact Broadfield to determine what happened with the escrow were repeatedly ignored.

Another objection relates to there potentially being fraudulent inducement and/or undue influence involving the 2022 loan. Broadfield, and my former attorney, who happens to be my ex-husband, and the broker, all applied extreme pressure to coerce me into taking this 2022 loan, which resulted in adding another $1.1 Million of to pay off a $250,000 tax bill. Broadfield threatened to default on the 2020 loan if I did not take this additional 2022 loan, which included a $300,000 origination fee and other excessive fees to the attorney and broker handling the transaction.

I was defaulted due to a missing tax payment for 47 Perry Street. I was not notified of the default at all and only found out 5 months later when I tried to secure new financing. The pay-off letter for the new loan I was trying to get at the time showed $400,000 of default interest and a $460,000 late fee, which I have subsequently discovered is unlawful due to the default interest, which has ballooned after 3 years at 24% default interest rate to $4 Million dollars. This amount of interest is unconscionable and is indicative of predatory lending. This seems to have all been a set-up so that I would be defaulted and would be forced to sell my property, which I never wanted to do. Thank you for your time and consideration in this matter.

Sincerely,
Nancy J. Haber