Nancy Haber                                              5-12-2026
*Pro Se*
*Sole Shareholder and Equity Holder of*
*1819 Weeks Ave. Realty Corp.*
217 East 70th St
#2460
New York, New York 10021
Tel. 917-929-5006
E-mail: njhproperties@aol.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>   1819 WEEKS AVE. REALTY CORP.<br><br>                          Debtor. | Chapter 11<br><br>Case No. 24-11855-JPM |

**NANCY HABER'S LIMITED OBJECTION AND RESERVATION OF RIGHTS**
**WITH RESPECT TO THE CLAIM ASSERTED BY MAGUIRE PERRY LLC**

TO:   THE HONORABLE JOHN P. MASTANDO III
       UNITED STATES BANKRUPTCY JUDGE

Nancy Haber ("Haber"), appearing pro se as the sole shareholder and equity holder of

Debtor 1819 Weeks Ave. Realty Corp. (the "Debtor"), respectfully submits this limited objection

and reservation of rights concerning the secured claim asserted by Maguire Perry LLC ("Maguire

Perry" or the "Claimant"). Haber respectfully submits that the current record does not permit the

Court to determine the proper amount, validity, enforceability, or secured status of the asserted

claim because the record lacks a complete accounting of borrower-funded escrow accounts, tax

and insurance escrow funds, reserve accounts, servicing transfers, payment histories, loan

disbursement records, and assignment documentation associated with the underlying loan

transactions. In addition, material questions remain concerning the chain of assignments relating

to the Note, Mortgage, and related loan documents, including whether the proper entity possessed authority to administer the loan, declare the alleged defaults, accelerate the indebtedness, and impose default-rate interest during the relevant time period. Haber further submits that the asserted secured claim includes substantial default interest and related charges without a sufficient evidentiary showing under 11 U.S.C. § 506(b) and applicable nonbankruptcy law.

Publicly recorded documents and the filings presently before the Court do not establish how borrower-funded escrow accounts, reserve balances, and loan proceeds were administered, transferred, applied, or credited in connection with the asserted indebtedness. Accordingly, Haber respectfully requests that no final allowance, payoff determination, approval, or distribution on account of the asserted secured claim occur unless and until a full accounting and reconciliation of the loan history, reserve accounts, servicing records, assignment history, and payoff calculations is provided.

Nothing contained herein shall be construed as a waiver of any rights, claims, defenses, objections, or causes of action that may belong to the Debtor, the bankruptcy estate, any Plan Administrator, or any other party in interest.

## PRELIMINARY STATEMENT

1.      This limited objection arises from substantial unresolved accounting, escrow, reserve, servicing, and assignment issues relating to the secured claim asserted by Maguire Perry LLC ("Maguire Perry" or the "Claimant") against Debtor 1819 Weeks Ave. Realty Corp. (the "Debtor").

2.      Nancy Haber ("Haber"), appearing pro se as the Debtor's sole shareholder and equity holder, respectfully submits that the current record does not permit the Court to determine the proper amount, validity, enforceability, or secured status of the asserted claim because the

2

record lacks a complete accounting of borrower-funded escrow accounts, reserve balances, servicing records, payment histories, loan disbursement records, extension charges, interest reserve applications, and assignment documentation associated with the underlying loan transactions.

3.      Haber does not seek through this objection to delay, interfere with, or block the proposed sale of the Debtor's property. Rather, this objection is narrowly directed toward ensuring that the amount, validity, and calculation of the alleged secured claim are properly reconciled and supported by a complete accounting prior to any final allowance, payoff determination, or distribution of sale proceeds.

4.      Loan disbursement and extension records presently available reflect substantial deductions, accrued interest charges, late fees, origination fees, reserve allocations, legal charges, and lender-controlled disbursements relating to the underlying loan transactions. Those records further reflect the existence and depletion of Interest Reserve Accounts and other reserve balances that were intended to fund interest obligations and carrying costs associated with the loan. However, the current bankruptcy record does not establish how such reserve funds were administered, transferred, applied, credited, or reconciled in connection with the asserted indebtedness.

5.      The underlying loan documents further created lender-controlled escrow and reserve accounts, including Tax and Insurance Escrow Funds, Imposition Accounts, and Interest Reserve Accounts funded through borrower payments and loan proceeds. The present record does not establish the balances of those accounts, whether such funds transferred through the assignment chain, whether such reserves were exhausted or reallocated, or whether all reserve

balances and borrower-funded credits were properly applied against the asserted secured claim prior to the assessment of default-related charges and interest.

6.    Publicly recorded documents further reflect multiple assignments and collateral transfers relating to the Note, Mortgage, and related loan documents, including a collateral assignment executed by Maguire Perry to Felicitas Debt Fund LP prior to the alleged defaults referenced in filings before this Court. The present record therefore does not clearly establish which entity possessed authority to administer the loan, declare defaults, accelerate the indebtedness, impose default-rate interest, or enforce the loan documents during the relevant time period.

7.    Haber further submits that the asserted secured claim includes substantial default interest and related charges without a sufficient evidentiary showing under 11 U.S.C. § 506(b) and applicable nonbankruptcy law. The current record does not establish whether borrower-funded reserve balances, escrow funds, accrued interest reserves, or other credits were properly applied prior to the assessment of default-related charges and interest.

8.    Because these unresolved accounting and assignment issues directly affect the amount, validity, enforceability, and secured status of the asserted claim, Haber respectfully submits that no final allowance, payoff determination, approval, or distribution on account of the asserted secured claim should occur unless and until a complete accounting and reconciliation of the loan history, reserve accounts, servicing records, assignment history, and payoff calculations is provided.

9.    The  2020 Broadfield Loan Disbursement Statement is attached as **Exhibit A**. It consists of the closing disbursement statement relating to the 2020 Broadfield refinancing transaction for the Debtor's property located at 47 Perry Street in Manhattan. Exhibit A is

submitted to demonstrate that substantial borrower-funded reserve accounts and lender-controlled escrow balances were created and funded in connection with the underlying loan transactions. The current bankruptcy record does not establish how such reserve balances and escrow funds were subsequently administered, transferred, applied, or credited against the asserted secured indebtedness. The exhibit reflects a gross loan amount of approximately $3.5 million together with substantial deductions, escrow allocations, reserve funding obligations, legal fees, lender fees, and third-party disbursements made in connection with the transaction. The exhibit further reflects the creation and funding of lender-controlled reserve and escrow accounts, including reserves associated with taxes, insurance, capital improvements, and other loan-related obligations.

10.    Importantly, Exhibit A reflects approximately $642,000 in escrow and reserve-related funding and allocations associated with the transaction, further demonstrating the existence of substantial lender-controlled reserve and escrow balances connected to the underlying loan. The current bankruptcy record does not establish how such reserve balances and escrow funds were subsequently administered, transferred, applied, or credited against the asserted secured indebtedness.

11.    **Exhibit B** consists of the 2022 Fairbridge Extension and Interest Reserve Schedule relating to the Fairbridge loan transaction and associated extension arrangements. The exhibit reflects substantial accrued interest charges, late fees, extension fees, origination charges, broker fees, lender legal fees, and reserve deductions relating to the underlying loan. The exhibit further reflects the existence, application, and reduction of an Interest Reserve Account intended to fund interest obligations associated with the loan. The exhibit additionally reflects that substantial portions of loan proceeds and reserve balances were applied toward accrued interest

obligations, extension-related charges, reserve funding obligations, and lender-controlled deductions prior to any borrower distribution. Exhibit B is submitted to demonstrate that substantial reserve balances, accrued interest allocations, extension-related charges, and lender-controlled deductions were applied in connection with the underlying loan transactions and that the present bankruptcy record does not establish how such amounts were reconciled, credited, or incorporated into the asserted secured payoff amount.

12.    **Exhibit C** consists of an additional Fairbridge reserve and extension accounting schedule reflecting the application of reserve balances and accrued charges associated with the underlying loan. Notably, Exhibit C reflects approximately $153,750 allocated to an Interest Reserve Account for the period from September 1, 2022 through January 1, 2023 together with an approximately $118,833 remaining reserve balance. The exhibit further references approximately $253,919.14 remaining "for Taxes Due 1/1/23 and Other Needs," which directly overlaps with the alleged January 2023 tax default referenced in filings before this Court. Exhibit C therefore raises material questions concerning whether lender-controlled reserve funds or escrow balances existed for payment of the January 2023 tax obligations and whether such funds were properly administered, applied, or credited prior to the assessment of default-related charges and interest.

13.    **Exhibit D** is a copy of the Reserve Pledge Agreement dated June 11, 2020 executed in connection with the Broadfield loan transaction. The agreement expressly establishes lender-controlled reserve accounts, including an Interest Reserve and Real Estate Tax and Insurance Reserve funded from borrower proceeds. The agreement further provides that reserve funds were to be used for the payment of interest, taxes, and insurance obligations associated with the loan and property. Importantly, Section 2.13 of the Reserve Pledge Agreement expressly

6

states that "[a]ny amount remaining in the Reserve Account after the Debt has been indefeasibly paid in full shall be promptly returned to Borrower." Exhibit D therefore demonstrates that reserve balances remained borrower-related funds subject to accounting, reconciliation, application, and potential return to the Borrower. The amount of escrowed funds exceeds $ 700,000. The present record does not establish the amount of any remaining reserve balances, how such reserve funds were applied, whether such balances transferred through the assignment chain, or whether all reserve-related credits were properly applied against the alleged secured indebtedness prior to the assessment of default-related charges and interest.

14.     **Exhibit E** displays an unlawful late fee of $460,000 that is part of the claim by Maguire, in addition to 24% default interest, as shown on the 2023 payoff letter. Maguire is not legally entitled to both a late fee and the default interest.

15.     Haber further submits that the current record does not establish whether the asserted late fees, default interest charges, accrued interest charges, reserve-related deductions, and extension-related charges were imposed with respect to the same alleged payment defaults or default periods. The loan accounting records presently before the Court reflect substantial late charges together with default-rate interest and accrued interest calculations associated with overlapping time periods. To the extent multiple categories of default-related charges were assessed simultaneously with respect to the same alleged defaults, the current record does not establish whether such charges constitute permissible and non-duplicative recoveries under the loan documents, 11 U.S.C. § 506(b), and applicable New York law. Nor does the present record establish whether borrower-funded reserve accounts or escrow balances were available to offset such alleged defaults prior to the imposition of default-related charges and interest.

7

16.     **Exhibit F** displays the exorbitant legal fee requested by Jacobs P.C., which must be sharply reduced. Chapter 11 Bankruptcy does not usually exceed $100,000. Representation by Jacobs P.C. was woefully inadequate and abysmal, and repeatedly served the interests of the Lender over the interests of the Debtor. When asked about the illegal late fee being charged by Maguire, as well as about their own final invoice being charged to the Debtor, no responses were given. Fiduciary duty to the Debtor entails objecting to the illegal late fee coupled with the 24% default interest. When inquiring about the veracity of Maguire's default interest claim, Debtor was only told "not to make waves with the lender." Jacobs P.C. refused to file any objections of any kind. No extraordinary events or workload occurred during this bankruptcy that could justify a legal fee of such magnitude as $487,838.29.

17.     The present record does not permit the Court to determine with reasonable certainty the proper amount of the alleged secured indebtedness.

## RESERVATION OF RIGHTS

18.     Nancy Haber expressly reserves all rights, claims, defenses, objections, offsets, recoupment rights, and arguments with respect to the asserted secured claim, the amount of any alleged indebtedness, the administration of reserve and escrow accounts, the chain of assignments of the loan documents, and the treatment of claims under any proposed chapter 11 plan.

19.     Nothing contained herein shall be deemed an admission concerning the validity, enforceability, amount, priority, perfection, or secured status of any asserted claim or lien.

## RELIEF REQUESTED

WHEREFORE, for the reasons set forth above, the Objecting Party respectfully requests that the Court enter an order:

a. Require Maguire Perry LLC and/or any successor or assignee to provide a full accounting of all borrower-funded escrow accounts, reserve accounts, servicing records, payment histories, and loan disbursement records relating to the underlying loan transactions;

b. Require reconciliation of all Tax and Insurance Escrow Funds, Interest Reserve Accounts, Imposition Accounts, and reserve balances transferred through the assignment chain;

c. Determine that no final allowance or payoff determination of the asserted secured claim may occur absent such accounting;

d. Disallow, reduce, recharacterize, or otherwise limit any portion of the asserted claim that is unsupported, duplicative, improperly calculated, uncredited, or unenforceable under applicable law;

e. Disallow or limit any claim for default interest unless and until the claimant establishes entitlement under 11 U.S.C. § 506(b) and applicable nonbankruptcy law;

f. Grant such other and further relief as the Court deems just and proper.

Dated: May 12, 2026

NANCY HABER
Solely in her capacity as Sole Shareholder of
1819 Weeks Ave. Realty Corp.

By:
  Nancy Haber
          Pro Se Sole Shareholder and Equity
Holder
` of 1819 Weeks Ave. Realty Corp.
          217 East 70th St
#2460    New York, New York  10021
          Phone: 917-929-5006
          E-mail: njhproperties@aol.com

9