**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Deborah J. Piazza, as Plan Administrator*
1350 Broadway, 11th Fl.
New York, NY 10018
212-216-8000
Scott Markowitz, Esq.
Michael Medved, Esq.
smarkowitz@tarterkrinsky.com
mmedved@tarterkrinsky.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re:

1819 WEEKS AVE. REALTY CORP.,

                          Debtor.

-------------------------------------------------------------x

Chapter 11

Case No. 24-11855 (JPM)

**NOTICE OF MOTION BY DEBORAH J. PIAZZA AS PLAN ADMINISTRATOR TO HOLD NANCY HABER IN CONTEMPT AND IF NECESSARY TO DIRECT THE UNITED STATES MARSHALS TO TAKE NANCY HABER INTO CUSTODY AND HOLD HER UNTIL SUCH TIME THAT SHE PURGES HER CIVIL CONTEMPT**

     **THIS PROCEEDING IS TO PUNISH YOU FOR CONTEMPT OF COURT AND SUCH PUNISHMENT MAY CONSIST OF FINE OR IMPRISONMENT, OR BOTH, ACCORDING TO LAW.**

     **WARNING: YOUR FAILURE TO APPEAR IN COURT MAY RESULT IN YOUR IMMEDIATE ARREST AND IMPRISONMENT FOR CONTEMPT OF COURT.**

**PLEASE TAKE NOTICE** that a hearing will be held in person before the Honorable John P. Mastando III, United States Bankruptcy Judge at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Courtroom 723, New York, New York 10004 on **June 25, 2026 at 11:00 a.m.** (the "Hearing") [1], or as soon thereafter as counsel can be heard, to consider the motion for contempt (the "Motion") by Deborah J. Piazza (the "PA") appointed pursuant to the order confirming the Chapter 11 plan (the "Confirmation Order") of debtor 1819 Weeks Ave. Realty Corp., (the "Debtor"), in the above-captioned bankruptcy case in accordance with Section 105 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Confirmation Order and the Order entered by this Court in aid of confirmation, holding Nancy Haber in civil contempt and, if necessary, for an order directing the United States Marshals to take Nancy Haber into custody and hold her until such time that she purges her civil contempt and granting related relief.

**PLEASE TAKE FURTHER NOTICE,** that objections, if any, to the relief requested in the Motion shall be (a) filed with the Clerk of the Bankruptcy Court on the Court's ECF system; (b) served upon: (i) the PA's counsel, Tarter Krinsky & Drogin LLP, 1350 Broadway, 11th Floor, New York, New York 10018, Attn: Scott S. Markowitz, Esq. (smarkowitz@tarterkrinsky.com); and (ii) Office of the United States Trustee for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, Room 534, New York, NY 10004-1408, and (c) delivered to the Chambers of the Honorable

---

[1] Any party who wishes to attend the Hearing whether in person or via Zoom for Government is required to register their appearance by 4:00 p.m. one business day before any scheduled Hearing with the eCourtAppearances tool on the Court's website.

095415\1\180550728.v2

John P. Mastando III, United States Bankruptcy Judge, either by delivering two (2) hard, double-sided copies thereof at One Bowling Green, Courtroom 723, New York, New York 10004, or by emailing a copy of same to Chambers at JPM.chambers@nysb.uscourts.gov so that same are filed and received on or before **June 18, 2026 at 5:00 p.m.**

  **PLEASE TAKE FURTHER NOTICE**, that if you have no objections to the relief requested in the Motion, you need not appear at the Hearing.

  **PLEASE TAKE FURTHER NOTICE**, the Hearing may be adjourned from time to time without further notice.

Dated: New York, New York
  June 2, 2026

  **TARTER KRINSKY & DROGIN LLP**
  *Attorneys for Deborah J. Piazza,*
  *as Plan Administrator*


  By:  /s/ Scott S. Markowitz
      Scott S. Markowitz, Esq.
      Michael Medved, Esq.
      1350 Broadway, 11th Fl.
      New York, New York 10018
      Tel: (212) 216-8000
      Email: smarkowitz@tarterkrinsky.com
      Email: mmedved@tarterkrinsky.com

095415\1\180550728.v2

**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Deborah J. Piazza, as Plan Administrator*
1350 Broadway, 11th Fl.
New York, NY 10018
212-216-8000
Scott Markowitz, Esq.
Michael Medved, Esq.
smarkowitz@tarterkrinsky.com
mmedved@tarterkrinsky.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re:

1819 WEEKS AVE. REALTY CORP.,

Debtor.

-------------------------------------------------------------x

Chapter 11

Case No. 24-11855 (JPM)

**PLAN ADMINISTRATOR'S MOTION TO HOLD NANCY HABER IN CONTEMPT AND IF NECESSARY TO DIRECT THE UNITED STATES MARSHALS TO TAKE NANCY HABER INTO CUSTODY AND HOLD HER UNTIL SUCH TIME THAT SHE PURGES HER CIVIL CONTEMPT**

**TO THE HONORABLE JOHN P. MASTANDO, III**
**UNITED STATES BANKRUPTCY JUDGE:**

Deborah J. Piazza, the plan administrator (the "PA") appointed pursuant to the order confirming the chapter 11 plan (the "Confirmation Order") of debtor 1819 Weeks Ave. Realty Corp., (the "Debtor"), in the above-captioned bankruptcy case (the "Bankruptcy Case"), by and through her attorneys, Tarter Krinsky & Drogin LLP, respectfully submits this motion (the "Motion") for an order holding Nancy Haber ("Haber") in contempt of the Court's *Order In Aid of Confirmation* entered on May 11, 2026 (ECF 165) (the "Aid Order") in accordance with Section 105 of title 11 of the United States Code (the "Bankruptcy Code"), rule 9020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Confirmation Order and the Aid Order

1

095415\1\180546085.v2

and to require Haber to turnover funds she received in direct contravention of these Orders entered by the Court, and granting such further and different relief as the Court may deem just and proper. In support of this Motion, the PA respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Debtor formerly owned the real property located at 47 Perry Street, New York, New York (the "Property"). The Debtor is 100% owned by Nancy Haber ("Haber"). The Property was sold to 47 Perry LLC (the "Buyer") through a sale implemented in the Debtor's chapter 11 plan that was confirmed by order entered on April 16, 2026 (the "Confirmation Order") (ECF 155).

2. The Confirmation Order became final on April 30, 2026, and the closing occurred on May 12, 2026.

3. Haber, however, refused to participate in the closing process by failing to comply with the terms of the Chapter 11 plan and Confirmation Order and actively interfered and delayed the closing process, requiring the need for the filing of a motion that resulted in the Court entering the Aid Order.[1]

4. Specifically, since the Confirmation Order was entered, Haber failed to respond to the PA's inquiries and direct instructions, failed to sign the Plan Administrator Agreement, and she also continued to maintain control over the Debtor's bank account. Most pertinent now, though, Haber continued to collect tenants' rents after the Confirmation Order was entered while she was actively delaying the sale from closing that was contemplated by the plan and the Confirmation Order and she further solicited 'pre-payment deals' under false pretenses with tenants while she was aware of the impending closing and the fact she was not entitled to collect

---

[1] Based upon the PA's limited due diligence to date, it appears Haber has converted to her own use well over $500,000 of estate assets (rents generated from the Property) during the Chapter 11 case. The PA is deciding whether to file a complaint against Haber seeking relief under section 548 and 549 of the Bankruptcy Code.

2

rents for May 2026 and thereafter.

5.      The Court directly addressed Haber's actions in the Aid Order by ordering the following: "Haber is directed to immediately turnover to the Plan Administrator any and all rents, additional rents, use and occupancy payments, security deposits, escrowed funds or other funds collected or received by or on behalf of the Debtor after April1 16, 2026, the date of entry of the Confirmation Order" (the "Turnover Provision).

6.      The Court entered the Turnover Provision in response to the fact that on April 22, 2026, five (5) days after entry of the Confirmation Order, Haber requested a tenant residing in Apt. 1CD to pay the May rent to the Debtor and this tenant wired the Debtor's JP Morgan Chase bank account $14,000 on April 23, 2026.[2]

7.      Recently, after entry of the Aid Order, the PA has been informed by another tenant of Apartment 2B that on April 27, 2026, Haber also collected May rent from this tenant in the amount of $4,585.00 while she was purposely delaying the closing, A true and correct copy of e-mail correspondence from this tenant is attached hereto as **Exhibit** "**A**".

8.      And, the PA has also further recently been informed by another tenant of Apartment 1B that Haber had collected their May rent by offering a 'pre-payment'- deal while she was preventing the closing from taking place. A true and correct copy of e-mail correspondence from this tenant is attached hereto as **Exhibit** "**B**". Specifically, this tenant stated in e-mail correspondence on May 28, 2026: "Nancy and I were square for May rent- I did one of the deals she had with tenants on pre-paying."  This correspondence indicates this tenant paid Haber $3,450 for May rent in violation of the plan and the Confirmation Order.

9.      Perhaps, most egregiously, tenants of Apartment 5CD (the "5CD Tenants") have

---

[2] The PA had provided this information to this Court in the motion that led to the entry of the Aid Order found at ECF 159.

095415\1\180546085.v2

submitted to the PA and the Buyer a 'lease' they entered with the Debtor that supposedly ran from January 1, 2023, through December 31, 3030, at a monthly rent of $7,460 but was signed by the tenants on December 15, 2025 (after the auction sale of the property was conducted). A true and correct copy of this unsigned 'lease' that was provided by the 5CD Tenants is attached hereto as **Exhibit** "**C**". Although Haber never signed this 'lease,' in January 2026, Haber somehow induced the 5CD Tenants to prepay the remainder of the 'lease' with a discounted monthly rent of $7,000 if they did so. This was a pre-payment of an entire five (5) years of rent. ***Haber was so brazen in this scheme that she directed this five (5) year pre-payment to be sent to her personal checking account so it would not be disclosed in the Debtor's operating reports filed in this case.*** In sum, for 2026, the 5CD Tenants paid Haber $49,000 that should have never been paid to Haber (May – December rent post entry of the Confirmation Order). And, for years 2027-2030, the 5CD Tenants prepaid Haber $336,000. This totals $385,000 of rents Haber is in illegal possession of. The evidence of the wire transfers to Haber that were provided by the 5CD Tenants is attached hereto as **Exhibit** "**D**".

10.     The tenant in Apt. 4B also apparently entered into a 'pre-payment' deal with Haber whereby this tenant entered into a lease beginning on October 23, 2025, that ran for a year but this tenant also pre-paid Haber for the entire year. In fact, the 'lease' entered into between this tenant and Haber states the 'monthly' rent is "3,650- reflecting a discounted rate in exchange for a one $43,800 lump sum payment paid by 9/11/2025." The lease payments for May 2026 – October 2026, totaling $21,900, need to be returned to the estate. Of note, the tenant's prior lease from October 2024 through October 2025 was for $4,000 per month. The $350 reduction appears to be due to the pre-payment. See **Exhibit "E."**

11.     As such, Haber has acted in direct contravention of not 1 (one) but 2 (two) orders

of this Court and is in illegal possession of at least \$428,935. Furthermore, the PA submits based on Haber's continued actions that it is possible- if not likely- Haber is in illegal possession of an amount even greater than \$428,935.

12. Additionally, paragraph 12 of the Aid Order also further provided that: "Haber is directed to immediately provide to the Plan Administrator and the Buyer an updated rent roll and schedule and accounting of security deposits, copies of leases, tenant ledgers, and all closing deliverables, documents or information reasonably requested by the Plan Administrator or the Buyer in connection with and furtherance of the Plan, the Confirmation Order, and the sale of the Property." The PA has been informed by the Buyer that despite repeated requests, Haber has failed to provide the Buyer with the rent roll for the building or any copies of leases or any other documents that the Buyer has requested. Haber has blatantly ignored this provision of the Aid Order.

13. The PA submits that in light of Haber's almost unfathomable direct contravention of Orders of this Court and the scale of Haber's thievery the sanction of directing the US Marshals to hold Haber in custody is appropriate should Haber fail to turnover the monies she collected from tenants after confirmation of the plan and for rents for the month of May 2026 and thereafter. This same sanction should be imposed should Haber fail to provide the Buyer with the documentation required by the Aid Order until such time Haber produces such documents.[3]

## **JURISDICTION AND VENUE**

14. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 & 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[3] There are only sixteen (16) tenants at the Property and it should not be difficult for Haber as the Debtor's owner for many years to provide this basic information.

095415\1\180546085.v2

15. The statutory predicates for the relief requested herein are Bankruptcy Code Sections 105 and Bankruptcy Rule 9020.

## BACKGROUND

16. The Debtor respectfully refers the Court and interested parties to Maguire Perry LLC's ("Maguire") Response to Objections to Final Approval of Debtor's Disclosure Statement and Confirmation of Debtor's Plan of Liquidation (ECF 149), which is incorporated herein by reference, for a detailed background of the Debtor's Bankruptcy Case and the preliminary statement section set forth herein for additional background information.

## RELIEF REQUESTED

17. The PA submits that ample authority exists in the Bankruptcy Code, Bankruptcy Rules, the chapter 11 plan, the Confirmation Order, and the Aid Order that support this Court's authority to enter an order to hold Haber in civil contempt- escalating to criminal contempt if Haber doesn't comply- and to also enter in a civil contempt sanction in the amount of $428,935.

18. Bankruptcy Code Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a). Bankruptcy Rule 9020 recognizes that bankruptcy courts have contempt power. This Court has previously held it "has broad discretion to fashion a coercive remedy based on the nature of the harm and the probable effect of alternative sanctions, and its determination will not be disturbed absent a clear showing of abuse." *In re Chief Exec. Officers Clubs, Inc.*, 359 B.R. 527, 536 (Bankr. S.D.N.Y. 2007). Furthermore, "[i]In considering what sanction to impose, the Court has considered (1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of the sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the sanction's burden." *Id.*

095415\1\180546085.v2

at 542.

19.     In *In re Chief Exec. Officers Clubs, Inc.*, this Court had entered an order that explicitly stated the Debtor's principal was "enjoined without further order of the Court from transferring or diverting any property of the estate." *In re Chief Exec. Officers Clubs, Inc.*, at 532. Thereafter, this Court found on the evidence presented that the debtor's principal had back-dated and cashed a check after the order was entered preventing the diversion of any estate property and therefore the debtor's principal had directly violated the Court's order.  This Court determined since the Debtor's principal had taken $1,500 from the estate in violation of the Court's order that the Debtor's principal should repay this amount within approximately two weeks or otherwise appear on an order to show cause why he should not immediately be jailed.  *In re Chief Exec. Officers Clubs, Inc.*, 359 B.R. at 543.  Moreover, the Court found this remedy was particularly appropriate because the Debtor's principal had "set about to make a series of transfers that he would be precluded from making once a trustee was appointed." *Id.*

20.     In addition to *In re Chief Exec. Officers Clubs, Inc.*, this Court, as well as the Eastern District of New York Bankruptcy Court, has entered in similar orders on numerous occasions that fashioned such relief. *See In re 189 East 7th Street LLC*, Case No. 14-13254 (SCC) (January 18, 2027), citing *In re 1990's Caterers Ltd.*, 531 B.R. 309, 319-320 (Bankr. E.D.N.Y 2015). ("Courts may utilize incarceration as a coercive sanction so long as the 'contemptor is able to purge and obtain his release by committing an affirmative act.'").

21.     Here, Haber expressly approached tenants after the Court entered the Confirmation Order that authorized the sale of the Property to enter into arrangements with such tenants to pre-pay May rents directly to her while she was actively delaying the closing of the sale by refusing to sign the closing documents.  In fact, the PA and Maguire were forced by Haber to file a motion

with the Court to force Haber to comply with her duties that resulted in the Aid Order being entered so that the sale could close for the benefit of the estate. As part of the Aid Order, this Court explicitly provided for the Turnover Provision which required Haber to *immediately turnover* any amounts collected on rents after April 16, 2026. The tenant in Apt 1CD stated he sent over the $14,000 in May rent due by him on April 23, 2026, and that Haber "asked for it a day early- on April 22." Moreover, the tenant in Apt. 2B provided evidence he sent Haber $4,585 for May rent on April 27, 2026. And, the tenant in Apt. 1B stated that she sent Haber approximately $3,450 under a 'pre-payment' deal Haber was conducting with tenants. As such, Haber collected these rents under false pretenses two (2) weeks after the Confirmation Order had been entered while at the same time Haber was refusing to sign the closing documents to delay the closing. The PA at this time is only aware of these three (3) particular tenants because they affirmatively communicated such to the Buyer. And, the PA submits that it is likely to find more tenants that were approached by Haber upon a full investigation.

22.     Moreover, these improperly directed by Haber May rent payments are only the tip of the iceberg of Haber's illegal and improper actions. The PA has been made aware by the 5CD Tenants that Haber had entered into a seven (7) and half year lease in 2023 that was at a rent of $7,460 per rent. The PA actually does not have a copy of any lease entered into in July of 2023. Instead, the PA has a copy of a **unsigned (by the Debtor)** lease dated December 15, 2025- **a date during the midst of the Debtor's bankruptcy**- that memorializes this 'lease' that runs from the back-dated date of July 1, 2023, through December 31, 2030. Amazingly, the PA has also received evidence of wire transfers that includes pre-payment under this 'lease' for a full five (5) years from 2026-2030 by which a supposed discount from the 'lease' was negotiated to $7,000 per month. These tenants paid Haber the vast sum of $420,000 under a lease that was neither signed by Haber

nor approved by the Bankruptcy Court.[4] The brazen nature of this scheme concocted by Haber becomes even more crystalized upon the realization that payments under this 'lease' were not sent to the Debtor's operating account for which the Debtor submitted operating reports for but rather to what appears to be Haber's personal account ending in 7353 held at JP Morgan Chase Bank. In sum, attributing the payments made from May 2026 onwards, Haber is in illegal possession of $385,000 of these funds.

23. Lastly, Haber clearly perpetuated these 'pre-payment deals' with as many tenants as possible as evidenced by the deal she also made with the tenant in Apt. 4B. $21,900 of the payment made under this 'lease' is attributable to May – October 2026 and must be returned to the estate. Although the scheme with Apt. 4B did not reach the magnitude of the scheme perpetuated with the 5CD Tenants- a pre-payment for multiple years- it could not be more clear that Haber entered into as many deals with tenants under false pretenses as she could at a time when she knew the closing of the sale was imminent.

24. The PA submits this Court should follow the sanction crafted in *In re Chief Exec. Officers Clubs, Inc.*, to require Haber to turnover the amounts she is in improper possession of in direct contravention of the Court's Orders in the amount of $428,935, the total amount of the diverted May payments the PA is currently aware of and the 5CD tenants pre-payment as well as the pre-payment made with the tenant of Apt. 4B within two (2) weeks of the entry of a further order which this Court may enter. Then, should Haber fail to comply with any further order of this Court, this Court should direct Haber to be held in the custody of the US Marshals and jailed until she has complied with turning over this amount to the estate. This remedy is appropriate in consideration of the equitable nature of the bankruptcy court and the previous rulings held by the

---

[4] Under provisions of New York's Housing Stability and Tenant Protection Act (HSTPA) from 2019, it is illegal for a landlord to take more than one-month advanced rent plus one month security deposit.

Court including the ruling in *In re Chief Exec. Officers Clubs, Inc.* This sanction is necessary given the magnitude of the harm caused by Haber, is the only adequate sanction given Haber's continued actions throughout this case, and is not financially burdensome to Haber especially considering it is possible if not likely Haber has improperly collected from even more tenants than the PA is currently aware of which will come to the surface once a complete investigation is conducted.[5]

25.     The PA respectfully requests that should Haber not comply with any further orders entered by this Court by the date set by the Court, that in addition to Haber being subject to being taken into custody by the US Marshals this Court should grant the entry of a civil contempt sanction/money judgment in the amount of $428,935 against Haber.

26.     Lastly, the PA also submits that Haber has also acted in contravention of paragraph 12 of the Aid Order. The Buyer has informed the PA that despite multiple attempts the Buyer has not been able to receive any documents from Haber such as the rent roll for the Property nor any leases with tenants (the leases the PA has come into possession of have all come from the tenants). As Haber is also in contempt of this additional provision of the Aid Order, the PA additionally requests the Court enter in any further order that also requires Haber to turnover said documents to the Buyer or to otherwise appear for an order to show cause hearing for why Haber should not be taken into custody by the US Marshals until she has complied with this additional provision of the Aid Order.

### NOTICE AND PRIOR REQUEST

27.     This Motion is being served by electronic mail on Haber, the United States Trustee, and the parties who have filed appearances in this case. This Motion is further being served upon

---

[5] If Haber asserts it is impossible to comply with her obligation to return the improperly taken rent, it is her burden of proof to establish this impossibility. *See, In re Marc Rich & Co., A.G.,* 736 F.2d 864, 866 (2d Cir. 1984).

095415\1\180546085.v2

Haber by first-class mail at the address set forth in her papers she filed under ECF Dkt. No. 168. Movants submit such notice is appropriate and complies with the applicable Bankruptcy Rules.

28.     No previous application for the relief sought herein has been filed before this Court in this case.

**WHERFORE,** the PA respectfully requests entry of an order for civil contempt together with such further and different relief as the Court may deem just and proper.

Dated: New York, New York
           June 2, 2026

**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Deborah J. Piazza,*
*as Plan Administrator*


By:     /s/ Scott S. Markowitz
           Scott S. Markowitz, Esq.
           Michael Medved, Esq.
           1350 Broadway, 11th Fl.
           New York, New York 10018
           Tel: (212) 216-8000
           Email: smarkowitz@tarterkrinsky.com
           Email: mmedved@tarterkrinsky.com

095415\1\180546085.v2