UNITED STATES BANKRUPTCY COURT

JUN − 8 2026

SOUTHERN DISTRICT OF NEW YORK

In re: 1819 WEEKS AVE. REALTY CORP., Debtor.

Chapter 11 Case No. 24-11855 (JPM)

**STATEMENT OF *GREGORY B. CERBONE (APT. 5CD TENANT)* TO CORRECT THE RECORD REGARDING MISSTATEMENTS MADE IN** PLAN ADMINISTRATOR'S MOTION TO HOLD NANCY HABER IN CONTEMPT AND IF NECESSARY TO DIRECT THE UNITED STATES MARSHALS TO TAKE NANCY HABER INTO CUSTODY AND HOLD HER UNTIL SUCH TIME THAT SHE PURGES HER CIVIL CONTEMPT

I write to correct several misstatements contained in the PLAN ADMINISTRATOR'S MOTION TO HOLD NANCY HABER IN CONTEMPT AND IF NECESSARY TO DIRECT THE UNITED STATES MARSHALS TO TAKE NANCY HABER INTO CUSTODY AND HOLD HER UNTIL SUCH TIME THAT SHE PURGES HER CIVIL CONTEMPT as well as to object to the use of the term 'lease' (in single quotation marks) at several places in Paragraphs 9 and 22 in such Motion, as well as other language usage therein to the extent it or any of it might be intended to sow doubt regarding the legal status of the arrangement between the tenants of Apt. 5CD and the Debtor or otherwise insinuate any wrongdoing on the part of the Apt. 5CD Tenants.

(1) I am one of the Tenants of Apartment 5CD.

(2) On April 2, 2025, I filed in this Bankruptcy action a Proof of Claim, Form 410, drawing to the Court's and interested parties' attention that at this juncture I had made advance payments of rent through December 31, 2028 and that I expected those payments, and the lease to which those rent payments applied, to be honored; and that if the lease were to be rejected by the new building owner, I would be reimbursed for that sum. Accompanying that Proof of Claim was a copy of a lease dated October 16, 2024 reflecting that the lease period as of this filing was July 1, 2023 through December 31, 2028. While this lease is not signed by the debtor, not returning a signed copy of a lease was an unfortunate pattern of the debtor's despite her having a copy of the lease in her possession. Furthermore, on June 4, 2025, I filed in this action an Objection of Tenant to Debtor's Motion to Sell Property Free and Clear of Interests, duly served on counsel for the Debtor, counsel for the Debtor's Lender and the Office of the United States Trustee, wherein I state, in part, "I have a valid lease from the present day through February 28, 2029....I have a right to remain in possession of my apartment even if the lease is rejected. I respectfully object to any sale that would impair or extinguish this right, and ask the Court to ensure my tenancy is protected." Subsequent to this filing, multiple

1

pronouncements in various pleadings, e.g., in addressing various claims and/or objections, in this action referenced the fact that tenants' leases would be respected by the buyer of the property.

(3) Consequently, it is disingenuous to say the least for the Plan Administrator to insinuate that she did not have a copy of a prior lease (to the one entered December 15, 2025) or that she was unaware of the prior advance rent payments through December 31, 2028, or, for that matter, through February 28, 2029. These are part of the Bankruptcy action record.

(4) Also inaccurate is the statement made in Paragraph 22 of the motion, "Amazingly, the PA has also received evidence of wire transfers that includes pre-payment under this 'lease' for a full five (5) years from 2026 – 2030 by which a supposed discount from the 'lease' was negotiated to $7,000 per month" to the extent that it implies that the negotiated rent of $7,000 per month applied to any year prior to 2029 or 2030. Exhibit D to the Motion (175-4), reflecting advance rent payment wires, will show that that negotiated rent only applied for years 2029 and 2030.

(5) A similar misstatement appears in Paragraph 9 of the Motion, to wit, "…in January 2026, Haber somehow induced the 5CD tenants to prepay the remainder of the 'lease' with a discounted monthly rent of $7,000 if they did so. This was a prepayment of an entire five (5) years of rent." As stated above, rental payments at $7,000 per month only applied to years 2029 and 2030. And, with respect to the reference to "an entire five (5) years of rent", many of these advance rental payments for several of these years were made well before the Bankruptcy even commenced. See Exhibit D to the Motion (175-4). For instance, a full year's rent ($89,520) at $7,460 per month, was paid on February 27, 2024 and advance payment of rent for the year 2027, in two equal amounts of $44,760 (reflecting a monthly rent of $7,460) were made on February 27, 2024 and May 21, 2024. In fact, this was a pattern that debtor and I had been engaged in for quite some time well before the debtor filed for bankruptcy. At no time did debtor ever improperly induce me to pay advance rent; the relationship was one based strictly on mutual assent.

(6) Another misstatement appears in Paragraph 9, where the Plan Administrator states, "Haber was so brazen in this scheme that she directed this five (5) year pre-payment to be *sent to her personal checking account* so it would not be disclosed in the Debtor's operating reports filed in this case." In fact, as reflected in Exhibit D (175-4) to the Motion, the only advance rental payments made to an account other than the 1819

2

Weeks Avenue Realty Corp account were for years, 2028, 2029 and 2030, in the aggregate amount of $257,520. For years 2026 and 2027, advance rent payments were made, as reflected in Exhibit D (175-4) of the Motion, to the 1819 Weeks Avenue Realty Corp Account. Furthermore, based on the foregoing, the statement in Paragraph 22, "The brazen nature of this scheme concocted by Haver becomes even more crystalized upon the realization that payments under this 'lease' were not sent to the Debtor's operating account for which the Debtor submitted operating reports for but rather to what appears to be Haber's person account ending in 7353 held at JP Morgan Chase Bank. In sum, attributing the payments made from May 2026 onwards, Haber is in illegal possession of $385,000 of these funds" is also likely inaccurate given the fact that only $257,000 in advance rental payments were made beginning in February 2025 (for years 2028, 2029 and 2030) to an account other than the 1819 Weeks Avenue Realty Corp account. Further, I have no knowledge whatsoever as to what the Debtor may have done with these payments and/or whether she properly reported them in this Bankruptcy action; but, to the extent that there is any insinuation of collusion between the Debtor and the Tenants of Apt. 5CD or inference of wrongdoing on the part of said Tenants regarding these payments, I soundly reject any such assertions, whether made by inference, indirectly or directly now or in the future.

(7) Also inaccurate is the footnote (footnote 4) to Paragraph 22 of the Motion which states "Under provisions of New York's Housing Stability and Tenant Protection Act (HSTPA) from 209, it is illegal for a landlord to take more than one-month advanced rent plus one month security deposit." This is a clear mischaracterization of the applicable law. The HSTPA in no way prevents a landlord and tenant from entering into a long-term lease and a tenant's prepaying rent for more than a year *if the tenant chooses to pre-pay that rent* (e.g., to negotiate a lower rent, secure a long-term lease, etc.). HSTPA simply prohibits a landlord from **requiring** advance payment of rent for the entire lease term or as a condition of approval of the lease.

(8) Consequently, to the extent that the Plan Administrator's use of the phrase 'lease' (with single quotation marks) makes any inference that the existing lease for Apt. 5CD, despite lacking the debtor's signature, is not a valid lease because of HSTPA's application, I firmly reject any such inference or assertion.

(9) Too, I reject any inference or assertion, by use of the phrase 'lease' (with single quotation marks), that the lease is otherwise not valid because the debtor's signature does not appear thereon. It is well-settled law both in New York State and in many other jurisdictions that a lease, irrespective of whether the landlord has signed it, is valid and

3

enforceable when the landlord has a copy of the lease (which debtor does) and when rental payments have been accepted. In fact, this is simple contract law. Consequently, the lease is not a 'lease' but rather a valid "lease".

(10)      Finally, I reject any implied notion that the use of the term "scheme" in Paragraphs 9 and 22 of the Motion can in any way be attributed to, or otherwise implicate the conduct of, the Tenants of Apt. 5CD.

(11)      I make clear here that I in no way object to the Plan Administrator's Motion herein referred to, and take no position on it one way or the other, nor do I take any position on whether or not the Debtor engaged in untoward activity as alleged in the Motion, but rather seek with this submission to correct what I view to be multiple misstatements, of both fact and law, as well as to challenge perceived, whether intended or otherwise, accusatory implications contained therein to the extent they are in any way meant to disparage or disenfranchise the Tenants of Apt. 5CD or their existing rights to occupy Apt. 5CD for the requisite lease term pursuant to the lease currently in existence and according to the advance payment of rent arrangement validly entered into by the Tenants and the Debtor.

June 5, 2026

Respectfully submitted,

Gregory B. Cerbone

47 Perry Street, Apt. 5CD

New York, NY 10014

gbcerbone@aol.com

917.974.8278